IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    1:23-CR-491 (MAD) |
| | ) | |
| | ) | Speedy Trial Act Exclusion: |
| **v.** | ) | 18 U.S.C. § 3161(h)(1)(D), (H) [filing of |
| | ) | motion through 30 days after motion is fully |
| | ) | submitted] |
| **OLUWASEUN ADEKOYA, a/k/a "Ace** | ) | |
| **G.," a/k/a "SANTA," a/k/a "Sammy** | ) | |
| **LaBanco,"** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**THE GOVERNMENT'S OPPOSITION TO
DEFENDANT OLUWASEUN ADEKOYA'S MOTION TO SEVER**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

    A.    The Initial Investigation and Indictment ......................................................... 3

    B.    Proceedings on the Initial Indictment ............................................................. 4

        i.    12/12/23 – 6/21/24: Speedy Trial Time Chargeable to Adekoya ............................. 4

        ii.    12/12/23 – 10/11/24: Speedy Trial Time Chargeable to Co-Defendants ................. 5

    C.    The Superseding Investigation and the Superseding Indictment ....................................... 7

    D.    Proceedings on the Superseding Indictment .................................................... 9

LEGAL STANDARD ........................................................................................... 10

ARGUMENT ....................................................................................................... 11

    I.    Adekoya Is Properly Joined With His Co-Defendants ........................................ 11

    II.    Adekoya Should Not Be Severed From His Co-Defendants ............................................. 12

        A.  The Speedy Trial Act Does Not Provide a Basis for Severance ........................... 13

        B.  Severance Is Not Merited by Adekoya's Sixth Amendment Speedy Trial Right .. 15

CONCLUSION ..................................................................................................... 19

The government respectfully submits this memorandum of law in opposition to defendant Oluwaseun Adekoya's motion to sever under Fed. R. Crim. P. 14(a) (Dkt. # 238).

## <u>INTRODUCTION</u>

From November 2021 to December 12, 2023, Oluwaseun Adekoya led a sweeping conspiracy to defraud financial institutions all over the United States. As the scheme's ringleader, Adekoya obtained the personal identifying information ("PII") of victims from across the country, including their names, dates of birth, Social Security numbers, and the places where they banked. Working with his chief lieutenants, co-defendants David Daniyan and Kani Bassie, Adekoya then bought fake drivers licenses in the victims' names, displaying the victims' personal identifying information, but bearing photographs of lower-level members of the conspiracy, including co-defendants Victor Barriera, Danielle Cappetti, Crystal Kurschner, Lesley Lucchese, and Sherry Ozmore (the "runners"). Adekoya and other managers of the conspiracy, including Daniyan, Bassie, Davon Hunter, Christian Quivers, and Jermon Brooks, then coached runners on how to impersonate the victims and fraudulently obtain money from the victims' respective accounts at financial institutions through cash withdrawals, advances on credit, and by obtaining checks written off the victims' accounts which were deposited into accounts controlled by Adekoya and his co-conspirators (but held in the names of yet more victims).

To avoid law enforcement, Adekoya used various means to insulate himself from the conspiracy's dirty work. For instance, he utilized encrypted messaging platforms, such as Telegram and WhatsApp, to direct his lower-level co-conspirators. The investigation has uncovered nearly 40,000 encrypted text and voice communications among Adekoya, Daniyan, Bassie, and other co-conspirators through which Adekoya planned, orchestrated, and oversaw the work of each of his indicted co-conspirators. Adekoya and his managers also distanced themselves

1

from the runners by enlisting drivers, including co-defendants Akeem Balogun and Jerjuan Joyner, to travel with and drive the runners to financial institutions all over the country.

In December 2023, Adekoya's scheme came to a screeching halt as the government obtained an indictment against him, Daniyan, and several others while its investigation into the broader conduct of the conspiracy and other co-conspirators was ongoing. After evaluating reams of additional evidence, including from devices seized from Adekoya and other co-conspirators at arrest, and successfully litigating Adekoya's appeal of his pretrial detention, the government in October 2024 obtained a superseding indictment, adding new charges against Adekoya and adding six additional co-defendants.

Notwithstanding his intimate involvement in each of the individual transactions perpetrated by his co-defendants as well as the complexity and volume of the evidence against the defendants in this case, Adekoya now demands that the Court immediately sever him from the remainder of the defendants charged in the superseding indictment. In his view, the Court should jettison the strong federal preference for joint trials of co-conspirators, because "convenience" should not override his speculation that the addition of new co-defendants may result in a delay of "several months" while those co-defendants review certain discovery that Adekoya says he already reviewed, even though Adekoya and the new defendants recently received voluminous discovery related to the superseding indictment. Adekoya is wrong on all scores. His conjecture does not meet the heavy burden he must overcome for severance, which would inappropriately consume the resources of this Court, jurors, as well as many third-party witnesses and victims at multiple trials.

As explained in more detail below, Adekoya's motion is meritless. It should be denied without a hearing or oral argument because it presents no factual disputes or close questions.

## BACKGROUND

### A.    The Initial Investigation and Indictment

The federal investigation resulting in the initial indictment commenced in May 2022.  That month, Daniyan, Cappetti, and Barriera were arrested in Cohoes, New York after Barriera had conducted and attempted to conduct numerous fraudulent cash withdrawals by impersonating certain victims at Cap Com Federal Credit Union branches in this District.

Between June 2022 and December 5, 2023, investigators obtained and served approximately 125 subpoenas for records, applied for and obtained several federal warrants authorizing the search of approximately a dozen electronic devices used by members of the conspiracy, and interviewed numerous witnesses.  From this material, investigators learned that Adekoya's conspiracy was ongoing, significant, and needed to be stopped.  Accordingly, on December 5, 2023, the government obtained an indictment charging Adekoya, Balogun, Barriera, Cappetti, Daniyan, Joyner, and Lucchese with crimes that the government believed its investigation thus far established beyond a reasonable doubt: a bank fraud conspiracy primarily targeting the Co Op Solutions shared branching network of credit unions and eight counts of aggravated identity theft, over the time-period of December 1, 2021 through April 3, 2023.

After the December 2023 indictment was returned, but while it was still under seal, investigators obtained search warrants in the District of New Jersey and the Eastern District of New York authorizing, among other things, the searches of Adekoya's and Daniyan's respective residences.  Agents executed the warrants on December 12, 2023 and Adekoya and Daniyan were arrested.

B.    **Proceedings on the Initial Indictment**

i.    **12/12/23 – 6/21/24: Speedy Trial Time Chargeable to Adekoya**

Adekoya was arraigned on the initial indictment in the District of New Jersey (DNJ) on December 12, 2023.  The government sought pretrial detention and a detention hearing was scheduled for December 14, 2023 in DNJ.  Following the detention hearing, a DNJ magistrate judge ordered Adekoya's release on conditions, but stayed entry of the order for twenty-four hours to permit the government to seek review of the decision in the Northern District of New York (NDNY) under 18 U.S.C. § 3145.  Later that day, the government moved for Adekoya's pretrial detention before the late Senior U.S. District Judge Gary L. Sharpe.  ECF #20.  On December 15, 2023, Judge Sharpe ordered a stay of Adekoya's release pending the outcome of the government's motion, ECF #21, and appointed Eric K. Schillinger, Esq. to represent Adekoya, ECF #26.

On January 5, 2024, Adekoya opposed the government's Section 3145 motion.  ECF #59. On January 8, 2024, Adekoya was arraigned on the original indictment in this District before U.S. Magistrate Judge Christian F. Hummel.  ECF, 1/8/24 text minute entry.  Judge Sharpe granted the government's Section 3145 motion on January 22, 2024 and ordered Adekoya detained pending trial.  ECF #63.  Adekoya filed a notice of appeal of Judge Sharpe's detention order on January 31, 2024.  ECF #67.

On February 7, 2024, the Second Circuit issued an order dismissing Adekoya's appeal of the detention order unless the appeal was perfected by March 15, 2024.  *See* ECF ##7-8, Case No. 24-282 (2d Cir.) ("2d Cir. ECF").  On March 5, 2024, Adekoya perfected the appeal by filing certain record items with the Second Circuit.  2d Cir. ECF #9-10.  On March 12, 2024, Adekoya requested that his appellate brief be due on May 6, 2024.  2d Cir. ECF #11.

On March 25, 2024, Mr. Schillinger filed a letter with this Court seeking a representation hearing. ECF #106. This Court held a representation hearing on April 3, 2024, after which it allowed Mr. Schillinger to withdraw. ECF, 4/3/24 text minute entry. On April 4, 2023, the Court appointed Scott W. Iseman, Esq. to represent Adekoya. ECF #116. That same date, Mr. Schillinger filed a motion to be relieved as counsel on Adekoya's appeal. 2d Cir. ECF #13. On April 11, 2024, the Second Circuit granted the motion for relief as counsel and appointed David McColgin, Esq. 2d Cir. ECF ##15, 18.

On May 5, 2024, Mr. McColgin asked Second Circuit for Adekoya's appellate brief to be due on May 24, 2024. 2d Cir. ECF #21. Mr. McColgin filed the brief on May 19, 2024 and requested oral argument. 2d Cir. ECF #22. The government filed its opposition ten days later. 2d Cir. ECF #29. The Second Circuit heard oral argument on June 18, 2024. 2d Cir. ECF # 35. Three days later, it affirmed Judge Sharpe's detention order. 2d Cir. ECF #37.

### ii.    12/12/23 – 10/11/24: Speedy Trial Time Chargeable to Adekoya's Co-Defendants

The first of Adekoya's co-defendants (Cappetti, Daniyan, and Kennedy) were arrested out of district on December 12, 2023. Cappetti was arraigned in NDNY on December 13, 2023. ECF, 12/13/23 text minute entry. Kennedy was arraigned in NDNY on December 19, 2023. ECF, 12/19/23 text minute entry. Daniyan and a fourth co-defendant (Joyner) were arraigned in NDNY before on December 21, 2023. ECF, 12/21/23 text minute entries.

Between December 19, 2023 and December 21, 2023, Cappetti, Joyner, Kennedy, and Daniyan entered joint stipulations with the government seeking exclusion of 60 days under the Speedy Trial Act due to the complexity of the case and volume of discovery, which the government was in the process of compiling for production. ECF ##36, 38, 42, 43. On December 27, 2023, Judge Sharpe excluded the time-period of December 27, 2023 to February 25, 2023 for each of

those co-defendants pursuant to the stipulations and 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii).
ECF ##53-56.

On January 31, 2024, the government produced initial discovery on the initial indictment
to Adekoya and the other defendants who had been arraigned by that date, and noted in its letter
to the defense that the disclosure was part of a rolling production given the volume of discovery.
The initial production consisted of over 20,000 bates-labeled items, which included voluminous
bank records of the fraudulent transactions, law enforcement reports, interview recordings, and the
extractions of numerous cell phones containing thousands of communications among the charged
co-conspirators.

On February 9, 2024, Barriera was arraigned in NDNY.  ECF, 2/9/24 text minute entry.
On February 21, 2024, all of Adekoya's co-defendants who had been arraigned on the initial
indictment filed a joint stipulation with the government to exclude 60 days because of the
complexity of the case and volume of discovery, production of which was ongoing.  ECF #80.  On
February 22, 2024, the Court excluded the time-period of February 22, 2024 through April 21,
2024 pursuant to the stipulation and 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii).

On March 11, 2024, the remaining defendants charged in the initial indictment, Balogun
and Lucchese, were arraigned in the NDNY.  ECF, 3/11/24 text minute entries.  That same day,
Balogun and Lucchese filed a joint stipulation with the government seeking a 60-day exclusion of
pretrial Speedy Trial Act time due to the complexity of the case and volume of discovery.  ECF
#96.  On March 12, 2024, the Court excluded the time-period of March 12, 2024 through May 24,
2024 pursuant to that stipulation and 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii).  ECF #100.

On May 21, 2024, all of Adekoya's co-defendants who had not resolved the indictment by
guilty plea (Balogun, Cappetti, Daniyan, Joyner, and Lucchese) filed a joint stipulation with the

government seeking an additional pretrial exclusion of 90 days under the Speedy Trial Act due to the complexity of the case and volume of evidence. ECF #128. In addition, Daniyan had recently obtained new court-appointed counsel, which further made the additional time necessary. *Id.* On May 21, 2024, the Court ordered the pretrial time-period of May 21, 2024 through August 18, 2024 excludable pursuant to the joint stipulation and 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii). ECF #129.

On May 31, 2024, the government turned over supplemental discovery to Adekoya and the other defendants. That discovery consisted of approximately 800 more bates-labeled items, as well as the extractions of fourteen additional cell phones, most of which had been seized during the searches of Adekoya's and Daniyan's residences.

On August 8, 2024, Balogun and Daniyan, the only co-defendants who had not resolved the initial indictment by guilty plea, filed a joint stipulation with the government seeking an additional pretrial exclusion of 60 days under the Speedy Trial Act due to the complexity of the case and volume of evidence. ECF # 164. On August 13, 2024, the Court ordered the pretrial time-period of August 13, 2024 until October 11, 2024 excludable pursuant to the joint stipulation and 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii). ECF #169.

## C.    The Superseding Investigation and the Superseding Indictment

After the initial indictment was returned, the investigation into Adekoya and Daniyan continued for crimes committed beyond the scope of those charged in the initial indictment, which, as explained above, was obtained prior to the conclusion of the investigation because Adekoya's crimes were ongoing and significant.[1] From the date of Adekoya's arraignment in NDNY, the

---

[1] Also concerning was the fact that Adekoya was not deterred from committing fraud despite his 2015 bank fraud conviction in the District of New Hampshire. *See, e.g.*, Judgment, ECF #128, *United States v. Oluwaseun Adekoya*, No. 13-CR-98-01-JL (D.N.H. Mar. 4, 2015).

government informed his attorneys that a superseding investigation was progressing such that it anticipated bringing additional charges when that investigation was complete.

The investigation has been ongoing since the date of the initial indictment and continued through the date of the superseding indictment on October 8, 2024. Between those dates, investigators obtained over 170 subpoenas for documents and records, applied for and obtained numerous federal search warrants, including warrants authorizing the search of Adekoya's New Jersey residence, Daniyan's Brooklyn home, and, in the weeks and months leading up to the superseding indictment, numerous electronic devices utilized by co-conspirators and an additional co-conspirator's residence in Brooklyn (pursuant to a warrant that was executed in October 2024). Investigators also interviewed numerous additional witnesses and gathered documentation from local law enforcement agencies throughout the country. During this time, investigators reviewed and summarized scores of financial records, communications (certain of which needed to be translated from Yoruba), and other voluminous evidence to follow the money fraudulently obtained by Adekoya, Daniyan, and their co-conspirators.

Throughout 2024, investigators continued to identify co-conspirators who worked with Adekoya during at least November 2021 through the date of Adekoya's arrest. This examination established that Adekoya's fraud was much broader than the shared branching fraud that had been the focal point of the initial indictment, and included fraudulent account openings, fraudulently obtaining checks drawn on unsuspecting customers' accounts, and laundering the proceeds of the bank fraud through a sophisticated conspiracy with co-defendant Daniyan and others. By following financial and monetary transactions made and orchestrated by Adekoya, Daniyan, and other co-conspirators, investigators uncovered a money laundering conspiracy through which Adekoya, Daniyan, and others utilized bank fraud proceeds to fund criminal conduct (for example,

buying fake drivers licenses) and, *inter alia*, conducted transactions designed to conceal the nature, location, source, and ownership of their ill-gotten gains.

On October 8, 2024, a grand jury returned a superseding indictment charging Adekoya, Daniyan, and six additional co-defendants (Kani Bassie, Jermon Brooks, Davon Hunter, Crystal Kurschner, Sherry Ozmore, and Christian Quivers) with a superseding bank fraud conspiracy that netted over $1.5 million in actual losses and nearly $3 million in attempted losses. The grand jury also charged Adekoya and Daniyan with money laundering conspiracy and Adekoya with nine counts of aggravated identity theft, many of them jointly with co-defendants on the bank fraud conspiracy.

### D.    Proceedings on the Superseding Indictment

To date, seven of the eight defendants on the superseding indictment have been arraigned or have waived arraignment and entered pleas of not guilty in NDNY. The eighth defendant, Crystal Kurschner, is in the process of being transported to the NDNY from Wisconsin by the U.S. Marshals Service and is scheduled for arraignment on December 10, 2024 before Judge Hummel. On November 15, 2024, the Court excluded the time-period of November 15, 2024 through February 12, 2024 following a joint stipulation (ECF #236) by each of Adekoya's then-arraigned co-defendants and the government pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii). ECF #239. Daniyan also recently obtained his third court-appointed attorney, ECF #217, which further justifies the exclusion, as noted in the stipulation.

On November 22, 2024, the government made discovery on the superseding indictment available to all defendants. That discovery consists of the discovery on the initial indictment (which counsel for Adekoya had already received but Daniyan's new attorney and counsel for other co-defendants had not), plus more than 20,000 additional bates-labeled items, including

financial records of the additional fraudulent transactions Adekoya choreographed and numerous device extractions that contain hundreds of communications between the co-conspirators. Counsel for Adekoya obtained this new discovery from the government on or about November 22, 2024.

## LEGAL STANDARD

Fed. R. Crim. P. 8(a) governs the joinder of offenses while Fed. R. Crim. P. 8(b) governs the joinder of defendants. If "the joinder involves both multiple offenses and multiple defendants, Rule 8(b) must be applied." *United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir. 1989).

Rule 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." In the Second Circuit, "[t]he mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense." *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) (citation omitted). The "established rule" is that "a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b)." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988). It is similarly proper to join separate conspiracies if there is a common purpose and "an overlap of participants and acts." *Attanasio*, 870 F.2d at 815.

Even if joinder is proper under Rule 8, a court may grant severance pursuant to Rule 14(a). Rule 14(a) provides that where joinder of defendants for trial "appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials[] or provide any other relief that justice requires." Still, "[s]ince there is a preference, in the federal system, for the joint trial of defendants indicted together, the district court should grant a severance motion only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Rosa*,

11 F.3d 315, 341 (2d Cir. 1993). Indeed, "[j]oint trials offer numerous benefits in fairness and efficiency, particularly in large conspiracy cases, avoiding witnesses being asked to testify multiple times, having to present the same evidence repeatedly, and the risk of inconsistent verdicts." *United States v. Taylor*, 720 F. Supp. 3d 131, 136 (D. Conn. 2024) (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). Thus, a defendant seeking severance has a "heavy burden" in which he "must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). And where "the crime charged involves a common scheme or plan, a joint trial of the participants is proper, absent a clear showing of prejudice." *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979). The decision to sever is therefore left to the district court's "sound discretion." *E.g.*, *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989).

## ARGUMENT

## I.    ADEKOYA IS PROPERLY JOINED WITH HIS CO-DEFENDANTS

Adekoya does not appear to dispute that he is properly joined with his co-defendants under Rule 8(b). For good reason—There is no question that the conspiracies charged in the superseding indictment are properly joined together along with their participants. The conspiracies involve overlapping participants, specifically all of the charged defendants for the bank fraud conspiracy charged in Count 1 and then Adekoya and Daniyan for the money laundering conspiracy charged in Count 2. What is more, Adekoya and Daniyan's money laundering conspiracy is directly linked to the bank fraud conspiracy because it both concealed illicit proceeds gleaned from bank fraud and promoted further bank fraud by allowing Adekoya and Daniyan to purchase fake drivers licenses, airfare, travel arrangements, and car rentals that were used in subsequent fraudulent

transactions. *See Attanasio*, 870 F.2d at 815 (affirming joinder of defendants who took part in two conspiracies because "[t]he transactions alleged in both conspiracy counts were a part of a series of acts that shared a common purpose . . . ."). Similarly, the aggravated identity theft charges, Counts 3 through 11, are also properly joined because they involve discrete acts committed in furtherance of the bank fraud conspiracy. *See id.* Thus, the evidence at Adekoya's trial will involve nearly complete, if not total, overlap with his co-defendants, underscoring why "judicial economy, the central purpose for permitting joint trials, [will be] served by joinder." *Nerlinger*, 862 F.2d at 973 (affirming joinder of defendants "alleged to have participated in the same conspiracy [where] evidence of the central features of that conspiracy, including not inconsiderable explanations of the workings of a scheme peculiar to the arcane world of commodities trading, was relevant to both defendants"); *see, e.g.*, *United States v. Feyrer*, 333 F.3d 110, 114-15 (2d Cir. 2003) (affirming joinder where separate conspiracies shared common plan and participants, even though certain defendants were not alleged to have participated in all conspiracies).

## II.    ADEKOYA SHOULD NOT BE SEVERED FROM HIS CO-DEFENDANTS

Adekoya should not be severed from his co-defendants. Adekoya's bid for severance boils down to a claim that his statutory and constitutional speedy trial rights *could* be compromised at some *undetermined* point in the future if he is not immediately severed. This speculation—which Adekoya fails to support with even a single case that ruled as he now demands this Court rule—comes nowhere near meeting his heavy burden of overcoming the law's strong preference for joint trials of properly joined co-defendants. This is not a matter of simple "convenience" for the government and the Court as defense counsel posits (Mot. at 6); rather, a joint trial will conserve the time and resources of the Court, the jurors that the Court summons, and witnesses, many of whom are expected to be from third parties or victims. In sum, Adekoya's motion is meritless.

A.      The Speedy Trial Act Does Not Provide a Basis for Severance

Under the Speedy Trial Act of 1974, the default rule is that trials should commence within 70 days of arraignment. 18 U.S.C. § 3161(c)(1). But the Act goes on to provide a list of "periods of delay [that] shall be excluded . . . in computing the time within which the trial . . . must commence." 18 U.S.C. § 3161(h). One such exclusion is "[a]ny period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Another exclusion is for a "reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6).

As the Second Circuit observed, Congress made clear that the Speedy Trial Act was not intended to alter the rules generally governing severance:

> The Senate Report states that "[t]he purpose of [Section 3161(h)(7)][2] is to make sure that [the Act] does not alter the present rules on severance of codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under Section 3161." S. Rep. No. 1021, 93d Cong., 2d Sess. 38 (1974). Congress clearly intended that, where appropriate, joint trials of defendants should continue to be available as a means of promoting judicial efficiency by avoiding duplicative proof at successive trials. It thus intended that reasonable speedy trial time be excludable under Section 3161(h)(7) when necessary to enable joint trials to go forward.

*United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986). In a post-enactment discussion of the Act, the Senate made a similar observation:

> Defendants who are properly charged with the joint commission of an offense should ordinarily be tried together to save the time, expense and inconvenience of separate prosecutions. It has been reported that some trial judges have granted

---

[2] At the time *Pena* was decided, the current text of Section 3161(h)(6) was located in Section 3161(h)(7).

severances unnecessarily in multidefendant cases "so that a defendant whose case
is moving too slowly does not hold up the trial of his codefendants." . . . If the Act
has been interpreted to require such a result, the Committee calls to the Senate's
attention § 3161(h)(7) [*i.e.*, the current Section 3161(h)(6)], which provides
specifically for exclusion of "a reasonable period of delay when the defendant is
joined for trial with a codefendant as to whom trial has not yet run."

S. Rep. No. 96-212, at 24-25 (1979).

To give credence Congress's intent, the law in this Circuit is that "there is only one speedy
trial clock, and delays from any individual defendant will impact the clock for all codefendants."
*Taylor*, 720 F. Supp. 3d at 137 (citing *United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983); *Pena*,
793 F.2d at 489). The "only inquiry" made under Section 3161(h)(6) in "multiple defendant cases
is whether the delay is reasonable." *United States v. Gambino*, 59 F.3d 353, 362 (2d Cir. 1995)
(internal quotations omitted).

Adekoya's invocation of his statutory speedy trial rights provides no basis for severance.
While Adekoya has not joined in his co-defendants' requests for exclusions under the Speedy Trial
Act and purported to object to the Court's exclusion of time from August 13, 2024 to October 11,
2024, he does not claim that the exclusions entered by this Court violate his statutory rights.
Indeed, Adekoya does not even claim that he is ready for trial. Nor could he, as the government
recently produced to him voluminous materials relevant to the newly added charges. *See supra* at
9-10. In other words, Adekoya's severance demand is based only on his suggestion that he is on
a different track from his new co-defendants, because "they will need at least several months to
review and process the discovery in this case and untold time to make (and for the court to decide)
any applicable motions." Mot. at 6; *see also id.* at 7 (suggesting Adekoya is "several months
ahead" of new co-defendants). In any event, Adekoya cannot seriously contest this Court's prior
exclusions of time, which correctly found that delays were reasonable and warranted in light of,
among other things, the complexity of this case and the volume of discovery. Moreover, beyond

14

his need to review discovery, Adekoya has created delays by firing counsel and pursuing an interlocutory appeal that was rejected by the Second Circuit.  *See* 18 U.S.C. § 3161(h)(1)(C); *see also, e.g.*, *United States v. Bazuaye*, 2004 WL 784835, at *9 (S.D.N.Y. Apr. 12, 2004).  Against this backdrop, Adekoya falls far short of meeting his heavy burden for severance.  *See United States v. Curanovic*, 2017 WL 4402452, at *7 (E.D.N.Y. Oct. 2, 2017) (denying motion to sever based on Speedy Trial Act claims because "that the exclusions of speedy trial time granted as to [movant]'s co-defendants were reasonable, based upon the parties' applications and the court's finding that the ends of justice outweigh the interest of the public and the defendants in a speedy trial in light of the complexity of the case"); *Taylor*, 720 F. Supp. 3d at at 141 (denying motion to sever because "the delays have been the result of codefendants' needs" and were therefore "reasonable" under Speedy Trial Act").

**B.     Severance Is Not Merited by Adekoya's Sixth Amendment Speedy Trial Right**

Adekoya's generalized discussion of his Sixth Amendment speedy trial right likewise does not necessitate severance.  "The Sixth Amendment guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a speedy trial."  *Doggett v. United States*, 505 U.S. 647, 651 (1992) (internal quotation marks and original alterations omitted).  The Supreme Court has articulated four factors in deciding whether the Sixth Amendment has been violated by a pretrial delay: (1) length of delay; (2) the reason for delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice caused to the defendant by the delay.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).  "These factors 'must be considered together with any other circumstances as may be relevant' and 'have no talismanic qualities.'"  *United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012) (quoting *Barker*, 407 U.S. at 533).

Here, beyond speaking in generalities about his pretrial detention, Adekoya does not grapple with the *Barker* factors, nor does he suggest that his Sixth Amendment rights have been violated. While the government does not seek to diminish that Adekoya's pretrial detention caused him to miss time with his infant son, the bottom line is that he has not even attempted to demonstrate a violation of his rights by a detention decision that was carefully made by a seasoned district judge and then affirmed after full briefing and oral argument by a panel of the Second Circuit. The *Barker* factors currently cut decisively against Adekoya, and he has not shown that they will change even with a speculative delay of several months.

*First*, the length of delay factor is a threshold inquiry, so the remaining factors are only analyzed where the delay is "presumptively prejudicial." *Doggett*, 505 U.S. at 651-52. While *Doggett* suggested that a delay that "approaches one year" may create the presumption of prejudice, 505 U.S. at 652 n.1, "courts have been unable to define 'presumptively prejudicial.'" *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992). In *Vassell*, the Second Circuit declined to rule on whether a seven-month delay was presumptively prejudicial and cited a law review article finding "a general consensus that a delay of over eight months meets th[e] standard, while a delay of less than five months does not." *Id.* Since *Vassell*, the Second Circuit has not addressed the exact point at which a delay becomes presumptively prejudicial. But as one panel has since explained, while *Vassell* cited an article on the issue, it "did not discuss whether it agreed with the article that [an eight-month] delay would be presumptively prejudicial" and it "certainly did not hold to that effect." *United States v. Sterling*, 763 F. App'x 63, 66 (2d Cir. 2019).

Here, the defendant was arrested on December 13, 2023, such that the pendency of this proceeding is less than twelve months. Thus, even assuming that the delay in this proceeding is presumptively prejudicial (which the government does not concede), the delay is at the low end of

the spectrum of cases triggering further inquiry. *See Cain*, 671 F.3d at 298 (noting 22-month delay "was considerably shorter than that of other cases in which no Sixth Amendment violation has been found" and explaining that the court would "assume that the delay was sufficient to trigger a speedy trial inquiry," while recognizing that "the first *Barker* factor is largely neutral . . . .") (internal quotation marks omitted). Thus, this factor is, at best for Adekoya, neutral.

*Second*, the reason for delay factor favors the government. "Although no single *Barker* factor is a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial, the second factor—reason for delay—is often critical." *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015). That is because "[t]he Sixth Amendment is rarely violated by delay attributable entirely to the defendant, or by delay that serves some legitimate government purpose." *Id.*; *see Doggett*, 505 U.S. at 656 ("The government may need time to collect witnesses against the accused, [or] oppose his pretrial motions . . . ."); *Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

The reason for the delay weighs in favor of the government here. Adekoya created delay by pursuing an appeal of his pretrial detention. Adekoya's co-defendants, not the government, also sought exclusions to review discovery. Now, it seems likely that Adekoya will require even more delay to review new discovery. While Adekoya complains about the addition of new co-defendants in the superseding indictment, he cannot credibly claim that the government dragged its feet in pursuing these new defendants and charges given the complexity of this case, the geographic scope and duration of his misconduct (which was ongoing right up until when he was charged), and the volume of evidence. This is a legitimate government purpose, which favors the government. *See Doggett*, 505 U.S. at 656; *Barker*, 407 U.S. at 531.

*Third*, the assertion of right factor is, at most, neutral.  "A 'lack of timeliness, vigor of frequency' in asserting the right to a speedy [trial] does not waive the claim, but it undercuts it." *United States v. Kye*, 2022 WL 178534, at *2 (W.D.N.Y. Jan. 2, 2022) (quoting *Rayborn v. Scully*, 858 F.2d 84, 93 (2d Cir. 1988)); *see United States v. Tigano*, 880 F.3d 602, 617 (2d Cir. 2018) (observing that "[a] defendant's lack of vigor in pursuing his right—or his deliberately dilatory behavior in forestalling trial—are factors to be considered in our analysis").  While the defendant first asserted his Speedy Trial right in August 2024, he has not moved to dismiss on Speedy Trial grounds, nor did he assert his right when the last Speedy Trial Act exclusion was entered.  Thus, the defendant's fair-weather assertion of the right is, at most, neutral.

*Fourth*, the prejudice factor strongly favors the government.  There are "three kinds of speedy trial prejudice that can affect a defendant: pretrial imprisonment, pretrial anxiety and impairment of the defense."  Gordon Mehler *et al.*, *Federal Criminal Practice: A Second Circuit Handbook* § 43-2 (22d ed. 2022).  "The last of the three factors is the most serious[.]"  *Id.*  None of these types of prejudice favors the defendant.  As to the first two types of prejudice, the defendant's pretrial detention has not caused him undue oppression or anxiety.  The defendant's approximately 12-month detention "is not in itself 'oppressive' under [Second Circuit] caselaw." *United States v. Jakes-Johnson*, 2021 WL 2944574, at *3 (2d Cir. July 14, 2021) (pretrial detention of nearly three years not a Sixth Amendment violation where "a substantial portion of that time is fairly attributed to [defendant] and his trial counsel's requested delays"); *see Goodrum v. Quarterman*, 547 F.3d 249, 263 (5th Cir. 2008) (finding that defendant's "generalized expressions of anxiety and concern amount to little more than a nominal showing of prejudice").  As to the third type of prejudice, which is the most important type, the defense has not been impaired by the

delay.  The defendant does not advance any argument for how his defense has been prejudiced by the delay.  Thus, the final factor strongly favors the government.

Accordingly, Adekoya's insistence that severance is warranted immediately to avoid a speculative delay of "several months" and a purportedly concomitant violation of his constitutional speedy trial right rings hollow.  He has not shown any prejudice from joinder, let alone prejudice so severe that it overrides the strong preference for joint trials.  His motion therefore cannot be granted on this basis.

## **CONCLUSION**

For the foregoing reasons, defendant Oluwaseun Adekoya's motion to sever should be denied in its entirety without a hearing.[3]


Dated: December 6, 2024                         Respectfully submitted,

                                                CARLA B. FREEDMAN
                                                United States Attorney

                                    By:    */s/ Joshua R. Rosenthal*
                                                Benjamin S. Clark
                                                Joshua R. Rosenthal
                                                Assistant United States Attorneys
                                                Bar Roll Nos. 703519 & 700730

---

[3] Because the facts necessary to decide Adekoya's motion are undisputed and Adekoya has not come close to meeting his heavy burden for severance, the government does not share in his belief that a hearing or oral argument is needed.

## **CERTIFICATE OF SERVICE**

   I, Joshua R. Rosenthal, hereby certify that on December 6, 2024, I electronically filed the foregoing opposition with the Clerk of the District Court using the CM/ECF system, which caused the same to be transmitted to defense counsel of record.

      By:  */s/ Joshua R. Rosenthal*
           Joshua R. Rosenthal
           Assistant United States Attorney