

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
APR 2 1 2025
AT_____ O'CLOCK
John M. Domurad, Clerk - Albany

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

United States of America,

v.

Case 1:23-cr-00491-MAD

Oluwaseun Adekoya

### DEFENDANT OMNIBUS MOTION

I.      All Counts Must Be Dismissed for Legal Insufficiency

Count 1, which accuses the defendant of conspiracy to commit bank fraud in violation of 18

U.S.C. § 1344(1) and (2) and 18 U.S.C. § 1349 is legally insufficient for failing to allege the

conspiracy targeted a federally insured or charted financial institution. While the indictment

tracks the status, alleging that the financial institutions that was the object of the conspiracy

was to defraud financial institution. The indictment fails to allege the financial institutions are

federally insured a jurisdictional and prerequisite that requires pleading. 18 U.S.C. § 1344

offenses are limited to where "the defendant (1) engaged in a course of conduct designed to

deceive a **federally chartered or insured financial institution** into releasing property; and (2)

possessed an intent to victimize the institution by exposing it to actual or potential loss."

*United States v. Barrett*, 178 F.3d 643, 647-48 (2d Cir. 1999) (emphasis added). The Eleventh

Circuit agrees, holding that ''[p]roof of a federally-insured status of the affected institution is,

for . . . section 1344 … a jurisdictional prerequisite as well as an element of the substantive

crime"). *United States v. Dennis*, 237 F.3d 1295, 1303 (11th Cir. 2001); *see also United States*

*v. Moregenstern*, 933 F.2d 1008, 1112 (2d Cir. 1991) (''It was Congress' intent that a federally

insured or chartered bank must be the actual or intended victim of the scheme). Since federally

insured status or federal charter is an essential element and required for jurisdictional purposes,

count 1 is legally deficient and must be dismissed. *United States v. Murrah*, 478 F.2d 762, 764

(5th Cir. 1973) (''of course proof of FDIC insured status is a required element of proof of the

offense. Indeed, it is necessary to allege and prove it to establish federal jurisdiction.''). *See*

*also United States v. Leeper*, 2006 U.S. Dist. LEXIS 32147, \*9 (W.D.N.Y. May 22, 2006) (''charge is not valid unless it includes all of the essential elements of the crime'').

If follows that Count two must also be dismissed for legal insufficiency because there is no properly allege predicate. Count two accuses the defendant of conspiring to commit money laundering through promotion, concealment and transactions in criminally derived property in violation of 18 U.S.C. §§ 1956(a)(1)(A), 1956(a)(1)(B) and 1957(a), respectively, Likewise, counts 3-11 rely on Count 1 as a necessary predicate. Since Count 1 is legally deficient as described above, all remaining counts lack a legally sufficient predicate and must be dismissed. *United States v. Handakas*, 286 F.3d 92, 112-13 (2d Cir. 2002) (where predicate was reversed, ''the money laundering conviction also falls with it.''

## II.     The indictment Must Be Dismissed for Lack of Venue

The indictment must be dismissed under Fed. R. Crim. P. 12(b)(3)(A)(1) since the government is prosecution this action against the defendant, a New Jersey resident who never stepped foot in the Northern District of New York, in an improper venue. Both the Sixth Amendment and FRCP 18 requires that a defendant be tried in the district where his crime was committed. U.S. Const, Amend. VI; FRCP 18. When determining whether an offense was committed in a particular district, the court look to ''the nature of the crime alleged and the location of the acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 5 (1998) (quotation marks omitted). Venue is proper in any district in which the offense ''was begun, continued, or completed.'' *United States v. Magassousba*, 619 F.3d 202, 205 (2d Cir. 2010) (internal citations and quotes omitted). In circumstances where an offense relies on a predicate crime, venue properly includes any district where venue is proper for the predicate. *Id*. at 206.

For conspiracies, however, the analysis requires that an overt act in furtherance of the conspiracy occurred in the district of venue and that overt acts occurrence in that venue was ''reasonably foreseeable'' to the defendant. *United States v. Rommy*, 506 F.3d 108, 123 (2d Cir. 2007). Courts look to the "essential conduct elements" of the offense to determine where an offense was committed. *United States v. Salinas*, 373 F.3d 161, 165 (1st Cir. 2004). In the context of a conspiracy charge, this means venue is proper in "the district in which the unlawful agreement [to commit the offense] was reached" or "any district in which an overt act

2

in furtherance of the conspiracy was committed." *Whitfield v. United States*, 534 U.S. 209, 218 (2005)

When venue is challenged on a pretrial motion to dismiss, the Government's burden is limited to showing that the indictment alleges fact sufficient to support venue. *United States v. Portillo*, 2024 U.S. Dist. LEXIS 3415, \*10 (S.D.N.Y. 2014). Nonetheless, venue must be proper with respect to each count." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989).

Here there are facially obvious venue defects with the indictment. First Counts 9, 10 and 11 all allege substantive aggravated identity theft in other judicial district. Count 9 is alleged to have occurred in Damascus, Virginia, Count 10 in Summerville, South Carolina, and Count 11 in Southport, New York, which is the Western District of New York. Based on these allegations, counts 9-11 are facially defective since venue is not sufficiently pled for these offenses. Relatedly, while the government alleges counts 4 and 5 occurred in this district in the indictment, the discovery reveals that the underlying transactions occurred in Massachusetts. As a result, counts 4 and 5 are facially defective for lack of venue and must be dismissed.

For Count 1, the government has not alleged that were was an overt act in furtherance of the conspiracy that occurred in the NDNY. *United States v. Diab*, 2023 U.S. Dist. LEXIS 236726, \*14 (D. Mass 2023) (establishing venue for conspiracy charge requires an overt act in district). *See also United States v. Attanasio*, 870 F.2d 809, 816 (2d Cir. 1989) (nothing that the overt acts are relevant to defining the scope of the conspiracy). The closest the government comes is in ¶ 9 where it alleges that the defendant's ''were collectively involved in hundreds of fraudulent transactions at financial institutions in the Northern District of New York and all over the country'' but this general statement is insufficient to allege a necessary overt act in furtherance of the conspiracy requiring dismissal of Count 1.

For count 2, conspiracy to commit money laundering, which has its own statutory venue provision, venue is proper ''in the district where venue would lie for the completed offense … or in any district where an act in furtherance of the attempt or conspiracy took place." 18 U.S.C. § 1956(i)(2); *see Whitfield*, 543 U.S. at 218. Here, however, the indictment does not allege any overt act in furtherance of the conspiracy occurred in the NDNY. The Second Superseding indictment also does not allege where the completed offense of money

laundering took place. Instead, the Second Superseding indictment alleges generalized claims about the ''manner and means'' of the conspiracy but does not tie any such claim to the Northern District of New York. Moreover, the government cannot rely on the existence of criminal proceeds generated in the NDNY as a basis for venue here as that is mere ''circumstances element'' of money laundering. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 & n.4 (1999) (venue not proper for where criminal proceeds where generated as its ''anterior'' or a ''circumstances element''). As a result, counts 2 is facially insufficient and should be dismissed.

III.    Motion to Inspect Grand Jury Minutes Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii)

Defendant respectfully moves this court for an order directing the government to disclose the Grand Jury minutes in this case pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii). Defendant asserts that there is a particularized need for the disclosure of the grand jury minutes to avoid manifest injustice, as the indictment was procured through erroneous instructions to the jury. Furthermore, the indictment improperly charges offenses far removed from the jurisdiction of the grand jury in violation of the Grand Jury Clause and Sixth Amendment.

A.    Legal Standard

Fed. R. Crim. P. 6(e)(3)(E)(ii) permits disclosure of grand jury materials when a defendant demonstrates a particularized need that outweighs the need for secrecy. The Second Circuit recognizes that such disclosures is warranted where it is necessary to prevent injustices or to ensure the integrity of judicial proceedings. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958); *see also in re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996).

A defendant must show that the grand jury process suffered from a defect such as perjured testimony, erroneous instructions, or prosecutorial misconduct, and that the disclosure is necessary to address such defects. *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).

I.    Argument

i.   Hearsay Testimony Was Presented to the Grand Jury

4

There is a reason to believe that hearsay testimony was presented to the grand jury in this case. The original indictment charges defendant with one count conspiracy to commit bank fraud 18 U.S.C. § 1349, two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The second superseding indictment charges the same conspiracy to commit bank fraud, the superseding indictment added conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and nine counts of aggravated identity theft 18 U.S.C. § 1028A(a)(1). The government turned over 42,688 Bates numbered documents in the production of discovery. The discovery show identities were transferred over mobile communication between co-conspirators, the conspirators in turn utilized the identities to defraud financial institutions. SA Warren was the government key witness before the grand jury. SA warren testimony before the grand jury was outside his personal knowledge. Absent disclosure of the grand jury minutes, Defendant cannot determine the extent to which SA Warren testimony influenced the grand jury decision to indict and a manifest injustice may occur.

ii. The Grand Jury was improperly instructed

There is a reasonable basis to believe that the grand jury received hearsay testimony, misleading legal instructions, which may have improperly influenced their deliberations. The Second Circuit has emphasized that a defendant has the right to be indicted only upon consideration of competent evidence and appropriate instructions by a grand jury. *United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990).

Without access to the grand jury instructions, Defendant is unable to evaluate whether the grand jury was properly instructed on the elements of the offense or the evidentiary standards required to return an indictment.

iii. Prosecutorial Misconduct Occurred During the Grand Jury Proceedings

Defendant alleges that prosecutorial misconduct tainted the grand jury proceedings. This misconduct may include the improper presentation of evidence, undue influence over grand jurors, hearsay testimony when the grand jury does not know the testimony is hearsay, or improper statements by the prosecutor. The Second Circuit has acknowledged that prosecutorial misconduct can justify disclosure of grand jury minutes to ensure fairness in the

5

judicial process. *United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979). In federal criminal proceedings, the Fifth Amendment guarantees the right to an unbiased grand jury. *Costello v. United States*, 350 U.S. 359, 363 (1956). Without disclosure of the grand jury minutes, it is impossible to determine whether the prosecutor has adhered to their duty to present evidence fairly and accurately.

iv. The Indictment Violates the Grand Jury Clause and Sixth Amendment

The indictment includes charges for alleged conduct that occurred far outside the temporal and geographical scope of the grand jury jurisdiction. This conduct violates the Grand Jury Clause, which requires that charges be supported by evidence presented to the grand jury, and the Sixth Amendment, which guarantees the defendant the right to be informed of the nature and cause of the accusation.

Without disclosure of the grand jury minutes, Defendant cannot ascertain whether the grand jury had sufficient evidence to support the extraneous charges.

v. Manifest Injustice Will Occur Without Disclosure

Disclosure of the grand jury minutes in necessary to prevent manifest injustice. The potential defects in the grand jury process. Erroneous instructions, hearsay testimony, prosecutorial misconduct, and violations of Constitutional rights directly undermine the integrity of the indictment. As the Second Circuit has recognized, [t]he fairness of the criminal process depends on the integrity of the grand jury proceedings. *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983). Although there is no prohibition on the use of hearsay evidence before a grand jury, our decision in *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972), indicates that extensive reliance on hearsay testimony is disfavored. More particularity, the government, the government prosecutor, in presenting hearsay evidence to the grand jury, must no deceive the jurors as to the quality of testimony they hear. *Id.* at 1137.

The court should permit the defendant access to the grand jury minutes under Fed. R. Crim. P. 6(e)(3)(E)(ii). The court is authorized to disclose grand jury minutes "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury [.] *Id*. While a defendant seeking such disclosure has ''a heavy burden of showing that 'compelling necessity' outweighs countervailing public

6

policy in order to disturb the presumption of the 'indispensable secrecy of grand jury process'" *United States v. Barrett*, 824 F. Supp. 2d 419, 446 (E.D.N.Y. 2011) (*quoting United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958), it is nonetheless permitted where a stated ground may exist to dismiss one of more charged in the indictment.

Here disclosure of the Grand Jury minutes is necessary to determine (a) the scope of the conspiracies alleged in counts 1 and 2, and (b) the basis for venue for counts 1, 2, 4, 5, 9, 10 and 11. As described in more details below, the defense requires greater particularity regarding the scope of the conspiracies alleged in Counts 1 and 2 to prepare for trial, avoid unjust surprise, interpose a Double Jeopardy Defense, and to guard against impermissible constructive amendment and prejudicial variance of the indictment. The government charging theory is so broad, that the government could sweep in any conduct and consider it ''in furtherance'' of the conspiracy. By disclosing what the scope of the conspiracy was that the government presented to the grand jury, the defendant can prepare its defense and adequately guard against the government shifting its theory at trial. Without the disclosure, the defense would not know whether the government have impermissibly expanded the scope of the conspiracies, including new unindicted co-conspirators never contemplated by the Grand Jury or otherwise amended or varied from the theory the Grand Jury returned.

Additionally, the government has charged substantive offenses that occurred outside this district. Specifically, counts 9, 10, and 11 all alleged substantive aggravated identity theft offense that occurred in other judicial district. Similarly, based on the discovery, counts 4 and 5 also occurred outside this district despite allegations to the contrary in the Second Superseding Indictment. As a result, if the court does not dismiss these counts for failing to adequately plead venue as argue above, disclosure of the grand jury materials regarding the evidence and legal instructions regarding venue for these offenses is a compelling necessity to determine whether the government has venue.

vi. Potential for Prosecutorial Misconduct

The defendant has serious concerns about prosecutorial misconduct in the grand jury proceedings. For example, the government may have improperly influenced the grand jury by providing misleading instructions on the law or facts, or by presenting evidence in a manner that was intentionally prejudicial. The alias ''Ace G'' was used by a telegram user between

7

September 7, 2022 and October 27, 2022, the transactions conducted with this alias occurred in Illinois, Georgia, Washington State, Florida and several other judicial district far remote from the Northern District of New York. The indictment uses Sammy LaBanco as an alias; this alias was used by a telegram user between August 18, 2023 and September 22, 2023 when Heather Gaedt conducted transactions at credit unions outside the Northern District of New York. The indictment includes conduct far removed from the Northern District of New York. U.S. Attorney's Manual § 9-11. 121 states: ("A case should not be presented to a grand jury in a district unless venue for the offense lies in that district."). The government has violated the United States Constitution by indicting far away offense in the Northern District of New York. *See United States v. Flotron*, 2018 U.S. Dist. Lexis 69398, *10-22 (Dist. Conn. 2018).

The defendant respectfully submits that disclosure of the grand jury minutes or an in camera review is essential to ascertain the misconduct that occurred before the grand jury.

v. Materials to Defendant's Defense

The defendant ability to prepare a trial has significantly impaired if the grand jury proceedings were flawed. The inspection of the grand jury minutes will allow the court to evaluate whether the defendant's Constitutional rights were violated due to improper evidence or irregularities in the grand jury process.

For the Foregoing reasons, Defendant respectfully requests that this court order the Government to disclose the grand jury materials or the court conduct an in camera review in this case to determine whether the proceedings were flawed due to incompetent evidence, prosecutorial misconduct, or other irregularities that would warrant dismissal of the indictment or other appropriate relief. The in camera, review should not be limited to the government presenting:

1. The testimony presented to the grand jury.

2. The legal instructions given to the grand jury.

3. Any statements or evidence presented by the government.

IV.     Motion to Suppress Evidence Pursuant to Fed. R. Crim. P. 12(b)(3)(C)

8

The defendant, Oluwaseun Adekoya submits this memorandum of law in support of this motion to Suppress Evidence obtained from an unlawful search of his residence. The search warrant was issued with probable cause; it lacked a sufficient nexus to the alleged criminal activity, and relied on an affidavit that omitted material facts. Consequently, all evidence obtained from the search must be suppressed under the Fourth Amendment.

i. Statements of Facts

The Court should suppress the evidence seized from the search of the defendant's apartment and vehicles because the warrant application fails to establish any nexus between the alleged criminal scheme and the apartment and vehicles search beyond the applying agent's say so. Whether a search warrant satisfied the Fourth Amendment's probable cause requirement is judged under the totality of the circumstances test. *Illinois v. Gates,* 462 U.S. 213, 218 (1983). This test requires the reviewing judge to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her,] including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*

When reviewing a warrant application for sufficiency, the court must determine whether the judge who issues the warrant had a "' substantial basis for ... conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Illinois v. Gates,* 462 U.S. at 238-39 (internal quotations omitted). Within this context, conclusory statements are ''inadequate to allow independent determination of probable cause.'' *United States v. Clark,* 638 F.3d 89, 97 (2d Cir. 2011). Additionally, someone's status as a criminal or having previously engaged in criminal activity alone does not create a ''fair probability'' that evidence of a similar crime will be in a residence. *United States v. Williams,* 350 F. Supp. 23d 261, 267 (W.D.N.Y. 2018) (''defendant's status as a drug dealer does not give rise to a fair probability that evidence of drug trafficking will be found in his home"). In the same vein, an agent's opinion that criminals generally keep records related to their criminal activity does not alone provide probable cause to search. *United States v. Gomez*, 652 F. Supp. 461, 462-64 (E.D.N.Y. 1987); *see also United States v. Burke,* 718 F. Supp. 1130, 137 (S.D.N.Y. 1989) (nothing the concerns about "agents turning themselves into instant experts on any subject"). Similarly, where a magistrate relies only on an agent's opinion about the meaning of ''facially

innocent words'', there may be an abdication of the judicial role by the magistrate. *United States v. Cancelmo,* 64 F.3d 804, 808 (2d Cir. 1995)

While an agent's opinion can be an ''important factor,'' other evidence tying the residence to criminal activity is needed beyond a mere agent's opinion. *See United States v. Benevento,* 836 F.2d 60, 70-71 (2d Cir. 1987) (upholding warrant where application was supported by agent's opinion plus evidence of prior criminal activity in the home to be searched); *see also United States v. Kortwright,* 2011 U.S. Dist. LEXIS 107386, *17-18 (S.D.N.Y. 2011) (no probable cause from one-year-old drug transactions and no evidence of criminal activity at residence). Holding otherwise would turn every arrest into a basis to search a suspect's home and vitiate the Fourth Amendment's particularity requirement

Probable cause to search a residence requires the applying agent to establish that a crime was committed and that evidence of that crime is located in the residence law enforcement seeks to search. *United States v. Travisano,* 724 F.2d 241, 345 (2d Cir. 1983). Furthermore, if the evidence supporting the warrant ''is not sufficiently close in time to the issuance of the warrant'' the information is stale and does not support probable cause" *Raymonda,* 780 F.3d at 114 (2d Cir. 2015)

i. Legal Standard

The Fourth Amendment requires search warrants to be supported by probable cause, which must show a fair probability that evidence of a crime will be found at the location searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is only sufficient if there is a clear nexus between the place to be searched and the criminal activity alleged. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) ("to Justify a search, the circumstances must indicate why evidence of illegal activity will be found in a "particular place." There must be, in other words, be a "nexus between the place to be searched and the evidence sought."

If an affidavit recklessly or intentionally omits material facts, the resulting warrant must be invalid, and any evidence obtained through it must be excluded. *Franks v. Delaware*, 438 U.S. 145, 171-72 (1978).

iii. Argument

10

a.  The Search Warrant Lacked Probable Cause Due to an Absence of "Nexus"

To Satisfy the Fourth Amendment, a warrant must demonstrate a nexus between the place to be searched and suspected criminal activity. Here, the affidavit supporting the warrant fails to establish any specific connection between defendant's residence and the alleged criminal offense. The mere presence of a residence does not by itself justify a search.

Here, in the 90 paragraphs (¶13 to ¶103) spent establishing probable cause, there is no evidence other than SA Warren's opinion that evidence of criminality exists within the apartment or vehicles. There is no evidence of an IP address or phone line associated with the apartment that was also used to further the alleged scheme. Despite Surveillance, there was no evidence that Adekoya met with any alleged co-conspirators at the apartment. Despite obtaining a warrant to track Adekoya's phone, there was no evidence offered that Adekoya was present in the apartment at the crime certain banks were being defrauded. There is no evidence that any of the telegram messages attributed to Adekoya were sent from or would be saved in the apartment or vehicles. The closest the application comes is stating that thirteen months prior to applying for the search warrant. SA Warren believed that Adekoya received a Federal Express package from someone the government believes creates fake identifications. Para 89. Nevertheless, this stale information is not even enough as SA Warren does not know what was in the package and does not attempt to connect that package or the generator of fake identities to any of the underlying criminal conduct.

The government must establish a nexus between the alleged crime and the apartment beyond Adekoya living there and the agent's opinion that criminal keep records related to their criminal conduct in their homes. As a result, this case is similar to *Kortwright,* supra. In *Kortwright,* law enforcement obtained a warrant to search the defendant's home based on a one-year-old drug transaction. In determining that the warrant was, not support by probable cause, Judge Wood, held that more was needed than the agent's opinion that drug dealers keep records related to their drug business in their homes and the defendant being arrested on a year-old drug sale. *Kortwright*, 2011 U.S. Dist. LEXIS 107386 at \*22. The same is true here. More is needed for probable cause to search the apartment than allegations that Adekoya engaged in criminal activity and SA Warren's opinion that records related to the alleged crime would be kept in the residence.

11

Relatedly, the application does not begin attempting to establish any basis connecting Mr. Adekoya to the alleged bank fraud scheme until ¶ 68. From there on, beyond establishing that Mr. Adekoya lives at the target apartment and controlled the target vehicles, which are disputed, the entirety of the probable cause is based on (a) attributing more than 10,000 telegram messages with Daniyan found on device 1B22 to Mr. Adekoya; (b) that Adekoya's wife and Daniyan's wife have sent one another money; and (c) the representation that he was identified as a suspect in a bank fraud in Alabama by local law enforcement in September 2023. For the reasons describe below, this is an insufficient basis for probable cause.

First, SA Warren materially misled the reviewing magistrate with his representation about the telegram messages he attributed to Adekoya. SA Warren affirmed that he attributed over 10,000 messages between Daniyan and Adekoya from his review of 1B22. In doing so, SA Warren wrongly implied that the messages were all clearly between Daniyan and Adekoya and perhaps even from a single source. The 10,000 messages, however, are not part of a single message thread. The messages are not between two dedicated accounts. Similarly, no telegram number was named anything to suggest Adekoya. Rather, the 10,000 messages are an aggregated total of telegram messages from multiple independent telegram accounts that SA Warren attributes to Adekoya: telegram account number 538-848-2893, which the user of 1B22 named ''Ace G''; telegram account number 1-341-171-5526; and telegram account number 545-605-0335. The existence of three separate telegram accounts was not explained in his application.

In ¶82, SA Warren cites to messages between 1B22 and who he identities as Adekoya. These messages however came from a telegram use with account number 13417155526. This account did not have a name associated with in in 1B22. SA Warren provides no explanation for how he attributed this account to Adekoya meaning that his conclusion that Adekoya is the declarant for the 13417155526 messages is entirely conclusory and unsubstantiated.

Likewise, in ¶86 SA Warren report that Adekoya would ''frequently call credit unions well in advance of fraudulent activity.'' In ¶87 and ¶88, SA Warren provided examples of these calls from September 15 and October 25, 2022, to credit unions. Based on the warrant application, SA Warren's only basis for identifying Adekoya as the caller is a series of telegram messages between the telegram user ''Ace G'' associated with number 538-848-

2893, and device 1B22 at the time of these alleged calls. Yet, SA warren provides no explanation for how he links Ace G or the telegram account associated with Ace G to Adekoya, SA Warren omitted from the magistrate that the phone calls to the credit unions originated from numbers not associated with Mr. Adekoya. The government issued subpoenas to T-Mobile/MetroPcs to determine the subscriber information of the phone before the warrant was issued. SA Warren materially omitted from the magistrate 415-724-3541 and 201-617-3105 were registered to individuals not linked to Mr. Adekoya. As a result, this is another conclusory and unsubstantiated claim.

Also missing from SA Warren's application was that the telegram messages referencing Zelle transactions he identifies as between Daniyan's and Adekoya's spouses in the application (¶69-70), only occurred on Telegram accounts 543-605-0335. SA Warren's application does not identify any similar Zelle transactions occurring between the 1B22 user and the user of the two other telegram accounts or any other messaging services. Moreover, other than the telegram messages regarding Zelle Payment requests, SA Warren cites only one other message between telegram account 543-605-0335 and device 1B22 as evidence of Adekoya's involvement in the bank fraud scheme. Specifically, in ¶ 73 SA Warren identifies a telegram message on July 16, 2022 between telegram account user 543-605-0335 and device 1B22. In this messages he claims Adekoya States ''I mean at this moment to do SS and all those things and to find the banks we gonna do might take 3-4 days''. From this, SA Warren represented to the court, that Adekoya ''appeared to obtain most of the victim PII and usually determined which credit unions would be victimized. *Id*. Notably, there is no reference any specific PII, credit union or bank. There is no explanation of what SA Warren understood ''SS'' to mean or his basis for concluding the same. What is more, there is no claim that Zelle Money was linked to any criminal activity and that evidence of that criminal activity would be found in the apartment or vehicles 17 months later. These *de minimis*, stale, connections that do not provide any nexus to the residence or vehicles to be searched are insufficient for probable cause.

b. Funke Daniyan, Adejoke Olumodeji Exchange of Money and the Alabama Scheme

SA Warren's application also attempts to link Adekoya to the alleged bank fraud conspiracy continued through 2023 by establishing that Daniyan's wife, Funke Daniyan, and Adekoya's wife, Adejoke Olumodeji, exchanged money in 2023 in short, SA Warren asserted

that ''Financial records obtained by the FBI indicate the relationship between DANIYAN and ADEKOYA Continued throughout 2023.'' ¶84. However, what did SA Warren establish in support of this ongoing fraud conspiracy?

First, that a net of only $1,560.00 was transferred to Adejoke Olumodeji from Funke Daniyan over a seven-month period in 2023. SA warren asserted that Funke Daniyan sent Adejoke Olumodeji $4,200 over seven months (January-July) in 2023 and that Adejoke Olumodeji sent Funke Daniyan $2,460 from March 1, 2023 to April 21, 2023. ¶85. This net to $1,560.00 transferred to Adejoke Olumodeji. The last apparently relevant transfer SA Warren identified was on July 6, 2023, five months before the warrant was applied for. *Id*. As such, the transactions are ''[not] indicative of very much.'' *United States v. Capeda,* 768 F.2d 1515, 1518 (2d Cir. 1985) (commenting on legal sufficient context that *de minimis* properly had little evidentiary value).

Notably, SA Warren does not link these transfers to any alleged bank fraud that occurred over the time the transactions took place. He also does not allege that Adekoya or Daniyan initiated any of these transactions. He does not identify any messages, calls, or other evidence to indicate that the transactions are related to criminal activity. He also does not allege that the transactions have any nexus with the residence or vehicles to be searched.

SA Warren's best effort to link these transactions to a crime is to suggest that when they are combined with Adekoya's alleged fraud in Alabama in September 2023, there is evidence of the same ongoing fraud between Adekoya and Daniyan ¶85. However, there is no evidence linking this uncharged, unprosecuted incident in Alabama to any of the aforementioned transactions. Nor is there any indication of contemporaneous transactions between Funke Daniyan and Adejoke Olumodeji to what allegedly occurred in Alabama in September 2023. SA Warren also offers no messages indicating that Adekoya and Daniyan worked together on the alleged scheme in Alabama. He also offers no indication that any evidence related to the alleged Alabama scheme would be in Adekoya's residence of vehicles.

In sum, the application established a *de minimis* exchange of money between the target's spouses over a 15 months' period that is not tied to any on-going criminal activity or to any places, SA Warren sought a warrant to search. SA Warren further provided the reviewing magistrate with the misimpression that over 10,000 telegram messages came directly from

14

Adekoya when he had no factual claim to do so. For these reasons, there was no probable cause to obtain the search warrant for Adekoya's apartment and vehicles and suppression of all seized evidence from the search should follow. Relatedly, the Good Faith Exception does not salvage suppression here as SA Warren mislead the reviewing magistrate or was reckless with his factual assertions. Furthermore, based on the above cases, it is clearly established law in the Second Circuit that more is needed to obtain probable cause than an agent's opinion about an alleged criminal's record retention practices and stale information. Consequently, suppression should follow.

The affidavit lacks any factual statements tying the residence to criminal activity; the search warrant failed the nexus requirement, invalidating probable cause. *See United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). ¶101-103, SA Warren conclusory asserted that individuals who commit fraud retain evidence of their fraudulent activity in their residence. The affidavit fails to show a fair probability that evidence of the subject offense would be found at the residence. *See United States v. Falso*, 544 F.3d 110, 113 (2d Cir. 2008); *see also United States v. Lahey*, 967 F. Supp. 2d 698, *710 (S.D.N.Y. 2013) (nexus was found to be lacking); *see United States v. Wey*, 356 F. Supp. 3d 355, *384 (S.D.N.Y 2017) (invalidating search warrant that included "expansive categories of generic items subject to seizure . . . without . . . any linkage to the suspected criminal activity"). Attachment A-2 and A-3 of the affidavit allowed a search of two Mercedes Benz Vehicles registered under the defendant's name. SA Warren affidavit fails to show how the vehicle searched were linked to the criminal activity. SA Warren asserted Heather Gaedt stated she met the defendant in the vehicle when the defendant attempted to help her secure a rental car, the affidavit however, does not state that she made statements she was provided with fraudulent identification document used to commit fraud when she met Mr. Adekoya in the vehicles. SA Warren summarily concluded that because Mr. Adekoya met Heather Gaedt in a vehicle, the vehicles are connected to criminal activity. On July 17, 2023, FBI agents from the Newark Field Office, surveilled defendant on this date, agents who established surveillance did not observe the defendant meet with any co-conspirators or commit any criminal activity. In ¶ 103 of the affidavit, agent Warren asserts I have lived at my resident since February 2020 to present and that I have records, as those sought in the warrant. This assertion is conclusory and not supported by probable cause.

In the alternative, the court should order a *Franks* hearing. The Fourth Amendment entitles a defendant to a *Franks* hearing only if the defendant "makes a substantial preliminary showing that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *Id.* at 125 (internal quotation marks and citation omitted).

iv. The Affidavit Contained Reckless and Intentional Omissions and Material Information

Under Franks v. Delaware, the exclusion of material facts that would affect a probable cause determination invalidates the warrant; in this case, the affiant omitted crucial information that would have shown no evidence was likely to be found at defendant's residence. These omissions were either reckless or intentional, misleading the magistrate into a probable cause determination that would not have been made if all relevant information had been included. The affidavit misrepresentations were deliberate or where made in reckless disregard of the truth of the matter asserted. *See United States v. Trzaska*, 111 F.3d 1019, 1028 (2d Cir. 1997).

v. The Affidavit Is Based on Stale Information

The last incident alleged by the government occurred on September 22, 2023. The affidavit was based on stale information. 81 days passed between the last alleged incidents before the government obtained a warrant to search the residence. The Second Circuit has suppressed evidence where the duration of the criminal offense and the search is based on stale information. *United States v. Wagner*, 989 F.2d 69, 74-76 (2d Cir. 1993); *see also Sgro v. United States*, 287 U.S. 206, 210-11 (1932).

vi. The Search Warrant Lacked Particularity

The Fourth Amendment "requires particularity and forbids overbreadth" as to warrants. *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). "Although somewhat similar in focus, [overbreadth and particularity] are two distinct legal issues.

i. Particularity and Overbreadth

"[T]he particularity requirement 'makes general searches…. Impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" *United States v. Galpin*, 720 F.3d

436, 446 (2d Cir. 2013) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)); *see also United States v. Wey*, 256 F. Supp. 3d 355, 280 (S.D.N.Y. 2017). "The manifest purpose of this particularity requirement was to prevent general searches." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

    "To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Finally, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (internal citations and quotations omitted), abrogated on other grounds by *Carpenter v. United States*, 585 U.S. 296, 317 (2018).

    The warrant in this case authorized an overly broad search and seizure without clearly defending the scope of the search or limiting the items subject to seizure to those related to the alleged criminal conduct. This lack of particularity rendered the warrant constitutionally invalid, and this, any evidence obtained as a result should be suppressed. *United States v. Sandalo*, 2023 U.S. App. LEXIS 14242, *3 (2d Cir. 2023).

    On December 5, 2023, a magistrate issued a search warrant for defendant's residence. The warrant permitted law enforcement to seize a broad array of items including any electronic devices, any banking document, or financial records without specifying how these items were connected to the alleged criminal activity, Furthermore, the warrant failed to limit the search to particular documents or items directly tied to the nature and timeframe of the alleged offense. Attachment A-2 ¶ a-k allowed a generic search of items not related to the allege offense.

    The Fourth Amendment mandates that search warrants particularly describe the place to be searched, and the person or things to be searched, and the persons or things to be seized (U.S. Const Amend IV). This requirement prevents general searched and ensures that a clear, specific framework, which serves as a check against excessive government intrusion, guides law enforcement. *Marron v. United States*, 275 U.S. 192, 196 (1927).

    The Second Circuit in *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) held that the particularity requirement has three components. First, a warrant must identify the specific offense for which the police have established probable cause. *See United States v.*

*Bianco*, 998 F.2d 1112, 1116 (2d Cir. 1993), second, a warrant must describe the place to be searched. *United States v. Voustianiouk*, 685 F.3d 206, 211 (2d Cir. 2012). Third, the warrant must specify the "items to be seized by their relation to designated crime." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010); *see also United States v. Buck*, 813 F.2d 588, 590-92 (2d Cir. 1987) (finding that a warrant authorizing seizure of "any papers, things or property of any kind relating to [the] previously described crime" failed the particularization requirement because it "only describes the crime – and gave no limitation whatsoever on the kind of evidence sought").

In the Second Circuit, the court has emphasized that particularity is necessary to avoid the risk or general search. *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992). A warrant that lacks particularity fails to limit the scope of the search to items related to specific alleged offenses; instead permitting a fishing expedition through a defendant personal belonging. *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010). In this instant matter, the warrant failed to prove sufficient specificity regarding the items to be seized and instead allowed agents to seize broad categories of items without tying them directly to the alleged offense. Such over breadth falls outside constitutional boundaries, as seen in *United States v. Buck*, 813 F.2d 588, 590 (2d Cir. 1987), where the court held that a warrant must identify items to be seized with a high degree of specificity.

The warrant fails to specify what the government can seize and cannot seize. The warrant simply allowed the government to seize any electronic device without identifying if the device had been used to communicate with co-conspirator or used to communicate with credit unions. The Fourth Amendment requires search warrants to particularly describe the places to be searched and the person or things to be seized (U.S. Const. Amend IV). In the Second Circuit, warrants must specify items connected to alleged criminal activity to avoid general searches. See Rosa, 626 F.3d 56 at 62-63; See also Buck, 812 F. 3d 588 at 590. The warrant did not establish a clear nexus between the alleged criminal activity and the broad categories of items authorized for seizure, failing to limit the search to items related to the alleged crime. Courts have repeatedly ruled that a valid search warrant must limit the scope to items that reasonably relate to the probable cause supporting the search. *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013).

18

ii. The Good Faith Exception Does not apply

Although the exclusionary applies when officers act in good faith reliance on a facially valid warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984), this exception does not apply when a warrant is so lacking in indicia of probable cause or particularity that reliance on it would be unreasonable. The warrant lack of specificity in this case rendered it facially deficient, precluding reliance on the good faith exception.

The warrant indiscriminately permits the search of all mobile phone, computers, and thumb drives. The warrant allows seizure of evidence not linked to the subject offense. The warrant allows seizure of an expansive category of generic items. *See* Rosa, 626 F. 3d 56 at 58; *see also United States v. Zemlyansky*, 945 F. Supp. 2d 438, \*460-461 (E.D.N.Y. 2013).

For the reasons stated, the lack of particularity in the search warrant authorized a general and constitutionally impermissible search. Therefore, defendant respectfully request that the court suppress all evidence obtained as a result of the search executed under this deficient warrant.

iii. General Search Warrants Are Constitutional Deficient

A warrant that broadly describes categories of items without tying them to the alleged offense fails particularity standards and risk unconstitutional general searches. Here, the warrant did no delineate specific items tied to conspiracy to commit bank fraud violating the Fourth Amendment safeguard against overly broad searches. *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013)).

The lack of particularity in this warrant renders it facially invalid. Defendant respectfully request that the court suppress all evidence obtained under this deficient warrant.

c. Conclusory Allegations in Affidavit

Defendant move to suppress evidence obtained from a search warrant conducted under a warrant issued based on an affidavit that contain conclusory allegations. The affidavit lacked sufficient factual basis, and as such, it fails to meet the Fourth Amendment standard of probable cause.

19

The search warrant for defendant's residence was issued based on an affidavit in which the agent asserted general conclusions without providing supporting evidence or information to substantiate the assertions.

i. Fourth Amendment Requires a Specific Basis for Probable Cause

The Fourth Amendment requires an affidavit to present a factual basis for probable cause, not merely conclusory statements. *Illinois v. Gates*, 462 U.S. 213 (1983). In the Second Circuit, affidavits must contain specific and concrete evidence linking the place to the alleged offense to establish probable cause. *United States v. Raymonda*, 780 F.3d 105, 113-117 (2d Cir. 2015).

ii. Lack of Factual Basis Makes the Affidavit Constitutionally Deficient

Conclusory allegations that fail to provide underlying facts prevent a magistrate from independently evaluating probable cause. This deficiency renders the warrant invalid, and any evidence obtained must be suppressed. *United States v. Falso*, 544 F.3d 110, 122-23 (2d Cir. 2008).

iii. Motion to Suppress Evidence Obtained From the Search of Defendant's Cell Phone Seized Incident-to-Arrest

I. Factual Background

On December 12, 2023, law enforcement agents arrived at the Defendant's residence to execute a search warrant. The Defendant opened the door to the residence, and during this interaction, the Defendant was arrested. At the time of the arrest, the Defendant had in his possessions an IPhone, referred to as Device 1B80. The phone was seized incident-to-arrest.

Subsequently, the government forensically extracted the date from the phone without obtaining a search warrant. This extraction led the government to the discovery of Defendant's Instagram and Snapchat accounts, as well as an alias, Kiing-maison, which the government now seeks to connect to Sean Maison, a pseudonym allegedly used by the Defendant to register for an account at Corelogic.

20

Additionally, two other mobile devices were seized (1B72 and 1B73) from a guest bedroom in the Defendant's residence, and forensic analysis was conducted on these devices without a warrant.

## II. Legal Argument

### A. The Search of the Defendant's phone Violated the Fourth Amendment

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures, which includes a protection against warrantless searches of cell phone. In *Riley v. California*, 573 U.S. 372, 386-397 (2014), the Supreme Court held that cell phone search require a warrant, even when the phone is seized incident-to-arrest. In Riley, the court recognized that cell phones contain vast amounts of personal and private information and thus cannot be treated like other items typically seized incident-to-arrest.

In this case, the Defendant's phone Device 1B80 was seized incident-to-arrest, but the government did not obtain a search warrant before extracting data from the phone. The forensic extraction of the date from the phone constituted an unlawful search, in violation of the Defendant's Fourth Amendment rights, as no warrant was obtained and no exigent circumstances justified bypassing the warrant requirement.

The government's action in this case are analogous to the unlawful searches condemned in *United States v. Garcia*, 2023 U.S. Dist. LEXIS 130756, *16-36 (Dist. Conn. July 28, 2023); *United States v. Tisdol*, 544 F. Supp. 3d 219, 226-29 (Dist. Conn. June 9, 2021). In both case, the courts held that the search of cell phone data without a warrant violated the Fourth Amendment. Similarly in *United States v. Fox*, 2024 U.S. Dist. LEXIS 130886, *21-26 (E.D.N.Y. 2024), the court found that a cell phone seized incident-to-arrest could not be searched without a warrant absent exigent circumstances.

### B. The Government Had Adequate Time and Opportunity to Obtain a Search Warrant

Even if the government had a legitimate interest in searching the phone, the Fourth Amendment requires that law enforcement obtain a warrant before searching electronic devices such as cell phones, which contain immense amount of private data. In this case, after the phone were seized, the government had ample time to seek to seek a warrant to search the three

mobile devices. The Riley decision emphasized that law enforcement may not rely on the incident-to-arrest exception to justify searching a cell phones data without a warrant.

The government's failure to obtain a warrant before searching the phone is not excused by the fact that the device was seized incident-to-arrest. As the Second Circuit had repeatedly affirmed, cell phone searched require a warrant, and the mere seizure of a device incident-to arrest does not authorize the government to conduct a search of its data.

III. The Evidence Derived From the Unlawful Search Must be Suppressed

The data obtained from the Defendant's phone, including the discovery of the Instagram and snapchat accounts, as well as the alias Kiing_maison, was fruit of the poisonous tree. Because the search of the Defendant's phone violated the Fourth Amendment, any evidence derives from that unlawful search must be suppressed. In *Wong Sun v. United States*, 371 U.S. 471, 484 (1963), the Supreme Court held that evidence obtained as a result of an illegal search or seizure in inadmissible at trial.

The government's attempt to link Kiing-maison to Sean Maison using evidence from the unlawful phone search cannot stand, as it is based on data obtained through a violation of the Defendant's constitutional rights. Therefore, all evidence derives from the forensic analysis of the Defendant's cell phone and two additional phones seized at his residence must be suppressed.

For the foregoing reasons, the Defendant respectfully request that this Court grant the motion to suppress and exclude all evidence obtained from the search of Device 1B72, 1B73, and 1B80.

V.      Motion to Strike Prejudicial Surplusage

Defendant respectfully moves this court to strike prejudicial surplusage and inflammatory language from the indictment pursuant to Fed. R. Crim. P. 7(d). Specifically, defendant argues that the indictment uses an overstated loss figure that does not accurately reflect the actual financial harm caused by the alleged scheme. The indictment uses a loss figure of $1.5 Million and the word 'throughout the country'. The indictment uses aliases

irrelevant to the charged offense. For these reasons, the defendant requests that the court strike these portions of the superseding indictment.

    i. Legal Standard under Fed. R. Crim. P. 7(d)

        Fed. R. Crim. P. 7(d) provides that the court may strike surplusage from the indictment or information if it is not relevant to the charged offense and is inflammatory or prejudicial. The purpose of this rule is to prevent the jury from being exposed to prejudicial or irrelevant information that could unfairly influence their decision-making. As the Second Circuit has noted, an indictment is to be construed to include only allegations that are necessary to charge the offense, and it should be free of unnecessary and inflammatory language. *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (surplusage should be stricken if it is not relevant to the charge and is inflammatory and prejudicial).

    ii. Argument

A. ¶ 2 of the S2 indictment alleges that the object of the conspiracy was to defraud financial institutions throughout the United States. However, the indictment charges offenses only in five Counties within the Northern District of New York. Alleging a nationwide scheme outside the five Counties of offense is highly prejudicial and misleading to the jury. *United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W. D. Ark. 2005) (striking surplusage that was deemed immaterial).

B. ¶ 3 states that the defendant obtained personally identifiable information (PII) of individuals living throughout the United States. This allegation is:
    1. Irrelevant to the specific bank fraud transactions in Northern District of New York;
    2. Prejudicial as it suggests broader criminal conduct; and
    3. Inflammatory, as it implies widespread identity theft unrelated to the specific charges.

        Courts routinely strike such allegations when they unnecessarily expand the scope of the charged offense. *United States v. Miller*, 26 F. Supp. 2d 415, 420 (N.D.N.Y. 1998) (striking surplusage where broad allegations creates unfair prejudice).

C. ¶ 7 states that the defendant accompanied Kurschner and other co-conspirators to financial institutions to carry out the scheme. However:
    There is no evidence that the defendant ever accompanied any co-conspirator to a financial institution in the Northern District of New York. Even if defendant accompanied

Heather Gaedt to conduct, distinct transactions in a different judicial district, those actions are unrelated to Northern District of New York and cannot justify prejudicial surplusage in an indictment limited to five Counties in the Northern District of New York. Courts strike such allegations when they falsely imply broader participation in a conspiracy limited to a particular judicial district.

D.   ¶ 9 of the indictment alleges that the scheme to defraud resulted in a loss figure that significantly overstates the actual financial harm caused by the alleged conduct that occurred in Northern District of New York. Courts have struck surplusage from indictments when the loss figure is based on unsupported or inflated estimates that are likely to cause undue prejudice. In this case, the inflated loss figure has no direct connection taken by the defendant and serves only to mislead the jury into thinking that it could convict based on transactions that occurred in other judicial districts.

The Second Circuit has held overstating the loss caused by an offense can be prejudicial and should be removed from an indictment when it serves no legitimate purpose, other than to inflame the jury. Thus, the court should strike the loss figure from the indictment because it is not an accurate representation of the financial impact of the scheme and is unnecessary for proving the elements of the offense.

E.   The Location of the Impersonation and the Names of the Credit Unions are Irrelevant to the charged offense.

The defendant is charged with nine counts of aggravated identity theft, under 18 U.S.C. § 1028A(a)(1) and 2, the statue provides:

Whoever during and in relation to any felony, violation enumerated in subsection (c), knowingly, transfers, possesses, or use, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

The elements of aggravated identity theft under § 1028A(a)(1) are:

1.   The defendant knowingly transferred, possessed, or used a means of identification of another person;

2.   The defendant did so without lawful authority; and

3.   The defendant transferred, possessed or used with lawful authority the means of identification defendant knows belongs to someone else;

4. The defendant did so during and in relation to a predicate felony offense.

Neither the location of the alleged impersonation nor the names of the financial institutions are elements of the offense. Unlike other financial crimes where the identity of the institution may be relevant (e.g., Bank fraud under 18 U.S.C. § 1344), § 1028A does not require proof of a specific institution. The essential focus of the statue is the unauthorized use of another's identity, not where the alleged conduct occurred, or which institution was involved.

Because this information is not necessary to establish the offense, its inclusion in the indictment is surplusage that should be stricken. *See United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (holding that unnecessary allegations that are irrelevant to the crime charge should be stricken to prevent jury confusion and undue prejudice).

   i. The references to specific credit unions and locations serve no legitimate prosecutorial purpose beyond prejudicing the defendant. Identifying particular financial instructions may create an implicit association with victims or broader fraud schemes that are unrelated to the charge. This can unfairly influence the jury by suggesting a greater scope of wronging than what is legally at issue in this case. Moreover, the location of the alleged offense is irrelevant because it does not alter the fact of whether an unauthorized use of another's identity occurred since the government will include the transaction receipts of the victims. Courts routinely strike inflammatory language from indictments where the information is not essential to the charged offense. *See United States v. Poore*, 594 F.2d 29, 41 (4th Cir. 1979) (striking surplusage where language was both unnecessary and prejudicial).

   ii. Failure to Strike This Language Risks Jury Confusion and Undue Prejudice
   Leaving prejudicial surplusage in an indictment can improperly shift the jury's focus away from the required elements of the crime and instead invite speculations about uncharged conduct. Courts recognize the importance of ensuring indictments do not mislead the jury with allegations that extend beyond what the government is required to prove. *See United States v. Gotti*, 42 F. Supp. 2d 252, 292 (S.D.N.Y 1999) (affirming the striking or prejudicial allegations that could mislead the jury.

25

By striking references to the location of the impersonation and the names of the credit unions, the Court will ensure that the jury focuses solely on the elements of aggravated identity theft rather than extraneous details designed to evoke an emotional response.

F.  The Use of Aliases is Unsupported and Irrelevant

The indictment includes several aliases that are not substantiated by any documentary evidence and are irrelevant to the charges at hand, the Second Circuit acknowledge that the inclusion of irrelevant aliases in an indictment can unfairly prejudice the defendant by suggest criminal conduct not directly tied to the charges. The use of these aliases, without support from any documentary evidence serves only to create confusion and may lead the jury to unfairly associate the defendant with unrelated criminal activity.

The indictment should be stripped Ace G, Sammy LaBanco, Sean Maison and Kiing_maison as they have no bearing on the charged offense and could serve only to confuse the issues for the jury.

iii. The Prejudicial Surplusage Creates a risk of Constructive Amendment or Variance

By including irrelevant, nationwide allegations, the indictment risks a constructive amendment or prejudicial variance, violating the defendant's Fifth and Sixth Amendment rights. *See United States v. Millstein*, 401 F.3d 53, 65 (2d Cir. 2005) (constructive amendment occurs when allegations broaden the charges beyond the grand jury's indictment).

For the foregoing reasons, the defendant respectfully requests that the court strike ¶ 2, 3, 7, 9, the names of the credit union, and location of the credit unions in the aggravated identity theft counts from the S2 indictment under Fed. R. Crim. P. 7(d) to prevent undue prejudice and ensure a fair trial.

## VI.   Motion to Compel Bill of Particulars

Pursuant to Fed. R. Crim. P. 7(f), defendant respectfully moves this court to order the government to file a bill of particulars. A Bill of particulars in necessary in this case to provide defendant with adequate notice of the specific acts for which he is accused, enabling him to prepare his defenses, avoid prejudicial surprise at trial, and protect his Constitutional rights against double jeopardy. The defendant request clarification of the charges against him,

26

specifically as to the ambiguous language used in the indictment, which references to others, the phrase conspired with others known and unknown and the term elsewhere.

In support of this motion, defendant states the following:

i. Introduction

Defendant is charged with Conspiracy to Commit bank fraud, 18 U.S.C. §§ 1344, 1349, money laundering conspiracy § 1956(h) and nine counts of Aggravated identity theft, 18 U.S.C. § 1028A(a)(1) and 2 under an indictment that is overly broad and general. The indictment lacks sufficient factual detail to identify the specific acts or omissions that form the basis of the charges against defendant. Compounding the problem is the government's production of voluminous discovery, which, while extensive, fails to clarify the specific conduct allegedly committed by defendant.

Without a bill of particulars, defendant is left to guess as to the precise nature of the charges, impeding his ability to prepare a meaningful defense and exposing him to prejudicial surprise at trial.

ii. Legal Standard

Fed. R. Crim. P. 7(f) provides that [t]he court may direct the government to file a bill of particulars. The purpose of a bill of particulars is to:

1. Inform the defendant of the nature of the charges with sufficient precision to prepare for trial;
2. Avoid or minimize prejudicial surprise at trial; and
3. Enable the defendant to plead double jeopardy in any future prosecution for the same offense. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

In the Second Circuit, a bill of particulars is particularly warranted when the indictment and discovery fails to provide adequate notice of the specific conduct underlying the charges. *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).

iii. Argument

a. The Indictment Fails to Provide Adequate Notice of the Specific Conduct at Issue

The indictment in this case merely parrots statutory language without detailing the specific acts or omissions attributable to defendant. As the Second Circuit has emphasized, [a]

27

defendant is entitled to know the theory of the government's case and the precise acts of the defendant relied upon to establish the charges. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). The indictment in this case uses the term, others, conspired with others known and unknown and elsewhere, which leaves the defendant without sufficient information to identify who the alleged co-conspirators are or where the allege acts took place. The ambiguity impedes the defendant ability to prepare an effective defense and to understand the nature of the charges.

1. Identification of others: The term others is overly vague, and the defendant is entitled to know the identities of the individuals with whom the allegedly conspired. The government's failure to provide this information violates defendant's right to be informed of the nature and cause of the accusation against him.

2. Ambiguity of known and unknown co-conspirators: The indictment refers to others known and unknown, which does not allow the defendant to determine with certainty which individuals were allegedly involved in the conspiracy. The defendant has the right to know whom these individuals are in order to adequately prepare a defense. *See Bortnovsky*, 820 F.3d 574. (Holding that the defendant is entitled to know the identities of all co-conspirators charged in the indictment).

3. Clarification of elsewhere: The indictments use of the word elsewhere is also vague and fails to specify the geographical locations where the alleged acts occurred. This lack of specificity denies the defendant the opportunity to determine whether he is charged with crimes occurring in multiple districts, which is critical to the defendant to raise appropriate venue challenges. *United States v. Rosi*, 27 F.3d 412, 414-16 (2d Cir. 1994) (holding that venue must be sufficiently specified to allow the defendant to contest the appropriateness of the location).

Here the indictment does not provide the time, place, or manner in which defendant allegedly engaged in the scheme and artifice to defraud banks or credit unions in this district. The lack of details leaves defendant unable to determine which actions the government contends were unlawful, violating defendant's rights to a fair trial.

d. The Voluminous Discovery Does Not Cure the Deficiency

The government has produced an overwhelming amount of discovery in this case, comprising of 42,688 Bates numbered documents, hours of bank footages, audio calls to

banks/credit unions and 34 phone extractions. However, voluminous discovery does not substitute for an adequately detailed indictment. As the Second Circuit noted in *United States v. Bortnovsky*, [t]he government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged. 820 F.2d at 574.

Similarly, in this case, the government expansive document dump has not clarified which specific actions by defendant form the basis of the charges. Without a bill of particulars, defendant is forced to sift through vast amount of irrelevant material, placing him at an unfair disadvantage.

e.  Without a Bill of Particulars, Defendant Cannot Adequately Prepare a Defense or Avoid prejudicial Surprise

The lack of specificity in the indictment prevents defendant from preparing a meaningful defense. For example, Defendant cannot identity:

1. The alleged statements or actions that support the charge of conspiracy to commit bank fraud, money laundering conspiracy, and aggravated identity theft.

2. The identities of alleged co-conspirators or third parties involved; or

3. The specific transactions or communications allegedly constituting illegal activity.

Without this information, defendant is left to speculate about the government's case increasing the likelihood of surprise at trial and violating his Constitutional rights to a fair trial. *See United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010) (holding that a bill of particulars is warranted to avoid unfair surprise at trial).

While granting a request for a bill of particulars is in the court's discretion, courts routinely do so in matters involving a large number of defendants', where lengthy conspiracies are alleged and the alleged criminal scheme are far reaching. *United States v. Reddy*, 190 F. Supp. 2d 558, 570 (S.D.N.Y. 2020) (collecting cases). For example, in *United States v. Savin*, a bill of particulars was granted due to the number of co-conspirators and lengthy multi-year conspiracy). 2001 U.S. Dist. LEXIS 2445, at 85. In *United States v. Nachamie*, the court ordered the government to identity co-conspirators since the defendant was likely to be surprised by the identity of conspirators whom he never met. 91 F. Supp. 2d at 572-73

29

Importantly, while discovery can aide a defendant in obtaining necessary particularity, the Government does ''not fulfill its obligations merely by providing mountains of documents to defense counsel who were left unguided'' as to the nature of the charges pending. *Bortnovsky*, 820 F.2d at 575. Many times the volume of discovery can be ''precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000). When these standards are applied to the Second Superseding Indictment and voluminous discovery in this matter, the need for the required particularization is clear.

Here, the government is pursuing an 11-count second Superseding Indictment involving seven named co-conspirators, eight previously named co-conspirators and an unknown number of unidentified, unindicted co-conspirators. The allegations apparently point to an inter-related nation-wide conspiracy to commit bank fraud and money laundering, and discrete aggravated identity theft allegations spanning two years. The discovery consists of terabytes of data, approximately 34 forensic extractions of seized electronic devices containing tens of thousands of text messages, pictures, and voice recordings. As a result, particularization is needed to prepare for trial, avoid unjust surprise, interpose a double jeopardy defense in the future, and to defend against prejudicial variances and constructive amendments of the second Superseding Indictment at trial.

First, particularization is needed to prepare for trial and avoid prejudicial surprise. The government has elected to charge Counts 1 and 2 as broad, nation-wide conspiracies, with no associated underlying substantive offense. Importantly, the defendant is not charged with substantive bank fraud or money laundering crimes, only conspiring to do so. As a consequence, the government is pursuing such a broad charging theory – a nationwide conspiracy involving untold number of financial institutions and co-conspirators – that can the government fit almost any ''bank fraud'' ''or money laundering'' conduct into it, no matter what was presented to the Grand Jury.

Moreover, the Second Superseding indictment does not provide any useful particularity regarding the scope of the conspiracy. While the Second Superseding indictment provides time constrains of November 2021 to December 12, 2023, courts unfortunately permit the government to admit evidence in furtherance of a conspiracy outside the charges times in indictment. Likewise, while the Second Superseding indictment affirmatively allege offense

30

occurring in Albany, Broome, Clinton, Rensselaer, and Saratoga Counties, the indictment also alleges criminal acts occurred ''elsewhere'' and charges substantive crimes in Clinton County (Count 8), Damascus, Virginia (Count 9), Summerville, South Carolina (Count 10), Chemung County, Western District of New York (Count 11). At this stage, the defense does not know what theory was presented to the Grand Jury beyond ''anything goes bank fraud'' and ''anything goes money laundering'' theories. Such a broad theory, however, defeats the specific agreement requirements for a conspiracy and will lead to unfair surprise at trial. The particularity requested by the defense solves this problem simply by having the government identity the scope of allegations identified by the grand jury beyond the prejudicially nebulous ''everything'' the government is currently providing.

Having the government identify the scope of the conspiracies presented to the grand jury is also critical for defending against a constructive amendment or prejudicial variance at trial. As it stands, the government can leverage immense breadth of a criminal conspiracy charge to fit nearly unlimited national conduct into it. Without knowing what was originally presented to the grand jury or the government particularizing its theory as requested, the defense is unable to guard against constructive amendments and prejudicial variances.

Additionally, the Second Superseding indictment names five co-defendants' for counts 1 but also alleged that the defendant conspired with ''others known and unknown''. The defense requires particularity as to who these other conspirators are to avoid surprise at trial. In such a far reaching prosecutorial theory. This is especially important if any evidence of these unidentified, unindicted co-conspirators was presented to the Grand Jury to obtain the Second Superseding indictment so that the defense can properly understand the scope of the conspiracy and guard against prejudicial variance and constructive amendment as described above.

Defendant respectfully request that the court order the government to file a bill of particulars specifying:

The specific acts or omissions by defendant that constitute the alleged offense:

1. The time, date and placed of the alleged acts;
2. The specific transactions conducted in this district;
3. Specific overt acts or acts in furtherance in this district reasonably foreseeable to defendant;

31

4. The identities of all individuals with whom the defendant allegedly conspired with;

5. The specific locations where the conspiracy was formed or where defendant is alleged to have conspired or committed acts in furtherance of the scheme to defraud;

6. Provide specific details on the term ''others known and unknown;

7. Provide details of ''and elsewhere'' language in the indictment;

8. Any other factual information necessary to enable defendant to prepare his defense and help defendant understand the specific acts he is accused of committing.

Providing this information is crucial to ensure that the defendant's Constitutional rights to a fair trial and effective defense are full protected.

For the foregoing reasons, defendant respectfully request that this court grant this motion for a bill of particulars pursuant to Fed. R. Crim. P. 7(f)

VII.    Motion to Dismiss Indictment Pursuant to Fed. R. Crim. P. 12(b)(3)(A)(i)

Defendant respectfully moves this court to dismiss the indictment in this case pursuant to Fed. R. Crim. P. 12(b)(3)(A)(i), on the grounds that the government violated Fed. R. Crim. P. 18 as well as defendant statutory and constitutional rights under the Sixth Amendment, the government indictment charges offenses allegedly committed far from the proper venue, violating defendant's rights to a fair and appropriate forum.

i. Legal Standard

Fed. R. Crim. P. 12(b)(3)(A)(i) permits a defendant to move to dismiss an indictment for improper venue. Rule 18 provides that the government must prosecute an offense in a district where the offense was committed. The Sixth Amendment guarantees that an impartial jury of the state and district wherein the crime shall have been committed shall try a defendant. These protections ensure that a defendant is tried in a venue that is both geographically proper and convenient, reflecting the fundamental principle that justice is tied to the location of the alleged offense.

The Second Circuit has consistently held that proper venue is a constitutional and statutory requirement that must be strictly observed. *See United States v. Cores*, 356 U.S. 405,

407 (1958); *see also United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989). A failure to adhere to venue requirements is grounds for dismissal.

The indictment in this case improperly charges defendant with offenses allegedly committed in locations far removed from the district in which the indictment was returned. Rule 18 mandates that the government prosecute offenses in the district where they occurred, and the Sixth Amendment further guarantees the defendant be tried in the district where the alleged crimes were committed. *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998).

"The government bears the burden of proving venue, but need only establish it by a preponderance of the evidence." Purcell, 967 F.3d at 186 (quoting *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011). "Where venue is challenged on a pre-trial motion to dismiss, the government burden is limited to showing that the indictment alleges facts sufficient to support venue." *United States v. Delgado*, 2020 U.S. Dist. LEXIS 99227, *2-3 (D. Vt. June 3, 2020).

In this case, the alleged offenses occurred in district far remote from the Northern District of New York, by indicting defendant in the Northern District of New York, the government has violated Rule 18 and Constitutional guarantee of proper venue.

a. The Governments Choice of Venue

Prosecution in an improper venue places an undue burden on defendant, undermining his ability to prepare a defense and depriving him of his Constitutional rights. Venue protections are designed to ensure that a defendant is tried in a location that is geographically relevant and convenient, where witnesses and evidence are readily accessible. *United States v. Ramirez*, 420 F.3d 134, 141-42 (2d Cir. 2005).

Here, prosecution in improper district creates significant obstacles, including:

1. Inconveniences to jurors who lack any connection to the alleged offense;

2. Difficulty in securing witnesses and evidence from the proper venue; and

3. A retrial if the conviction is set aside by the appeals court due to improper venue.

These burdens violate defendant's Sixth Amendment rights and hinder his ability to mount an effective defense.

33

b.   Dismissal is Necessary to Uphold Justice and Prevent Future Violations

Allowing the indictment to proceed in an improper venue sets a dangerous precedent, undermining the Constitutional and statutory protections that safeguards the fairness of criminal proceedings. The Second Circuit has repeatedly emphasized that venue requirements must be strictly observed to preserved the integrity of the judicial system. *United States v. Saavedra*, 223 F.3d 85, 90 (2d Cir. 2000).

ii.   Argument

A.   The indictment violated Rule 18 and the Sixth Amendment

"Both the Sixth Amendment and [Rule 18 of the] Federal Rules of Criminal procedure . . . requires that defendant's be tried in the district where their crime was 'committed." *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020) (quoting *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005)). "When a defendant is charged with multiple crimes in a single indictment, the government must satisfy venue with respect to each charge.'" *Id.* (quoting *United States v. Davis*, 689 F.3d 179, 185 (2d Cir. 2012)). The Second Circuit has "instructed that '[v]enue may lie in more than one place if the acts constituting the crime and the nature of the crime charged implicate more than one location.'" *United States v. Thompson*, 869 F.3d 155, 171 (2d Cir. 2018) (alteration in original) (quoting *United States v. Lange*, 834 F.3d 58, 68 (2d Cir. 2016)). Nevertheless, "the venue requirement ... demand[s] 'some senses of venue having been freely chosen by the defendant.'" *United States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018) (quoting Davis, 689 F.3d at 186). Although not a formal constitutional test," *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000), the Second Circuit occasionally supplements the venue inquiry with a "substantial contact" test, Kirk Tang Yuk, 885 F.3d at 70. "Venue provisions should be narrowly constructed." *United States v. Hoskins*, 2020 U.S. Dist. LEXIS 32663, *36-39 (D. Conn. Feb 26, 2020) (citing *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998)).

i.   Defendant moves to dismiss the indictment because the government has failed to establish proper venue in the Northern District of New York. The discovery provided by the government demonstrates that the defendant had no substantial contact with

34

Northern District of New York and could not have reasonably foreseen any overt act or act in furtherance occurring there.

By indicting the defendant for bank fraud transactions he could not reasonably foresee occurring in Northern District of New York, the government has violated Fed. R. Crim. P. 18 and the Sixth Amendment guarantee of trial in the district where the alleged crime occurred.

Because Venue is a constitutional and jurisdictional requirement, and because the government has failed to demonstrate that venue in Northern District of New York is proper, the charges against the defendant must be dismissed for lack of venue.

ii. The Government's Discovery Demonstrates That Defendant Had No Substantial Contact with Northern District of New York

The government's own discovery materials fail to establish that the defendant had any meaningful or direct contact with the NDNY in connection with the alleged bank fraud transactions. Specifically:

1. The defendant never physically entered the NDNY during the relevant time.
2. The defendant never communicated with anyone in the NDNY regarding the alleged fraudulent transactions.
3. The defendant never directed any financial transaction into the Northern District of New York, nor did he exercise control over any transactions occurring in the district.
4. The defendant could not have reasonably foreseen transactions would occur in the NDNY.

The Second Circuit has held that mere association with a broader alleged conspiracy is insufficient to establish venue unless the defendant can be directly tied to acts committed in the district of prosecution. *See United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005) (Venue must be based on an act performed by the defendant in the district or reasonably foreseeable to the defendant). Here, the lack of substantial contact confirms that venue in the NDNY is improper.

iii. The Government Violated Fed. R. Crim. P. 18 and the Sixth Amendment
   a. The Right to a Proper Venue Under the Constitution and Rule 18

Under Fed. R. Crim. P. 18, [t]he government must prosecute an offense in a district where the offense was committed. Similarly, the Sixth Amendment guarantees a criminal defendant the right to a trial by an impartial jury of the State and district wherein the crime shall have been committed.

In this case, the government has indicted the defendant in Northern District of New York despite the absence of evidence tying him to that district. The alleged bank fraud occurred in locations that were neither directed by nor known to the defendant. Therefore, his prosecution in Northern District of New York violates both Rule 18 and the Sixth Amendment.

b.  The Alleged Bank Fraud Transactions in the NDNY Were Not Reasonably Foreseeable to the Defendant

Even in conspiracy cases, venue is proper only it was reasonably foreseeable to the defendant that an overt act would occur in the district of prosecution. *See United States v. Royer*, 549 F.3d 886, 894 (2d Cir. 2008) (The foreseeability requirement ensures that a defendant is not prosecuted in an arbitrary venue based on the actions of others).

Here, the government cannot establish that the bank fraud transactions in the NDNY were foreseeable to the defendant because:

1.  The defendant had no direct involvement with any financial institutions in Northern District of New York and did not initiate any transactions there.
2.  The defendant did not encourage any co-defendant to conduct transactions in Northern District of New York, nor was he aware that any transactions would occur there.
3.  No evidence suggests that the defendant had knowledge of financial activities occurring in Northern District of New York on specific dates crimes occurred in this district.

Given these facts, the government's attempt to establish venue in the NDNY rests entirely on an improper and speculative theory of foreseeability.

Overt Acts in the NDNY Were Not and Could Not Have Been Reasonably Foreseeable to the Defendant

For venue to be proper, the overt acts alleged in the NDNY must have been both reasonably foreseeable to the defendant and committed in furtherance of the alleged crime. However, the government fails to meet this standard for the following reasons:

1. The defendant did not have any role in the financial transactions that allegedly occurred in Northern District of New York on specific dates.
2. There is no evidence that the defendant had any knowledge of, or control over, the Northern District of New York-based transactions. Mere association with an alleged conspiracy is insufficient to establish venue unless direct involvement can be demonstrated.
3. The alleged financial activity in Northern District of New York does not show any logical connection to the defendant's action elsewhere and no evidence suggest he had any awareness of these events.

Without evidence of actual or constructive knowledge of acts occurring in the NDNY, venue in this district is unconstitutional and improper. *United States v. Saavedra*, 223 F.3d 85, 90 (2d Cir. 2000) (For venue to be proper, there must be a substantial connection between the defendant's action and the district).

    c.  The Charges Against Defendant Must Be Dismissed for Lack of Venue

Because the government's discovery confirms that, the defendant had no substantial contact with Northern District of New York, and because the alleged overt acts in Northern District of New York were not and could not have been reasonably foreseeable to him, the indictment in this district violates Rule 18 and the Sixth Amendment.

The government's failure to establish proper venue in the NDNY creates substantial constitutional and procedural violations including:

1. Unfair prosecution in an Arbitrary Forum: Defendant cannot be prosecuted in a district where he had no substantial contact or connection.
2. Violation of the Right to a Fair Trial: The Sixth Amendment guarantees trial in the district where the alleged offense was committed.

3.  Inability to Present a Proper Defense Requiring defendant to defendant against allegations in a district where he never acted creates undue hardship, prejudice and an unfair trial environment.

For these reasons, the court must dismiss the charges against the defendant for lack of venue and grant any further relief it deems just and proper.

d.  Conclusion

The government has improperly charged the defendant in Northern District of New York despite clear evidence that he had no substantial contact with this district and could not have reasonably foreseen any alleged over acts or act in furtherance occurring there. The indictment violates Fed. R. Crim. P. 18 and the Sixth Amendment by subjecting the defendant to prosecution in a district where he neither acted nor had knowledge of criminal acts occurring.

Accordingly, the defendant respectfully requests that this court dismiss the indictment for improper venue.

VIII.  Motion to Dismiss Indictment Pursuant to Fed. R. Crim. P. 12(b)(3)(A)(v)

Defendant respectfully moves this court to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(iv) due to substantial errors in the grand jury proceedings, including

1.  Elicitation of undisclosed hearsay testimony from SA Warren.
2.  Improper joinder of multiple distinct conspiracies into a single count, violating duplicity.
3.  Failure to instruct the grand jury on reasonably foreseeability in the NDNY.
4.  Prosecutorial misconduct.
5.  Presenting fabricated evidence.
6.  Improper instructions to the grand jury on the elements of the charge offense and venue requirements.
7.  Use of illegally seized evidence to obtain the indictment.

There Errors violate the Fifth and Sixth Amendments, rendering the indictment constitutionally defective and warranting dismissal.

The Fifth Amendment guarantees the right to indictment by a properly constituted and unbiased grand jury. A Violation of this right warrants dismissal of the indictment if errors in the Grand jury proceedings prejudiced the Defendant. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). In the Second Circuit, dismissal is appropriate when errors undermine the integrity of the grand jury process. *United States v. Remington*, 191 F.2d 246, 252 (2d Cir. 1951).

   i. Legal Standard

An indictment must be dismissed if grand jury proceedings were fundamentally flawed due to prosecutorial misconduct or constitutional violations. The Second Circuit has held that an indictment must be free from improper conduct that undermines the integrity of the grand jury process. *See United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) (dismissal warranted where prosecutor distorted evidence).

   ii. Argument

     a.  The Government improperly Elicited Hearsay Testimony Without Disclosure

The government elicited hearsay testimony from SA Warren without informing the grand jury that it was not firsthand knowledge. The Second Circuit condemns the use of undisclosed hearsay in grand jury proceedings. *See United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir. 1972) (reversing an indictment where government relied on hearsay without disclosure).

Here, SA Warren testified about alleged fraudulent transactions and co-conspirators actions without firsthand knowledge, misleading the grand jury into believing the evidence was direct. This prejudiced the defendant and violated due process requiring dismissal.

     b.  The Indictment is Duplicitous by Combining Distinct Conspiracies

The government improperly joined multiple, distinct fraud conspiracies that operated in different states into a single conspiracy charge, violating duplicity. A single conspiracy count that improperly combines separate and independent conspiracies is defective under Second

Circuit law. *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992) (holding that multiple conspiracies cannot be charged as a single conspiracy).

Several alleged co-conspirators never entered the NDNY or interacted with each other. The fraudulent transactions occurred in different jurisdiction, with no common scheme tying them to the NDNY.

This misjoinder prejudices the defendant by attributing acts of unrelated individuals to the same conspiracy, warranting dismissal.

c.  The Grand Jury was Not Properly Instructed on Venue Foreseeability

The government failed to instruct the grand jury on the legal standard for venue foreseeability in Northern District of New York. Venue must be reasonably foreseeable to the defendant for prosecution to proceed in a district. *United States v. Saavedra*, 223 F.3d 85, 91 (2d Cir. 2000).

The indictment relies on transactions in Northern District of New York that were not reasonably foreseeable to the defendant. No evidence in the discovery show that the defendant knew co-conspirators would commits acts in Northern District of New York.

This failure to instruct on venue foreseeability violates the defendant's Sixth Amendment right to fair trial in the proper district and warrants dismissal.

d.  The Government Engaged in Prosecutorial Misconduct

The prosecutor engaged in misconduct by:

1. Presenting fabricated evidence to the grand jury.
2. Failing to instruct properly on the elements of the charges (e.g., intent to defraud, materiality, overt acts, or act in furtherance reasonably foreseeable, FDIC, and NCUA insured status of the financial institutions allegedly defrauded).
3. Using illegally seized evidence to obtain the indictment.

The Second Circuit has held that prosecutorial misconduct before a grand jury can warrant dismissal. *United States v. Bari*, 750 F.2d 1169, 1176 (2d Cir. 1984). The cumulative

effect of these violations undermines the integrity of the grand jury process and requires dismissal.

### iii. Conclusion

For the foregoing reasons, the indictment should be dismissed due to substantial errors in the grand jury proceedings, including the use of undisclosed hearsay, failure to properly instruct on venue, misjoinder of multiple conspiracies, prosecutorial misconduct, and reliance on illegally seized evidence.

### IX.    Motion to Dismiss Indictment Pursuant to Fed. R. Crim. P. 12(b)(3)(B)(i)

Defendant respectfully moves this court to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b)(3)(B)(i) on the grounds that the indictment is duplicitous, charging multiple distinct offense in a single count.

### i. Legal Standard

An indictment is duplicitous when it joins two or more distinct crimes in a single count, thereby creating a risk of jury confusion, prejudice to the defendant, and impairment of the defendant's right to fair notice and protection against double jeopardy. *See United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001); *see also United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). To avoid the problem of duplicity, an indictment may not charge multiple conspiracies in a single count. E.g., *United States v. Murray*, 618 F.2d 892, 896-97 (2d Cir. 1980).

Duplicity violates Rule 7(c)(1) of the Federal Rules of Criminal procedure, which requires a plain, concise, and definite written statement of the essential facts constituting the offense charged.

### ii. Introduction

This motion challenges the Second Superseding indictment on the ground that it improperly joins distinct and unrelated conspiracies in a single count, in violation of Fed. R. Crim. P. 12(b)(3)(B)(i). The indictment charges a broad conspiracy involving multiple transactions of bank fraud, yet the facts demonstrate separate acts, distinct participants, different timeframes, and multiple locations, many of which are entirely outside the

41

jurisdiction of the Northern District of New York. Furthermore, the defendants' charged on the second superseding indictment never set foot in Northern District of New York, making their alleged involvement in a singular overarching conspiracy both factually and legally untenable.

The duplicative nature of the indictment prejudices the defendants' by conflating unrelated conspiracies into a single charge, impending their ability to present a clear defense and exposing them to improper evidentiary spillover. Accordingly, the court should dismiss count 1 as duplicitous.

   iii. The indictment Violates Fed. R. Crim. P. 12(b)(3)(B)(i) by Improperly Joining
      Separate and Unrelated Conspiracies.

     a.  Legal Standard for Duplicity

A count in an indictment is duplicitous when it joins two or more distinct offenses into a single charge. *See United States v. Sturdivant*, 244 F.3d 71. 75 (2d Cir. 2001). Duplicity possess several legal risk, including:

   1.  Uncertainty in Jury Verdicts

A jury may convict without unanimous agreement on which specific offense was committed.

   2.  Prejudicial Evidentiary Spillover

Evidence admissible against one conspiracy may improperly influence the jury's view of another, unrelated conspiracy.

   3.  Impairment of the Right to a Unanimous Verdict

Defendants' cannot determine whether a conviction results from a single theory of liability or multiple, inconsistent theories.

Here, the S2 indictment suffers from all these defects by improperly consolidating multiple distinct bank fraud conspiracies into a single conspiracy charge.

   A.  The Transactions Involve Separate Acts, Distinct Participants and Different
      Timeframes

The indictment alleges a conspiracy encompassing multiple fraudulent transactions, yet these transactions

1. Were carried out by different individuals or groups, acting independently of each other;
2. Occurred at different times in different locations, with no overlapping scheme connecting them;
3. Involved different financial institutions in multiple states, with no singular coordination.

Under these circumstances, the alleged conduct does not meet the legal threshold for a single conspiracy. The Second Circuit has held that a conspiracy county is duplicitous when it alleged multiple scheme that lack a unifying purpose or coordination. *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (distinguishing between a single conspiracy and multiple, unrelated agreements).

B. Many of the Transactions Occurred Outside Northern District of New York and Cannot Constitute a Single Conspiracy

A crucial jurisdiction flaw in the indictment is that many of the transactions occurred entirely outside of the Northern District of New York. In cases where alleged conspiratorial acts occurred in different judicial district, district courts have found improper venue and dismissed the charges. *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998) (holding that venue is improper where no essential conduct element of the offense occurred in the district of prosecution).

Here, the government attempts to stretch the conspiracy across multiple states, yet fails to show:

1. That the defendant had a common agreement connecting their separate activities;
2. That any defendant engaged in conduct within Northern District of New York that furthered a single overarching conspiracy;
3. That venue in Northern District of New York is appropriate for those whose alleged actions never touched this district.

Without these essential elements, the governments charge fails as a duplicitous and jurisdictionally improper indictment.

C. The Defendants' on the Second Superseding Indictment Have Never Set Foot in the NDNY

The indictment defects are further compounded by the fact that some defendants' have never set foot in the NDNY, yet are being prosecuted within this jurisdiction under a broad and ill-defined conspiracy theory. The Supreme Court has held that venue is proper only where an essential element of the charged offense occurred. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). If a defendant has had no contact with Northern District of New York and did not direct any acts into this district, then prosecuting them in this venue is improper and unjust.

Moreover, Courts have routinely dismissed conspiracy charges where the government fails to establish that all alleged co-conspirators were working towards a unified goal. *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). The fact here indicates multiple, disconnected groups operating in different locations, rather than a single conspiracy, making the charge impermissibly broad.

a. Prejudice to the Defendant Due to the Duplicative Indictment

The prejudicial impact of a duplicative indictment is significant:

1. Unfair Evidentiary Spillover
   Evidence against one set of defendants' may improperly be used against others who had no involvement in their transactions.

2. Inability to Mount an Effective Defense
   Defendant cannot reasonably prepare a defense when multiple conspiracies are alleged as a single conspiracy.

3. Jury Confusion and Unfair Conviction Risks

A jury could convict without unanimity as to which specific conspiracy a defendant participated in, violating constitutional protections.

44

Given these substantial risk, the duplicative count must be dismissed to preserve due process and ensure a fair trial.

b. Argument

A. The indictment Combines Distinct Transactions into a single Count

The indictment improperly joins distinct and unrelated transactions that occurred in faraway district into a single count, creating duplicity. For example

1. The indictment joints transactions in the Northern District of New York and transactions in Virginia, which were separate transactions or offenses into a single count. The indictment in this case charge five counties of offenses. However, the government presented evidence of a nationwide conspiracy to a grand jury sitting in the Northern District of New York. The distinct transactions targeted several credit unions who do not conduct business in the Northern District of New York; they involve different participants and do not arise from the same acts or transactions. In fact, none of the defendants' charged in the second superseding indictment ever set foot in this district. The indictment in this case charges a single overarching conspiracy with no overlapping participants.

2. These transactions involve separate acts, distinct participants, and different timeframes, making them unrelated in law or fact.

The Second Circuit has held that combing unrelated offenses within a single count is impermissible because it deprives the defendant of notice of the specific charge and risks a non-unanimous jury verdict. See *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992).

B. Prejudice to Defendant

The Duplicity in the indictment prejudices defendant by:

1. Impairing Defenses Preparation:
Defendant cannot discern the specific acts for which he must prepare a defense. See Sturdivant, 244 F.3d at 77

45

2. Risking Jury Confusion:  The jury may convict without agreeing unanimously on which act constitutes the offense. *See United States v. Tubol*, 191 F.3d 88, 94-95 (2d Cir. 2002)

3. Exposing Defendant to Double Jeopardy: A duplicitous indictment creates uncertainty regarding what conduct was adjudicated, risking future prosecutions for the same alleged acts.

   c.  Conclusion

The Second Superseding indictment is fatally flawed because it improperly consolidated multiple, distinct conspiracies into a single count. The alleged bank fraud transaction occurred across multiple states, involve separate actors, and took place at different time, with no overarching agreement connecting them. Many of the transactions occurred outside the Northern District of New York and several defendants' have never even set foot in the district.

As a result, the indictment violates Fed. R. Crim. P. 12(b)(2)(B)(i) and should be dismissed as impermissibly duplicitous. The court should also dismiss the indictment against any defendants' for whom venue is Northern District of New York is improper.

For the foregoing reasons, Defendant respectfully requests that this court dismiss the indictment as duplicitous. In the alternative, Defendant requests that the court order the Government to provide a bill of particulars clarifying the charges.

X.     Motion to Dismiss Indictment Pursuant to Fed. R. Crim. P. 12(b)(3)(B)(iii)

Defendant respectfully moves this court to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(iii) on the grounds that it lacks specificity and fails to sufficiently explain the statutory violations alleged

   i.  Legal Standard

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to include a plain, concise, and definite written statement of the essential facts constituting the offense charged. An indictment must apprise the defendant of the specific offense and conduct alleged, enabling the preparation of a defense and ensuring protection against double jeopardy. *See United States*

*v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *see also United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).

If an indictment merely recites statutory language without linking it to specific acts, if fails to satisfy the requirement of specificity. *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000).

    i. Defendant moves to dismiss the Second Superseding indictment in the Northern District of New York for lack of specificity pursuant to Fed. R. Crim. P. 12(b)(3)(B)(iii). The indictment charges the defendant with:

1. Conspiracy to Commit Bank fraud 18 U.S.C. §§ 1344, 1349;

2. Conspiracy to Commit Money Laundering 18 U.S.C. § 1956(h); and

3. Nine Counts of Aggravated Identity theft 18 U.S.C. § 1028A(a)(1) and 2.

However, the indictment fails to provide sufficient detail regarding the nature of the alleged offense, the specific acts the defendant is accused of committing, and the manner in which he allegedly participated in the conspiracy. The vague and general indictment deprives the defendant of his constitutional right to fair notice of the charges against him and hinder his ability to prepare a defense.

Because the indictment does not meet the minimal pleading requirements mandated by Rule 7(c)(1) of the Fed. R. Crim. P, it must be dismissed

    ii. Under Fed. R. Crim. P 7(c)(1), an indictment must include a plain, concise, concise, and definitive written statement of the essential facts constituting the offense charged. An indictment is defective if it fails to:

1. State the essential elements of the offense.

2. Provide sufficient factual detail to inform the defendant of the nature of the charges, and.

3. Enable the defendant to prepare an adequate defense and invoke protection against double jeopardy.

A motion to dismiss for lack of specificity under Rule 12(b)(3)(B)(iii) is proper where the indictment relies on general and vague allegations rather than concreate factual details. *See*

*United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (An indictment that fails to allege essential facts of provides only generic statutory language is insufficient).

     In conspiracy cases, the government must allege with specificity:

- The nature of the conspiracy,
- The defendant's role in the conspiracy,
- The specific over acts committed by the defendant or the overt acts reasonably foreseeable to the defendant, and
- The time place and manner of the defendant alleged involvement.

     Where, as here, the indictment fails to distinguish between alleged co-conspirators, lacks specificity regarding individual acts, and contains only boilerplate statutory language, it must be dismissed.

    iii. The Indictment Fails to Provide Specificity Under Rule 7(c)(1)

     The indictment in this case is impermissible vague because it does not contain the necessary factual allegations to support the charges under 18 U.S.C. §§ 1349, 1956(h), and 1028A(a)(1) and 2.

  A. The Indictment Fails to Specify Defendant's Alleged Role in the Conspiracy to Commit Bank Fraud (18 U.S.C. § 1344, 1349)

     The indictment charges conspiracy to commit bank fraud under 18 U.S.C. §§ 1344, 1349, yet it fails to identity any specific acts committed by the defendant.

     Specifically:

1. The indictment does not allege how, when, or where the defendant agreed to participate in the conspiracy.
2. It does not identity any specific bank fraud transactions that the defendant was directly involved in.
3. It fails to allege any communications, meetings, or agreement between the defendant and co-conspirators to engage in fraudulent banking activity.

48

Without these details, the indictment fails to meet the basic pleading requirements or Rule 7(c)(1). *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (holding that an indictment must contain sufficient factual detail to permit the defendant to prepare a defense and avoid surprise at trial).

B.  The Indictment Fails to provide Specificity Regarding the Alleged Money Laundering Conspiracy (18 U.S.C. § 1956(h)).

The charge of conspiracy to commit money laundering under 18 U.S.C. § 1956(h) is similarly deficient. The indictment does not:

1.  Identify specific financial transactions.
2.  Specify an overt act or act in furtherance that occurred in Northern District of New York.
3.  Describe the source, amount, or destination of the alleged laundered funds.
4.  Allege any specific financial institutions or accounts connected to the defendant.
5.  Explain how the defendant was aware of the alleged money-laundering scheme or what his role was.

A valid money laundering conspiracy charge must establish the defendant knowing and intentional agreement to commit the offense. *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008) (holding that the government must allege an agreement to conduct financial transactions designed to conceal proceeds of illegal activity).

By failing to identity the manner in which the defendant participated in the alleged scheme, the indictment lacks the requisite specificity.

C.  The indictment Does Not Adequately Plead Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1) and 2.

The charge or aggravated identity theft under 18 U.S.C. § 1028A(a)(1)requires that the government prove the defendant knowingly used, without lawful authority, the means of identification of another person in relation to a predicate felony. However, the indictment:

1.  Fails to specify the means of identification that was alleged possessed, transferred, or used by the defendant.

49

2. Fails to specify the defendant knew the means of identification belonged to another person.

3. Does not explain how the defendant acquired or used the means of identification.

4. Fails to specify which prong of the statue the defendant is alleged to have violated.

Without these details, the indictment fails to establish the essential elements of aggravated identity theft. *United States v. Stringer*, 730 F.3d 120, 125 (2d Cir. 2013).

iv. Conclusion

The indictment in this case fails to meet the constitutional and procedural requirements of specificity under Fed. R. Crim. P. 7(c)(1). It does not provide sufficient factual allegations regarding the defendant's alleged role in the conspiracy to commit bank fraud, conspiracy to commit money laundering, and aggravated identity theft.

Without clear allegations specifying the who, what, when, where, and how of the defendant alleged conduct, the indictment violates due process and fails to provide fair notice of the charges.

The lack of Specificity in the indictment prejudices Defendant in several ways:

1. Inability to prepare a defense. The absence of clear allegations leaves Defendant guessing as to the evidence to refute. *See* Walsh, 194 F.3d at 44

2. Risk of Double Jeopardy: A vague indictment exposes Defendant to the risk of future prosecution for the same conduct, violating the Fifth Amendment. *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998).

For these reasons, the defendant respectfully request that this court dismiss the Second Superseding indictment under Fed. R. Crim. P. 12(b)(3)(B)(iii) for lack for specificity.

XI.    Motion to Dismiss Indictment Pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v)

Under Fed. R. Crim. P. 7(c), an indictment must contain a plain, concise, and definite written statement of the essential facts constituting the offense charged. The purpose of an indictment is to inform the defendant of the charges against him so that he may prepare an adequate defense. An indictment that is vague, general, or fails to provide specifics details can

50

violate a defendant's right to due process, as the defendant is unable to discern the specific conduct he is accused of.

The Second Circuit has held that an indictment must provide sufficient detail to allow the defendant to understand the nature of the charges and to prevent surprise at trial. In *United States v. Benjamin*, 95 F.4th 60, 66 (2d Cir. 2024), the court explained that the indictment must inform the defendant of the specifics acts constituting the offense, and failure to do so may deprive the defendant of a fair trial. Similarly, in *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001), the court reiterated that an indictment must be specific enough to allow the defendant to prepare for trial and to prevent double jeopardy.

Defendant respectfully moves this court to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) on the grounds that it fails to state an offense under 18 U.S.C. §§ 1349, 1956(h) and 1028A(a)(1) and 2.

    i. Legal Standard

To withstand a motion to dismiss, an indictment must allege facts that, if true, state all the essential elements of the charged offense. *See United States v. Bastian*, 770 F.3d 212, 220 (2d Cir. 2014). Merely parroting the statutory language without alleging facts connecting the defendant to the offense is insufficient. *United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir. 2000).

If an indictment fails to state an offense as a matter of law, it must be dismissed. *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012).

    ii. Argument

    A. The indictment Fails to State an offense under 18 U.S.C. § 1349

To allege conspiracy to commit bank fraud under § 1349, the indictment must identify an agreement to commit bank fraud, materiality, intent to commit the offense, and at least one overt act. *United States v. Johnson,* 939 F.3d 82, 91 (2d Cir. 2006). The indictment here fails to:

1. Specify the nature of the agreement or identify with whom Defendant Conspired.
2. Allege any overt acts undertaken by Defendant in furtherance of the conspiracy.

Conclusory statements devoid of factual details are insufficient. *See* Pirro, 212 F.3d at 92

B. The indictment Fails to State an offense under 18 U.S.C. § 1956(h)

To Charge conspiracy to commit money laundering under § 1956 (h), the indictment must allege that Defendant knowingly and willfully agreed to engage in financial transactions involving proceeds of unlawful activity, with intent to promote the unlawful activity or conceal its origins. *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008). The indictment here fails to:

1. Identify the unlawful activity generating the proceeds.
2. Allege an Overt act or an act in furtherance in the Northern District of New York.
3. Specify Defendant's knowledge of, or intent to further the alleged financial transactions conducted with proceeds of Specified unlawful activity.

Absent these critical elements, the indictment does not state an offense under § 1956(h).

C. The indictment Fails to State an Offense under 18 U.S.C. § 1028A(a)(1)

To allege aggravated identity theft under § 1028A(a)(1), the indictment must establish that the Defendant knowingly used another person's means of identification during and in relation to a predicate felony. *Flores-Figueora v. United States*, 556 U.S. 646, 657 (2009). The indictment fails to:

1. Identify the specific means of identification used.
2. Establish a connection between the alleged use of identification and predicate offense.

These omissions render the indictment insufficient as a matter of law.

iii. Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court Dismiss the indictment for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v).

XII.    Motion to Dismiss Conspiracy to Commit Bank Fraud 18 U.S.C. § 1349

Defendant respectfully moves this court to dismiss the conspiracy charge 18 U.S.C. § 1349 which alleges conspiracy to commit bank fraud. Defendant asserts that the indictment fails to adequately allege the essential elements of conspiracy, provide sufficient facts to

support the charge, as no essential element of the offense occurred in the Northern District of New York, and the defendant did not commit any acts in furtherance of the conspiracy as Defendant did not enter into an agreement with another individual, nor did Defendant participate or become a member of the scheme charged. In Support of this motion, Defendant offers the following arguments:

i. Legal Standard for Conspiracy Under 18 U.S.C. § 1349

Under 18 U.S.C. § 1349, a defendant may be charged with conspiracy to commit bank fraud if the government proves beyond a reasonable doubt that:

1. The defendant knowingly and willfully agreed to commit bank fraud.
2. The defendant took some overt act or act in furtherance of the conspiracy.
3. The overt acts or actions furthered the objective of the conspiracy.

However, a defendant cannot be convicted of conspiracy merely based on speculation or generalized allegations. There must be concrete evidence that the defendant conduct was in furtherance of the conspiracy and that the defendant's actions were foreseeable and directly related to the unlawful agreement.

ii. Argument

A. No Essential Conduct occurred in the Northern District of New York

The government has charged Defendant with conspiracy to commit bank fraud under 18 U.S.C. § 1344. However, the indictment fails to establish essential conduct element of the conspiracy occurred in the Northern District of New York. The location of the overt acts is critical in determining whether this Court has proper venue under 18 U.S.C. § 3237(a), which requires that a crime be prosecuted in the district where an essential element of the offense occurred. As established in *United States v. Tzolov*, 642 F.3d 314, 325 (2d Cir. 2011), in a conspiracy case, the essential elements of the crime include acts of planning or overt acts performed in furtherance of the conspiracy. In the present case, there is no indication that any overt act related to the bank fraud conspiracy took place in the Northern District of New York. The conspiratorial meetings occurred outside of this district. The failure of the indictment to allege a connection to this district violates the requirement of an essential element occurring within the district.

The court in *United States v. Fortenberry*, 89 F.4th 702, 705 (9th Cir. 2023), emphasized that venue is proper only where essential acts of the offense occurred.

iii. No Acts in Furtherance of the Conspiracy by the Defendant

To be convicted of conspiracy, the government must prove that the defendant took overt acts in furtherance of the conspiracy. In *United States v. Wei*, 1998 U.S. App. LEXIS 24660, *5-6 (2d Cir. 1998), the Second Circuit reiterated that an overt act is an essential element of a conspiracy charge even where the statue does not require an overt act. The indictment must allege specific acts that were committed by the defendant as part of the conspiracy, but here, the government has not shown any direct actions by the defendant in furtherance of the conspiracy. In *United States v. Coplan*, 703 F.3d 46, 72 (2d Cir. 2012), the Second Circuit reversed a conviction for conspiracy because the government evidence failed to prove the defendant participated in the conspiracy. Similarly, here, there is no evidence that Defendant engaged in any conduct related to the conspiracy, such as committing fraudulent acts, discussing completion of the fraudulent scheme.

B. The Defendant Did Not Foresee the Fraudulent Acts

Even if the government establish that a conspiracy existed, the defendant can only be held responsible if the defendant's action were foreseeable and intended to further the conspiracy. The government must show that the defendant's participation in the conspiracy was not just passive but involved acts or intentions that were foreseeable as part of the fraud.

In the Second Circuit," it must have been 'reasonably foreseeable' to each defendant charged with the conspiracy that a qualifying overt act would occur in the district where prosecution is brought." *United States v. Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018) (first quoting Rommy 506 F.3d at 123 and then citing *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003)). *United States v. Shavkat Abdullaev*, 761 Fed. Appx. 78, 83 (2d Cir. 2019).

The Supreme Court in *Pinkerton v. United States*, 318 U.S. 640 (1946), held that a defendant can be held liable for conspiracy if the criminal acts were foreseeable, even if the defendant did not directly participate in the specific illegal act. However, as noted in *United States v. Rommy*, 506 F.3d 108, 123-25 (2d Cir. 2007), for a defendant to be held liable, it must be proven that the actions were within the scope of the conspiracy and foreseeable to the

54

defendant. Here, the government has failed to establish that any actions taken by other conspirators in furtherance of the fraud were foreseeable to the Defendant or that the Defendant took any action in furtherance of the conspiracy.

iv. Second Circuit Case Law

In *United States v. Desena*, 260 F.3d 150, 154-55 (2d Cir. 2001), the Second Circuit reversed a conspiracy conviction, holding that the government failed to provide sufficient evidence that the defendant participated in the conspiracy in any meaningful way. The court found that mere association with conspirators was not enough to prove active participation.

Since no essential conduct element of the conspiracy occurred in the Northern District of New York, venue is therefore improper for the following reasons:

1. Defendant did not commit any overt acts in furtherance of the conspiracy in the NDNY.
2. The defendant could not reasonably foresee fraudulent transactions would occur in the NDNY.

As there is no valid basis for the conspiracy charge in the Northern District of New York, and the indictment fails to demonstrate Defendant's involvement in the conspiracy. Defendant respectfully requests that this court dismiss the conspiracy charge.

v. Legal Standard

To sustain a conviction for conspiracy under 18 U.S.C. § 1349, the government must prove that:

1. The defendant entered into an agreement with at least one other person to commit an unlawful act, i.e., bank fraud;
2. The defendant knowingly and willfully joined the conspiracy with the intent to further its objectives. *See United States v. Zemlyansky*, 908 F.3d 1, 10 (2d Cir. 2018); *See also United States v. Mahaffy*, 693 F.3d 113, 123 (2d Cir. 2012).

The agreement is a necessary element and mere association with individuals involved in a conspiracy is insufficient to prove that a defendant is part of it.

vi. Argument

A. No Evidence of Agreement

The indictment fails to allege that Defendant knowingly entered into an agreement with any other person to commit bank fraud. In Conspiracy cases, a mere knowledge of a scheme is not enough; the government must show that the defendant agreed to join the scheme and took steps in furtherance of it. *United States v. Bartee*, 301 Fed. Appx. 46, 49 (2d Cir. 2008). The government's case must demonstrate that Defendant has the requisite intent and active participation in the conspiracy, neither or which is shown in the current indictment.

As the Second Circuit held in *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990), mere presence at the scene of the crime or vague knowledge of criminal conduct is insufficient to establish membership in a conspiracy. The government must provide specific evidence that Defendant actively joined the conspiracy and agreed to its criminal purpose.

B. No Participation in or Membership in the Scheme

Even assuming arguendo that an agreement existed, the indictment fails to allege that Defendant participated in the scheme or took affirmative steps to further its objective. To prove a conspiracy charge, the government must show that the defendant's conduct was intentionally directed at furthering the conspiracy. In *United States v. Pinkerton*, 328 U.S. 640, 645 (1946), the Supreme Court explained that to hold a defendant liable for a conspiracy, there must be evidence that the defendant knew of the conspiracy and knowingly participated in it. There mere fact that Defendant may have known others involved in fraudulent activity or was aware of the existence of fraud does not satisfy the legal requirement of conspiracy. Defendant has not been shown to have taken part in any illegal activity, nor is there any indication that Defendant engaged in any acts to further the alleged scheme.

vii. Conclusion

As there is no valid basis for the conspiracy charge in the Northern District of New York, and the indictment fails to demonstrate Defendant's involvement in the conspiracy. Defendant respectfully requests that this court dismiss the conspiracy to commit bank fraud charged in count 1 of the S2 indictment.

XIII.    Motion to Dismiss Aggravated Identity theft 18 U.S.C. § 1028A(a)(1) and 2

Defendant respectfully moves this court to dismiss the aggravated identity theft charge under 18 U.S.C. § 1028A(a)(1), for the reasons set forth below. Specifically, Defendant asserts that the indictment is deficient due to (1) lack of proper venue, (2) lack of a valid predicate felony for counts 4, 5, 9, 10 and 11, (3) insufficient proof that Defendant knowingly possessed, transferred, or used the identity of another person (4) indictment failure to establish that Defendant knowingly aided and abetted aggravated identity theft in violation of the aforementioned statues in support of this motion. Defendant offers the following arguments:

i. Legal Standard for Aggravated Identity Theft

18 U.S.C. § 1028A(a)(1) criminalizes the use or transfer of another person's identity in connection with a felony violation of other statues, such as wire fraud, bank fraud, access device fraud, and health care fraud. The statue provides that anyone who knowingly uses, transfers, or possesses another person's identification with the intent to commit a felony is guilty of aggravated identity theft and must serve a mandatory two-year sentence.

The Supreme Court in *Dubin v. United States*, 599 U.S. 110, 117 (2022), clarified the scope of this statue, emphasizing that use of another's identity under § 1028A(a)(1) requires that the defendant employ or utilize the identity in a manner that directly facilitates the commission of the underlying felony. The Court noted that the identity must be used in a way that is materially connected to the commission of a crime. This clarification is crucial in determining whether the charges has been adequately supported by evidence.

A. Lack of a Valid Predicate Offense

A conviction under 18 U.S.C. § 1028A(a)(1) requires the government to prove that the defendant used, transferred, or possessed another person's identity in relation to a valid predicate felony offense. In *United States v. Gandy*, 926 F.3d 248, 258-59 (6th Cir. 2019), the Sixth Circuit held that aggravated identity theft charges must be tied to a valid predicate felony offense.

In the present case, the indictment fails to adequately identify the predicate felony offense to which the aggravated identity theft charge. Counts 4, 5, 9, 10, and 11 predicate

57

occurred in bank fraud transactions in other judicial district, the conspiracy to commit bank fraud charged in Count 1 cannot serve as the predicate for these counts. Without a valid predicate crime, the aggravated identity theft charge must be dismissed due to lack of an established underlying felony. The government is required to identify the specific offense related to the identity theft and show how it was connected to the defendant alleged use of another's identity.

B.  Lack of Evidence that Defendant Used, Transferred, or Possessed Another Person's Identity

In *Dubin v. United States*, 599 U.S. 110, 117 (2022), the Supreme Court explained that for a defendant to be convicted of aggravated identity theft under § 1028A(a)(1), the prosecution must prove that the defendant used or transferred the victim's identity in a manner materially linked to the commission of an underlying felony. In *United States v. Jackson*, 858 Fed. Appx. 802, 807-08 (6th Cir. 2021), the court emphasized that a mere use of someone else identity, without a direct connection to an underlying crime, is insufficient to sustain a conviction under this statue.

Here, the indictment fails to establish that Defendant knowingly used or transferred the identity of another person. The government does not allege that Defendant personally possessed, transferred, or used any identity in connection with the commission of a felony. The indictment lacks sufficient factual allegations to establish that Defendant's actions were materially connected to the alleged crime.

In *United States v. Pooley*, 2024 U.S Dist. LEXIS 170718, \*10 (E.D. Cal. 2024), the court dismissed charges of aggravated identity theft when the evidence was insufficient to show that the defendant knowingly used another person's identity for the purpose of committing a felony. The same result should apply here because the government has not provided evidence showing that Defendant used another person's identity to facilitate the commission of a crime.

Under 18 U.S.C. § 2, a person who aids, abets, counsels, commands, induces or procures the commission of an offense is punishable as a principal. To be convicted of aiding and abetting under this statue, the government must prove that the defendant knowingly

associated with the criminal venture and took some affirmative actions to facilitate or encourage the commission of the crime.

The Supreme Court in *Rosemond v. United States*, 572 U.S. 65, 71 (2014), clarified the *mens rea* required for aiding and abetting. The court held that to convict a defendant for aiding and abetting, the defendant must have knowledge that the principal is committing a crime and must take steps to facilitate or encourage the commission of that crime. In cases involving aggravated identity theft under 18 U.S.C. § 1028A(a)(1), the government must establish that the defendant knowingly used, transferred, or possessed the identity of another person during and in relation to the commission of the predicate felony (such as bank fraud).

   ii. Argument

   A. Lack of Evidence that Defendant Aided and Abetted Aggravated Identity Theft

   The indictment fails to allege sufficient facts to demonstrate that Defendant aided and abetted the commission of aggravated identity theft. The elements of aggravated identity theft require that the defendant use or transfer the identity of another person in relation to the commission of a predicate felony. In *Rosemond v. United States*, the Supreme Court emphasized that aiding and abetting requires the defendant's active participation and knowledge of the crime being committed. Here, the indictment provides no evidence that Defendant knowingly participated in any identity theft schemes or facilitated the use of another person identity during and in relation to the alleged predicate felony.

   In *United States v. Delgado*, 972 F.3d 63, 73-78 (2d Cir. 2020), the Second Circuit reversed the conviction for aiding and abetting under 18 U.S.C. § 2 because the government failed to present evidence that the defendant was involved in facilitating or encouraging the commission of the primary offense. Similarly, in this case, there is no evidence to show that Defendant took any action to aid and abet the use of another's identity in the commission of bank fraud. Merely being present or having knowledge of the principal's action is insufficient to establish aiding and abetting liability.

   C. Lack of Evidence that Identity was used During and in Relation to Bank Fraud

   Under 18 U.S.C. § 1028A(a)(1), a conviction for aggravated identity theft requires that the use of the identity must occur during and in relation to a predicate felony. *United States v.*

*Magassouba*, 619 F.3d 202, 207 (2d Cir. 2010), In the absence of evidence that Defendant transferred or used another person's identity in connection with the bank fraud scheme, there is no basis to charge Defendant with aiding and abetting aggravated identity theft. The mere presence of the Defendant or their awareness of the crime does not suffice to prove the necessary connection.

  D. Failure to Show Defendant Actively Facilitated the Predicate Felony

  In *United States v. Smith*, 198 F.3d 377, 383 (2d Cir. 1999), the Second Circuit held that to be convicted under an aiding and abetting theory, there must be clear evidence that the defendant took affirmative steps to facilitate the commission of the underlying crime. The court emphasized that mere knowledge or passive acquiescence is insufficient. In this case, there is no evidence that Defendant actively facilitated the commission of the predicate crime of bank fraud or took any steps to encourage or assist the use of another person's identity. Without such evidence, the aiding and abetting charge fails.

  i. Second Circuit Case Law

  In *United States v. Pipola*, 83 F.3d 556, 562 (2d Cir. 1996), the Second Circuit held that defendant's conscious assistance in the commission of the specific underlying crime is required. The court held that mere knowledge of a crime does not suffice to support a conviction for aiding and abetting.

  ii. Conclusion

  For the reasons outlined above, Defendant respectfully requests that this court dismiss the charge of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) and 2 for the following reasons:

1. The indictment fails to establish proper venue for the offense;
2. The indictment fails to identity a valid predicate felony offense connected to the aggravated identity theft charge in Counts 4, 5, 9, 10 and 11;
3. The indictment fails to present sufficient facts that Defendant knowingly used or transferred another person's identity in connection with the commission of a felony.

4. Defendant did not take any action to facilitate or encourage the commission of aggravated identity theft.

Defendant therefore requests that the aggravated identity theft charges be dismissed with prejudice.

XIV.    Motion to Dismiss Conspiracy to Commit Bank Fraud under 18 U.S.C. § 1349 For Failure of Indictment to allege Materiality

Defendant respectfully moves this court to dismiss the conspiracy to commit bank fraud charge 18 U.S.C. § 1349 on the ground that the indictment fails to allege the essential element of materiality. As outlined below, the indictment is legally deficient because it does not include allegations that the fraudulent representations or omissions in the conspiracy were material, in support of this motion, Defendant submits the following arguments:

i. Legal Standard for Conspiracy to Commit Bank Fraud under 18 U.S.C. § 1349

Materiality is a well-established element of fraud offenses under both Supreme Court and Second Circuit Precedent. *See Neder v. United States*, 527 U.S. 1, 25 (1999) (holding that materiality is an essential element of fraud offense); *United States v. Rybicki*, 354 F.3d 124, 145 (2d Cir. 2003) (en banc) (confirming that materiality is required in fraud cases). The government failure to allege materiality renders the indictment legally insufficient.

To establish a conspiracy to commit bank fraud under 18 U.S.C. § 1349, the government must prove, among other things, that:

1. The defendant knowingly and willfully agreed to commit bank fraud.
2. The defendant participated in the scheme with the intent to defraud.
3. The fraud involved misrepresentations or omissions that were material to the transaction at issue.

Materiality is a critical element in the fraud charge. A false or mislead statement or omissions is material if it has a natural tendency to include, or is capable of influencing, the decision of a bank or financial institution. This element must be explicitly alleged and proven.

i. Argument
A. The indictment Fails to Allege Materiality, an Essential Element of Bank fraud

The indictment in this case does not include an allegation that any misrepresentation or fraudulent act that is part of the alleged conspiracy was material to the banks decision-making process. Without an allegation of materiality, the indictment is legally insufficient and fails to state an offense under 18 U.S.C. § 1349. In *United States v. Johnson*, 945 F.3d 606, 612 (2d Cir. 2019), the Second Circuit emphasized that, in order to convict someone of fraud, the government must prove that the misrepresentations were material, meaning it had the potential to influence the victim's decision. The court in *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) further stated that materiality must be specifically alleged, and failure to do so renders the indictment defective.

In *United States v. Litvak*, 808 F.3d 160, 172-73 (2d Cir. 2015), the Second Circuit held that an indictment charging bank fraud under 18 U.S.C. § 1349 must allege that the defendant actions involved misstatements that were material to the banks decision to approve or deny a loan. The court noted that materiality is a necessary element of the crime and that without alleging this element the indictment cannot stand.

B.  Materiality Must Be Expressly Alleged in the Indictment

The government cannot rely on general allegations of fraud or speculation about the nature of the scheme to satisfy the materiality requirements. As established in *United States v. Rigas*, 490 F.3d 208, 234 (2d Cir. 2007), materiality is a substantive element that must be pleaded with specificity. The Seventh Circuit noted that an indictment failing to allege materiality in the context of fraud charges is fatally flawed and subject to dismissal. Similarly, in *United States v. Gaudin*, 515 U.S. 506, 509-10 (1995), the Supreme Court held that materiality of a statement in a fraud case is a question of law for the jury to decide, but that materiality must be alleged in the indictment. If the government fails to include materiality in the charges, the indictment is insufficient as a matter of law.

C.  Failure to Plead Materiality Prejudices the Defendant Ability to Prepare a Defense

The failure to allege materiality in the indictment severely prejudices Defendant's ability to prepare an adequate defense. As the Ninth Circuit held in *United States v. Ruiz*, 717 F.3d 168, 172 (9th Cir. 2013), the omission of an essential element such as materiality in the indictment prevents the defendant from knowing the nature of the charges against him.

Without this knowledge, the defendant is unable to effectively challenge the government's case or prepare for trial. The court noted that such an omission in the indictment impairs the defendant's constitutional rights to a fair trial and due process under the Sixth Amendment.

ii. Conclusion

For the reasons stated above, Defendant respectfully requests that this court dismiss the conspiracy to commit bank fraud charge under 18 U.S.C. § 1349, as the indictment fails to allege the essential element of materiality, without this necessary element, the indictment is legally deficient and cannot proceed to trial.

XV.    Motion to Dismiss Conspiracy to Commit Bank Fraud 18 U.S.C. § 1349 For Failure to allege an Intent to Defraud

Defendant and respectfully moves this court to dismiss the indictment for conspiracy to commit bank fraud 18 U.S.C. § 1349 on the grounds that it fails to allege an essential element of the offense 'intent to defraud'. The indictment is legally insufficient and must be dismissed pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure.

i. Introduction

The indictment purports to charge Defendant with Conspiracy to commit bank fraud but fails to allege that Defendant acted with intent to defraud, an essential element of the offense. The Second Circuit has repeatedly held that an indictment must allege all essential elements of a crime, failure to do so renders the indictment defective and subject to dismissal.

ii. Legal Standard

To establish a conspiracy to commit bank fraud under 18 U.S.C. § 1349, the government must prove:

1.  An agreement to commit bank fraud; and
2.  Intent to defraud a financial institution.

The Second Circuit has consistently ruled that intent to defraud is an essential element of bank fraud and conspiracy to commit bank fraud. *See United States v. Rigas*, 490 F.3d 208, 231-32 (2d Cir. 2007) (holding that fraudulent intent is required for bank fraud charges); *see*

*also United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015) (stating that bank fraud requires intent to deceive and cause actual harm). If the indictment fails to allege fraudulent intent, it does not state an offense.

### iii. Argument

1. The indictment Fails to Allege an Intent to Defraud

A valid indictment must set forth all essential elements of the offense, including intent to defraud. *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000). Here, the indictment does not allege that Defendant acted with intent to deceive or harm a financial institution; instead, it merely recites statutory language without detailing any fraudulent intent on Defendant's part. The Second Circuit has held that an indictment is legally insufficient when it fails to allege an essential element. *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012).

2. The indictment is Deficient and Must Be Dismissed

Because the indictment fails to allege fraudulent intent, it is legally defective and must be dismissed under Rule 12(b)(3)(B). The Second Circuit has repeatedly dismissed indictment that lack necessary elements. *See United States v. McGinn*, 787 F.3d 116, 123 (2d Cir. 2015).

### iv. Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court Dismiss Count 1 of the indictment for failure to allege the essential element of intent to defraud under 18 U.S.C. § 1349.

### XVI. Motion to Dismiss Indictment for Improper Joiner under Rule 8(b)

i. Legal Standard

Federal Rule of Criminal Procedure 8(b) permits joinder of multiple defendant's in a single indictment only if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense. Improper joinder occurs when the indictment lumps together defendants' who had no involvement with one another or when it fails to establish that the defendant were engaged in a common scheme. Courts have held that severance is warranted where the indictment charges multiple defendant's in a single conspiracy despite a lack of evidence connecting them to each other or to the same criminal

acts. *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir. 1985); *United States v. Castro*, 829 F.2d 1038, 1045 (11th Cir. 1987).

Even if joinder is proper under rule 8(b), Rule 14(a) provides relief where joinder is so prejudicial that is compromises the defendant's rights to a fair trial. Courts in the Second Circuit grant severance when the spillover effect from evidence against co-defendant's would unfairly prejudice a defendant who was only minimally involved. *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

ii. Defendant's Did Not Participate in the Same Acts or Transactions as the Co-defendant's

A. Discovery Fails to Connect Defendant to the Alleged conspiracy charged

The indictment improperly joins Defendant with other individuals accused of conspiracy despite the following facts:

1. Defendant had no communication with Bassie and did not participate in any transactions with Bassie.
2. The discovery shows Hunter recruited Brooks, Quivers, and Ozmore, yet Defendant has never met or interacted with Hunter, Brooks, Quivers, or Ozmore.
3. There is nothing in the discovery connecting Defendant to the VA-based co-conspirators, undermining the claim that all defendants' were engaged in a single conspiracy.
4. The discovery does not show Defendant transferred any personally identifiable information (PII) to Bassie or Hunter.
5. Kani Bassie has never met Daniyan or any of the co-conspirators Daniyan recruited.
6. Defendant has never met Kurschner before, further demonstrating the lack of connection between Defendant and the alleged conspiracy.
7. Kani Bassie and Daniyan have never met or interacted with Heather Gaedt.
8. Kani Bassie has never met Daniyan before.
9. Bassie has never met or interacted with Joyner, Balogun, Joyner, Lucchese, Cappetti, and Puff.
10. Daniyan has never met Ozmore, Hunter, Quivers, Brooks, and Kurschner.
11. Heather Gaedt has never met any member of the alleged conspiracy.

Since Rule 8(b) requires a logical relationship among defendants', the absence of any evidence linking Defendant to the others in a common scheme renders joined improper. *See United States v. Shellef*, 507 F.3d 82, 97-103 (2d Cir. 2007)

Under Rule 8(b), joinder is only proper if defendants' participated in the same act or transactions or in a common scheme. Here, the indictment improperly joins multiple defendants' engaged in different scheme with no direct connection. The Second Circuit has held that misjoinder occurs when defendants' are charged together without a sufficient factual nexus. *United States v. Cervone*, 907 F.2d 332, 341-42 (2d Cir. 1990)

iii. Defendants' Who Participated in the Northern District of New York Conspiracy have all pled guilty

The alleged co-conspirators who participated in the scheme in the Northern District of New York have pled guilty and are awaiting sentencing. Their cases have been resolved independently, further demonstrating that the Defendant was improperly included in an unrelated conspiracy.

The plea agreement of the defendants' who pled guilty further demonstrates defendants' do not know each other. The plea agreement shows several bank runners worked independently from each other in different time periods and different judicial district.

iv. Severance is Warranted to Prevent Prejudice

Even if joinder were proper under Rule 8(b), severance would still be required under Federal Rule of Criminal Procedure 14(a) to avoid unfair prejudice and prejudicial spillover. When multiple defendants are tried together despite having no connection to each other, juries may:

Infer guilty by association, even when no direct evidence links a defendant to the broader conspiracy.

Struggle to compartmentalize evidence, mistakenly applying evidence against one co-defendant to another.

Be misled by complex and voluminous evidence involving multiple unconnected defendants.

66

Mislead attributing co-defendant guilt, which may improperly influence the jury's determination. *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). Additionally, antagonistic defenses further support severance.

Courts have found severance appropriate when defendants' who do not know each other are improperly joined together in a conspiracy charge. *See United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987) (granting severance where multiple defendants' had no direct interaction and risk of prejudicial spillover was high).

v.    Conclusion

For the foregoing reasons, Defendant respectfully request that the court dismiss the indictment for improper joinder of defendant's.

XVII.   Motion for Severance Pursuant to Fed. R. Crim. P. 14(A)

Defendant respectfully moves this court, pursuant to Fed. R. Crim. P. 14(A) for an order granting severance of their trials. Specifically, Defendant's request that their cases be tried separately due to the antagonistic defenses that each Defendant intends to assert, which would cause unfair prejudice, confuse the jury, and result in a manifest injustice if the trial is conducted jointly.

i.  Legal Standard

Under Fed. R. Crim. P. 14(a), a defendant may be granted severance of trials if it appears that joint trial will prejudice once or more defendant's. A severance may be granted when the joiner of offenses or defendants in an indictment appears to prejudice a defendant or the government. In deciding whether to grant severance, the Court should consider whether the defenses asserted by the co-defendants are mutually antagonistic, such that the jury would not be able to reasonably apply the evidence to each defendant without confusion. *United States v. Spinelli*, 551 F.3d 159, 163 (2d Cir. 2008).

Additionally, the court must consider whether the evidence against one defendant would result in unfair prejudice to another and whether that prejudice outweighs the efficiency and convenience of a joint trial. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

ii.  Argument

Antagonistic Defenses

The defenses that each defendant plans to assert in this case are mutually antagonistic and irreconcilable, which would prevent a fair trial if they were tried together. Mr. Adekoya intends to argue that he was not involved in the alleged criminal conduct and had no knowledge of the activities charged. In contrast, Bassie intends to argue that if any crime occurred, it was solely due to the actions of Mr. Adekoya or others, and that Bassie had no role in the conspiracy or scheme charged in this district. The presentation of such antagonistic defenses is likely to cause the jury to be confused as the role each defendant played in the allege offense. As held in *United States v. Smith*, 788 F.2d 663, 668 (10th Cir. 1986), where defendant's assert mutually exclusive defenses, the jury is left with the impossible task of reconciling conflicting versions of the facts. This increases the likelihood of prejudice and confusion.

1. Prejudicial Spillover of Evidence

In addition to the conflicting defenses, there is a significant risk or prejudicial spillover from the evidence presented against one defendant to the other. If the trial proceeds jointly, evidence that is admissible against one defendant may be unfairly prejudicial to the other defendant's, especially when the defendants' are pursuing divergent defenses. For example, if certain evidence is presented against Mr. Bassie that may tend to incriminate Mr. Adekoya, the jury may not be able to compartmentalize the evidence, as required by Fed. R. Evi. 105, and apply it only to the defendant against whom the evidence is admitted. This is particularly true where the evidence involves action by the defendant's that are unrelated to each other defenses or the alleged crime for which each defendant is charged. In *United States v. Rittweiger*, 524 F.3d 171, 178 (2d Cir. 2008), the court recognized that where joint trials present a risk of spillover evidence that would unfairly prejudice one defendant, severance may be necessary to ensure a fair trial.

2. Risk of Jury Confusion

A Joint trial in this case would confused the jury by requiring them to consider conflicting legal theories and defenses. The jury could have difficulty determining what evidence is applicable to each defendant and whether the evidence presented can be reasonably

68

interpreted in light of each defendant's individual defenses. As noted in *United States v. Serpoosh*, 919 F.2d 835, 837-38 (2d Cir. 1990), if the defenses are so antagonistic that they cannot be reconciled, a joint trial may undermine the fairness of the proceedings and result in a conviction based on confusion rather than a fair assessment of the evidence. Furthermore, in *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991), the court acknowledges that when two defendant's present mutually antagonistic defenses, severance is often necessary because the jury is likely to be confused or unable to follow the complex instructions necessary to evaluate the evidence against each defendant separately.

### iii. Request for Relief

Given the antagonistic nature of the defenses and the risk or prejudicial spillover evidence and jury confusion, Defendant's respectfully request that this court sever their trials.

A Joint trial will create an unacceptable risk of confusion and unfair prejudice to the Defendant's, which could result in an injustice.

Wherefore, the Defendant's respectfully request that the court grant this Motion and order that their trials be severed, allowing each defendant to receive a fair trial free from the risk of unfair prejudice and confusion.

### XVIII. Motion to Sever Pursuant to Fed. R. Crim. P. 14(b)

Defendant respectfully moves this court, pursuant to Fed. R. Crim. P. 14(b), for an order severing his trial from that of any co-defendant. The Defendant submits that severance is necessary because the conspiracy charged does not arise from a common plan or scheme, there is no overlap in the evidence linking the Defendant to the conspiracy in the Northern District of New York, and the Defendant has been improperly joined into a conspiracy in which he has no knowledge or participation.

### i. Legal Standard

Under Fed. R. Crim. P. 14(b), the Court has the discretion to sever trials when it determines that the defendant is prejudice by being tried jointly with other defendant's. Severance is particularly warranted when there is no sufficient overlap between the charged conspiracy and the Defendant has alleged participation in the offense. A Joint trial should only

occur when the conspiracy charged arises out a common plan or scheme. If the Defendant's involvement is distinct and unrelated to the alleged conspiracy, and if the Defendant was improperly joined, severance is necessary to ensure a fair trial. The indictment improperly joins multiple defendants' in a single count of bank fraud conspiracy under 18 U.S.C. § 1349 even though:

    a. Several defendant's never entered Northern District of New York and conducted transactions exclusively in other judicial districts;

    b. There is no substantial overlap of participants in the alleged fraudulent transactions;

    c. The indictment fails to show a unified plan or concerted effort between all co-defendants' to commit bank fraud in Northern District of New York.

  ii. Argument

1. No Common plan or scheme

The conspiracy charged in the indictment does not arise out of a common plan or scheme in which the Defendant participated. The Defendants' alleged involvement in the conspiracy is separate and distinct from the activities of the co-defendant's, and no evidence links him to the common objective, acts, or transactions that are central to the alleged conspiracy. In *United States v. Attanasio*, 870 F.2d 809, 814-15 (2d Cir. 1989), the Second Circuit held that the lack of a common plan or scheme, and the lack of overlap between the actions of the co-defendant's, can justify severance. The government must demonstrate that the Defendant's involvement in the conspiracy is not merely a tangential or isolated part of the broader conspiracy.

2. Defendant Lack of Participation in Transactions in the Northern District of New York

The Defendant did not participate in any transactions or actions that occurred within the Northern district of New York and the charges against him do not involve any conduct within this district. As a result, the Defendant has been improperly joined into a conspiracy that does not pertain to his alleged conduct. A joint trial therefore would be highly prejudicial to the Defendant, as he will be forced to defend himself against activities in which he had no involvement.

In *United States v. Chinchic*, 655 F.2d 547, 551 (4th Cir. 1981), the court granted severance where the defendant was linked to the conspiracy through actions that were outside

the district in which the crime occurred, emphasizing the need for the alleged actions to have a factual and legal connection to the charges in the district where the trial was held.

3. Improper Joinder

   The Defendant has been improperly joined in a single conspiracy because there is no evidence showing knowledge of, or participation in, the conspiracy charged. The Defendant was not involved in the transactions, activities, or communication central to the conspiracy. Therefore, the Defendant's joinder with the co-defendant's based on an alleged conspiracy in which he played no role or was unaware of is improper. *United States v. Smith*, 788 F.2d 663, 668 (10th Cir. 1986) illustrate that severance is warranted when there is a lack of evidence connecting the defendant to the conspiracy in a meaningful way, and where joinder results in unfair prejudice to the defendant.

4. The Conspiracy is Impermissibly Broad and Does Not Involve a Common Criminal Objective

   The government cannot establish that all defendants' participated in a single overarching conspiracy because:

   a. Different defendants' engaged in different fraudulent acts, in different locations at different times.

   b. There was no centralized coordination between all defendant's regarding transactions in Northern District of New York.

   c. There is no evidence that each defendant was aware or agreed to the fraudulent acts of the other.

5. Prejudice and Risk of Confusion to the Jury

   The trial of multiple co-defendants', each allegedly involved in different aspects of a conspiracy, creates the significant risk or jury confusion. The jury will be unable to properly asses the evidence, given the lack of overlap and the distinct nature of the Defendants action as compared to those of the co-defendant. Severance is necessary to ensure that the jury can fairly and accurately evaluate the Defendant's individual conduct without the prejudicial spillover from the evidence against co-defendants' involved in unrelated acts. In *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991), the court emphasized that where there is little factual overlap between defendant's conduct, the risk of prejudice is significant and warrants severance.

The Second Circuit has recognized that indictment alleging broad, disconnected conspiracies violate Rule 8(b) and the defendant's constitutional rights.

iii. Request for Relief

For the foregoing reasons, the Defendant respectfully request that the court grant this Motion and order that his trial be severed from that of any co-defendant. The lack of common plan or scheme, absence of participation in relevant transactions within the Northern District of New York, and improper joinder of the Defendant necessitate a separate trial to avoid prejudice and ensure the Defendant receives a fair trial.

Wherefore, the Defendant respectfully requests that the court grant this motion for severance

XIX.   Motion to Dismiss Aggravated Identity Theft Charge Under 18 U.S.C. § 1028A(a)(1)

Defendant respectfully moves this court to dismiss the charge of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) on the grounds that the indictment fails to allege that the identities involved belongs to another person, which is an essential element of the offense. As outlined below, the indictment is legally insufficient because it does not meet the statutory requirement that the identity used, transferred, or possessed must belong to another person. Defendant submits the following arguments in support of this motion

i. Legal Standard Under 18 U.S.C. § 1028A(a)(1)

The statue 18 U.S.C. § 1028A(a)(1) makes it a crime to knowingly transfer, posses, or use the means of identification of another person during and in relation to certain felonies, including bank fraud. For the government to properly charge a defendant with aggravated identity theft under this statue, the indictment must allege that the identity used, transferred, or possessed indeed belongs to another person, i.e., a third party and not the defendant. In *Flores-Figueora v. United States*, 556 U.S. 646, 657 (2009), the Supreme Court held that the defendant must know that the identity used belongs to another person. This case reinforced the necessity of identifying the identity of another person as an essential element of the offense. The court emphasized that the statue requires proof that the identity was not the defendant's

72

own identity, and that this requirement must be satisfied for a conviction under 18 U.S.C. §
1028A(a)(1).

   ii. Argument

   A. The indictment Fails to State the Identity Belongs to Another Person

      The indictment in this case is legally deficient because it fails to allege that the identity
used or transferred belonged to a person other than the defendant. In *Flores-Figueora v. United
States*, 556 U.S. 646, 657 (2009), the Supreme Court clearly held that the statue requires the
identity involved in the offense to belong to another person. The Court explained that an
identity theft charge under § 1028A(a)(1) cannot stand unless the prosecution proves that the
identity used belongs to a third party. As the Court noted. The Statue requires that the
defendant used the means of identification of another person not his own.

      The Ninth Circuit also follows this reasoning, as seen in *United States v. Ward*, 747
F.3d 1184, 1187 (9th Cir. 2014), where the court emphasized the necessity of including
specific allegations regarding the identity of the victim. The Second Circuit held that an
indictment must provide sufficient factual details to put the defendant on notice of the crime
charged.

   B. The Indictment Fails to Provide Notice to Defendant

      As established in *United States v. Ward*, 747 F.3d 1184, 1187 (9th Cir. 2014), the
failure to include the specific allegation that the identity used belongs to someone other than
the defendant's result in an insufficient indictment. In this case, the lack of such an allegation
prevents the defendant's from understanding the charge and preparing a proper defense. As the
Ninth Circuit held in Ward, such an omission constituted a violation of the defendant's
constitutional rights to be informed of the nature of the accusations against him. The Second
Circuit has similarly held that an indictment must clearly allege the elements of the offense. In
*United States v. Caraballo-Rodriguez*, 726 F.3d 418, 425 (2d Cir. 2013), the court emphasized
that an indictment must be sufficiently detailed to inform the defendant of the charges and
allow for a meaningful defense.

   iii. Case Law

In addition to the Supreme Court Cases, several Circuit Courts have addressed the failure to allege the essential element of identity of another person in the context of aggravated identity theft charges. In *United States v. Oronia-Vera*, 565 F.3d 1074, 1075 (8th Cir. 2009), the Eight Circuit affirmed that the identity in question must be that of a person other than the defendant for a conviction under 18 U.S.C. § 1028A(a)(1). Similarly, in *United States v. Mitchell*, 518 F.3d 230, 233-34 (4th Cir. 2008), the court dismissed charges because the indictment failed to specify that the identity belonged to a third party, as required under the statue.

iv. Conclusion

For the reasons stated above, Defendant respectfully requests that this court dismiss the charge of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), as the indictment fails to allege that the identity used, transferred or possessed belonged to another person, which is a necessary element of the offense.

XX.    Motion to Dismiss Money Laundering Conspiracy 18 U.S.C. § 1956(h)

Defendant respectfully moves this court to dismiss the charge of conspiracy to commit money laundering under 18 U.S.C. § 1956(h) for the reasons set forth below. Specifically, Defendant argues that the indictment fails to establish the essential elements of the charge, namely that the defendant entered into an agreement with another person to commit the crime and that the Defendant was a member of the conspiracy. As such, the indictment should be dismissed for lack of sufficient evidence to support the conspiracy charge.

i. Legal Standard Under 18 U.S.C. § 1956(h)

Under 18 U.S.C. § 1956(h), a defendant may be charged with conspiracy to commit money laundering if the government can prove that the defendant knowingly and willfully entered into an agreement with one or more individuals to commit money laundering, as defined under 18 U.S.C. § 1956(a)(1), (a)(2), or (2), (3).

To prove the existence of a conspiracy, the government must demonstrate the following:

1. Agreement: That the defendant knowingly entered into an agreement with at least one other person to engage in criminal conduct.
2. Knowledge and Intent: That the defendant knew of the conspiracy unlawful purpose and acted with the intent to further it.
3. Overt Acts: That at least one overt act was committed in furtherance of the conspiracy. This element may include actions taken by defendant or by others in the conspiracy.

As the Second Circuit held in *United States v. Jackson*, 335 F.3d 170, 182 (2d Cir. 2003), conspiracy charges require clear proof that the defendant was part of a mutual agreement and had specific knowledge of the illicit activities. The court further emphasized that mere association or knowledge of the conspiracy is insufficient to support a conviction for conspiracy.

The offense of conspiring to commit money launder in violation of § 1956(h), requires proof that the defendant "knowingly engaged in the conspiracy with the specific intent to commit the offense that were the objects of the conspiracy." *United States v. Odiase*, 788 Fed. App'x. 760, 762 (2d Cir. 2019) (quoting Huezo, 546 F.3d at 180). The discovery in this case does not show any funds generates from bank fraud in this district was laundered. The discovery fails to point to any promotional, concealment, or conducting a money transaction of value greater than $10,000 that was derived from specified unlawful activity. In *United States v. Aronshtein* v. United, 2023 U.S. App. LEXIS 7951, *3 (2d Cir. 2023). (18 U.S.C. § 1956(h) requires first that the proceeds of specified unlawful acidity be generated, and second that the defendant knowing the proceeds to be tainted, conduct or attempt to conduct a financial transaction with the proceeds." *United States v. Piervinanzi*, 23 F.3d 670 (2d Cir. 1994); *see also United States v. Napoli*, 54 F.3d 63, 67 (2d Cir. 1995).

In *United States v. Hassan*, 578 F.3d 108, 127-28 (2d Cir. 2008), the court held "in order to establish that a defendant conspired to launder monetary instruments in violation of 1956(h), the government must show that the defendant agreed to 1) conduct a financial transaction; 2) involving the proceeds of specified unlawful activity; 3) knowing that the property involved in the transaction represented the proceeds of some unlawful activity; and 4) knowing that the financial transaction were designed in whole part to conceal or disguise the

75

nature, source, location, ownership, or control of those proceeds. "*United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003)

  ii. Argument

  A. Defendant Did Not Enter into an Agreement with Another Person

The discovery has failed to present any evidence showing that the Defendant entered into an agreement, with another person to commit money laundering. A mere assertion that the Defendant participated in a conspiracy, without evidence of an actual agreement, is insufficient to meet the burden of proof.

In *United States v. Munshani*, 2024 U.S. App. LEXIS 25471, *9 (2d Cir. 2024), the Second Circuit reiterated that, to prove conspiracy, the government must show that the defendant knowingly and voluntarily agreed to participate in the conspiracy. The court held that merely knowing about a criminal enterprise, without joining in the agreement, is not sufficient for a conviction under 18 U.S.C. § 1956(h). Similarly, in *United States v. Jimenez*, 96 F.4th 317, 316 (2d Cir. 2024), the Second Circuit emphasized that the government must prove that the defendant agreed to participate in the conspiracy, and that the defendant had the requisite knowledge and intent to further the criminal objective of the conspiracy. In this case, the indictment does not allege or provide any evidence that the Defendant entered into any agreement, spoken or otherwise, with the person the government claims was the co-conspirator. As such, the government's failure to show any agreement between the Defendant and another person mandates the dismissal of the conspiracy charge.

  B. Lack of Agreement Between Two or More Conspirators

To establish a conspiracy under § 1956(h), the government must prove that the defendant knowingly and voluntarily agreed with at least one other person to commit money laundering. Mere association with individuals involved in money laundering, or presence at locations where illicit transactions occurred is insufficient. *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008); *United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010). In the instant case, the indictment does not establish any specific agreement between the Defendant and another party to engage in a money laundering conspiracy. The Second Circuit has held that a conspiracy requires a meeting of the minds and mutual intent to achieve an unlawful objective.

*United States v. Svoboda*, 374 F.3d 471, 477 (2d Cir. 2003), However, the indictment lacks any factual allegation demonstrating an express or implied agreement, making the charge legally deficient.

C.  Improper Venue under 18 U.S.C. § 1956(i)

Under § 1956(i), venue for a money laundering offense is proper only:

1.  The district where the financial or monetary transaction occurred;
2.  The district where the underlying criminal activity generating the laundered funds took place; or
3.  If the defendant participated in transporting or transferring proceeds, the district where such movement began, continued, or ended.

The indictment fails to allege that any financial or monetary transactions was conducted in the Northern District of New York. The government had not identified any transfer of funds, wire transactions, or financial instruments used in furtherance of the money laundering within this district. The discovery shows one instance of funds. On April 25 2022, Joyner deposited $500 into his Bank of America account in Albany, NY. The government obscured that date of this transaction from Daniyan's plea so defendant is not put on notice which transactions is tied to the promotional money-laundering object. See ECF 288 Pp 11. ¶ s. The government allegation is that part of the $5,000 withdrawn from the bank fraud transaction on this date was provided to Joyner to extend a rental vehicle, there is nothing showing Santa discussed anything with Daniyan about extending proceeds of the fraud to Joyner so it could be used to extend a rental car. Further, the Defendant did not participate in the removal or transfer of proceeds from the Northern District of New York to the District of New Jersey or any other district. Moreover, the Defendant did not commit an act in furtherance of the conspiracy in the Northern District of New York. The Second Circuit has repeatedly held that venue must be establish through over acts directly related to the charged offense. *United States v. Royer*, 549 F.3d 886, 895 (2d Cir. 2008). Since the indictment fails to specify any act by the Defendant in this district, venue is improper and the charge must be dismissed.

D.  Defendant Was Not a Member of the Conspiracy

The government has failed to establish that the Defendant was a member of the alleged conspiracy to launder monetary instruments. In *United States v. Cambindo-Valencia*, 609 F.2d 603, 623-25 (2d Cir. 1979), the Second Circuit held that mere participation in some part of a criminal activity is not enough to establish membership in a conspiracy. The Court stated that the existence of a conspiracy must be shown beyond mere presence at the scene or knowledge of the unlawful activity. In the present case, the government's indictment does not show that the Defendant took part in any meetings, discussions, or actions that furthered money laundering. In *United States v. Lange*, 834 F.3d 58, 77 (2d Cir. 2016), the Second Circuit stressed that the government must demonstrate specific actions taken by the defendant to further the conspiracy. Likewise, in *United States v. Crowley*, 236 F.3d 104, 109 (2d Cir. 2000), the court held that vague assertion of involvement in a criminal group, without specific evidence of participation in the criminal agreement are insufficient to sustain a conspiracy conviction.

### iii. Conclusion

For the foregoing reasons, Defendant respectfully moves this court to dismiss the charge of conspiracy to commit money laundering under 18 U.S.C. § 1956(h), as the indictment fails to allege the essential element of an agreement between the Defendant and another person. Membership in the conspiracy, or any action by the Defendant to further the conspiracy, lack of agreement and improper venue under § 1956(i)(1), (2) and (3).

## XXI.   Motion to Dismiss Money Laundering Conspiracy 18 U.S.C. § 1956(h) for Failure to State an Offense

Defendant respectfully moves this court to dismiss the indictment charging a violation of 18 U.S.C. § 1956(h) on the ground that it fails to state an offense.

[M]oney laundering criminalizes a transaction in proceeds, not the transaction that creates the proceeds. *United States v. Hassan Abbas*, 100 F.4th 267, 285 (1st Cir. 2024). The discovery in this case hints the government is using the transactions that created proceeds in other judicial district as the bases for the objects of money laundering offense in the Northern District of New York. Defendant cannot identify which transactions are proceeds of specified unlawful activity. The indictment is so general; it fails to state a cognizable offense.

i. The indictment Fails to Identity Any Financial or Monetary Transaction

A valid money laundering conspiracy charge under § 1956(h) must allege a specific financial or monetary transaction that the Defendant conducted or facilitate. The Second Circuit has consistently held that an indictment must provide sufficient factual detail to inform the Defendant of the specific offense charged. *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013). Here, the indictment is deficient because it does not specify

1. Which financial or monetary transaction the Defendant conducted;

2. When and where the alleged transaction took place; or

3. How the transactions relate to the alleged conspiracy.

The failure to include these details violates the Defendant's constitution rights to be informed of the nature of the charge under the Fifth and Sixth Amendments. *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)

ii. The Indictment fails to Identity Any Act in Furtherance of the Conspiracy

A conspiracy charge requires at least one overt act in furtherance of the agreement. *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999). However, the indictment does not allege any specific act by the Defendant to advance the purported money-laundering scheme. Instead, it contains only vague and conclusory allegations, which are insufficient to support a conspiracy charge.

iii. The Indictment Fails to Establish Intent and Omits the Required Willfulness Element

The money laundering statue requires that a defendant act willfully, meaning with knowledge that the financial transaction was designed to promote or conceal unlawful activity. *See United States v. Gotti*, 459 F.3d 296, 334 (2d Cir. 2006); *United States v. Maher*, 108 F.3d 1513, 1527 (2d Cir. 1997). Here, the indictment fails to allege the defendant acted or to that, the Defendant had actual knowledge of the illicit nature of the transactions. The omissions of this critical element renders the indictment defective. The Supreme Court has made clear that indictments lacking an essential element of the charged offense must be dismissed. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007)

Because the indictment fails to

79

1.  Specify any financial or monetary transactions;
2.  Identify and overt act in furtherance of the conspiracy; and
3.  Allege the necessary intent and willfulness elements.

    It does not state an offense under 18 U.S.C. § 1956(h) and must be dismissed.

    The Indictment improperly charges Defendant in the Northern District of New York, despite the fact that Defendant neither committed any act in furtherance of the alleged conspiracy within this district nor had any reasonably expectations that fraudulent transactions would occur here. The government's attempt to establish venue based solely on the actions of a co-conspirator is legally insufficient.

    iv.  Legal Standard for Venue in Conspiracy Cases

    Venue in a conspiracy case must be proper in a district where:

1.  The Conspiracy was formed or agreed upon;
2.  An overt act in furtherance of the conspiracy was committed; or
3.  Venue was reasonably foreseeable to the defendant as a site of criminal conduct.

    The Second Circuit has made clear that venue cannot be based solely on the actions of co-conspirators unless the defendant could reasonably foresee that the acts would occur in the district. *See United States v. Royer*, 549 F.3d 886, 894 (2d Cir. 2008); *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) (Mere association with a conspiracy does not provide a basis for venue where the defendant neither performed an act within the venue nor could have reasonably foreseen that the act would occur there).

    The Second Circuit in *United States v. Roy*, 783 F.3d 418, 421 (2d Cir. 2015) (per curiam) no overt act requirement for conspiracy under 18 U.S.C. § 1349 and 1956(h)). (quoting *Whitfield v. United States*, 543 U.S. 209 (2005).

    Fed. R. Crim. P. 18 requires that a defendant be tried in the district where the crime was committed." *United States v. Rutigliano*, 790 F.3d 389, 395 (2d Cir. 2015) (internal quotation marks omitted). The government must prove venue "by a preponderance of the evidence." *United States v. Hoskins*, 44 F.4th 140, 147 (2d Cir. 2022).

*United States v. LaSpina*, 299 F.3d 165 (2d Cir. 2002) (the illegal objective of a conspiracy to engage in monetary transactions in violation of § 1957(a) is the monetary transactions involving unlawful obtained property, not the underlying act of unlawfully obtaining it. *See* Stavroulakis, 952 F.2d at 691; *United States v. Holmes*, 44 F.3d 1150, 1154 (2d Cir. 1995); *United States v. King*, 259 F. Supp.3d 1267, 1281-86 (Western Dist. Okla. July 3, 2014)

    v. Argument

1. Defendant did not commit any Acts in the Northern District of New York. The indictment does not allege that Defendant personally engaged in any activity within the Northern District of New York. The Second Circuit has held that a defendant cannot be prosecuted in a district where he was not present and took no actions in furtherance of the alleged offense. *United States v. Saavedra*, 223 F.3d 85, 91 (2d Cir. 2000).

2. The Government Has Not Established Reasonably Foreseeability of venue. The indictment fails to allege any facts showing that Defendant knew or could have reasonably foreseen that money laundering would take place in the Northern District of New York. In *United States v. Ramirez*, 420 F.3d 134, 145 (2d Cir. 2005), the court reversed the conviction where the government failed to show that the defendant had knowledge that acts would occur in a particular district. The government reliance on a co-conspirators unilateral travel to the Northern District is insufficient to establish venue. *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989) (holding that venue is improper where a defendant neither participated in nor could have foreseen criminal activity occurring in a particular district).

3. A Co-Conspirators Action in the Northern District Are Insufficient to Establish Venue. The indictment relies on the fact that a co-conspirator conducted fraudulent transactions within the Northern District, and allegedly deposited a portion of the proceeds in a bank account to extend a rental car. However, the government has not alleged that the defendant committed an act in furtherance in the district or that co-conspirators transferred any proceeds of specified unlawful activity to defendant.

4. Indictment must be Dismissed Where No Substantial Connection to the District Exists. The Second Circuit has consistently held that conspiracy charges when venue is challenged, the government must prove a substantial connection to the district of venue.

*See United States v. Lange*, 834 F.3d 58, 70 (2d Cir. 2016). Because the government has not demonstrated a substantial nexus between Defendant and the Northern District of New York, the indictment must be dismissed for improper venue.

vi. Conclusion

For the foregoing reasons, Defendant respectfully requests that this court dismiss the indictment for conspiracy to commit money laundering conspiracy 18 U.S.C. § 1956(h) due to lack of venue.

XXII.   Defendant Motion to Dismiss Indictment for Lack of Substantial Contact with
   Venue District

I.   Introduction

The indictment improperly charges defendant in the Northern District of New York despite Defendant's lack of substantial contact with the venue district. The government has not alleged that Defendant engaged in conduct within the district, directed any fraudulent activity there, or could have foreseen that fraudulent transactions would occur in the district. Under Second Circuit Precedent, the indictment must be dismissed in cases where the defendant lacks any substantial contact with the district.

i. Legal Standard: The Substantial Contact Test

The Second Circuit applies a substantial contacts test to determine whether venue is proper in a particular district. Courts consider:

1. The Site of the defendant's acts;
2. The elements and nature of the charged offense;
3. The degree to which the defendant participated in events occurring in the district; and
4. The foreseeability of the defendant facing prosecution in the district.

*United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985) (Where the defendant lacks meaningful ties to the venue district, the burden is on the government to demonstrate a substantial connection to the alleged offense); *United States v. Rowe*, 414 F.3d 271, 278 (2d Cir. 2005) (applying the substantial contact test to conspiracy charges)

ii. Argument

1. Defendant did not Commit Any Acts in the Northern District of New York. The indictment does not allege that Defendant personally traveled to, communicated from, or directed any fraudulent activity into the Northern District. In *United States v. Ramirez*, 420 F.3d 134, 145 (2d Cir. 2005), the court found venue improper when the defendant's own conduct did not establish a sufficient connection to the venue district.

2. Defendant did not Have Reasonably Foreseeability of Venue in the Northern District. The Second Circuit has made clear that venue must be reasonably foreseeable to the defendant. *See United States v. Saavedra*, 223 F.3d 85, 91 (2d Cir. 2000). Here, the government has failed to allege that Defendant had any knowledge or expectation that fraudulent transactions would take place in the Northern District of New York.

3. The in-district Telephonic Communication on dates Crime Occurred in this District Were Not Reasonably foreseeable to Defendant. A WhatsApp User communicated with Daniyan on specific dates crimes occurred in this district, the WhatsApp User was not on notice of where transactions would be conducted. The WhatsApp User did not know of Daniyan's whereabouts nor did Daniyan state his whereabouts. The individual communicating with Daniyan could not have reasonably foreseen what district or state Daniyan was in when the bank fraud transactions were conducted. *See United States v. Gross*, 2017 U.S. Dist. LEXIS 172567, *127-140 (S.D.N.Y. 2017); *see also United States v. Menendez*, 2024 U.S. Dist. LEXIS 226079, *99-104 (S.D.N.Y. 2024); *United States v. Hwa*, 2021 U.S. Dist. LEXIS 268477, *68-70 (E.D N.Y. 2021). *United States v. Royer*, 549 F.3d 886 (2d Cir. 2008). "In-district electronic/telephonic communication must be reasonably foreseeable to a conspirator. *United States v. Lange*, 834 F.3d 58, 70 (2d Cir. 2016). The communication must further the objective of the conspiracy. "[V]enue lies in both the district where a telephonic communication in furtherance of a crime was made and where it was received. *Id.* at 70; *see also United States v. Abdallah*, 528 Fed. Appx. 79, 83 (2d Cir. 2013) (concluding that a phone call from the Eastern District of New York to the defendant in Texas was sufficient to establish venue in the Eastern District of New York." The Second Circuit has stated, "venue is proper in a district (1) the defendant intentionally and knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue [and it does]. *United*

*States v. Svoboda*, 347. F.3d 471, 483 (2d Cir. 2003). The Second Circuit in Tank Yuk, 885 F.3d at 71 stated "venue is proper only if the defendant "knew or could have known" that the call or text came from the Southern District of New York to make venue reasonably foreseeable to out of district conspirators.

The indictment charges Defendant with conspiracy to commit bank fraud based on allegations that he provided identities to a co-conspirator before the co-conspirator entered the venue district and executed fraudulent transactions. The government, however, has not alleged that Santa's conduct was anything more than preparatory to the offense. Under Second Circuit precedent, preparatory acts alone are insufficient to support a conspiracy conviction unless they constitute part of the offense itself.

iii. Legal Standard: Preparatory Acts Do Not Constitute Part of the Offense

The Second Circuit has consistently held that preparatory acts, even if connected to a broader criminal scheme, do not constitute the execution of the offense itself. Courts consider:

1. Whether the acts directly furthered the execution of the conspiracy objective, or
2. Whether the act is merely a preliminary step that precedes the offense but does not advance its commission.

*United States v. Khalupsky*, 5 F.4th 279, 291-92 (2d Cir. 2021) (nothing that acts occurring before the formation of a conspiracy and merely preparatory cannot support liability); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989) (dismissing charges where the alleged conduct was too preliminary to constitute a conspiracy offense).

iv. Argument

1. Act of Sending Identities was Mere Preparatory

The indictment alleges that Santa provided identifying information to a co-conspirator before the co-conspirator traveled to the Northern District of New York. The Second Circuit has made clear that acts that precedes and does not directly further the execution of the crime is preparatory and does not establish liability. *United States v. Gagliardi*, 506 F.3d 140, 148 (2d Cir. 2007). Because Defendant alleged acts was completed

before any fraudulent transactions occurred, it was preparatory and not an overt act in furtherance of the conspiracy.

1. The Fraudulent Identification Documents were also Preparatory Acts. The government alleges that co-conspirators used the identities provided by Defendant to create fraudulent identification documents. However, the creation of fraudulent identification document itself is a preparatory act and not an overt act in furtherance of the conspiracy. In *United States v. Tzolov*, 642 F.3d 314, 319 (2d Cir. 2011), the court held that mere preparations of a fraud scheme is not sufficient and is preparatory to the offense.

2. Defendant Acts Were Complete before the Conspiracy Entered the Venue District. The government theory rest on the fact that a co-conspirator later entered the Northern District and committed fraudulent transactions. However, Defendant's act took place before and outside the venue district.

Dismissal is required because the Indictment Fails to Allege Conduct That Constitutes a Criminal offense. The failure to allege that Defendant's acts were part of the actual execution of the conspiracy rather than mere preparations means that the indictment does not state a valid offense.

2. Conclusion

For the foregoing reasons, Defendant respectfully request that this court dismiss the indictment for conspiracy to commit bank fraud under 18 U.S.C. § 1349 due to the failure to allege that Defendant's conduct was part of the offense rather than mere preparation.

XXIII. Defendant Motion to Dismiss Indictment for Failure to Allege the Federally Insured Status of the Financial Institutions

i. Introduction

The indictment alleges that Defendant conspired to commit bank fraud but fails to specify that the financial institution involved be federally insured at the time of the alleged offense. The omissions of this essential element renders the indictment legally insufficient as courts have repeatedly held that federal jurisdiction under 18 U.S.C. §§ 1344, 1349 depends on the federally insured status of the affected bank or credit union.

ii. Legal Standard: Federal Insurance as an Essential Element of Bank Fraud

The federally insured status of a financial institution is an essential jurisdictional element of bank fraud under 18 U.S.C. § 1344 and conspiracy to commit bank fraud under 18 U.S.C. § 1349. An indictment that fails to allege this element is legally defective and must be dismissed. Federal courts have consistently held that an indictment must expressly state that the affected financial institution was federally insured.

*United States v. Bouchard*, 828 F.3d 116, 123-28 (2d Cir. 2016) (holding that failure to prove federal insurance is fatal to a bank fraud charge); *United States v. White*, 597 F. Supp. 2d 1269, 1270-71 (M.D. Ala. 2009) (dismissing an indictment that failed to allege federal insurance); *United States v. Dennis*, 237 F.3d 1295, 1303-05 (11th Cir. 2001) (government must plead and prove federally insured status); *United States v. Akers*, 215 F.3d 1089, 1100-01 (10th Cir. 2000) (holding that federal insurance is jurisdictional and must be alleged in the indictment); *United States v. Bell*, 500 Fed. Appx 133, 135-36 (3d Cir. 2012) (finding indictment deficient where it failed to allege the bank was federally insured); *United States v. Davis*, 735 F.3d 194, 195-202(5th Cir. 2013) (reversing conviction where government failed to establish federal insurance); *United States v. Banyan*, 933 F.3d 548, 552-55 (6th Cir. 2019) (dismissing indictment where the government did not allege federal insurance); *United States v. Bennett*, 622 F.3d 1131, 1135-38 (9th Cir. 2010) (federal jurisdiction fails without proper pleading of bank insured status).

iii. Argument

1. The indictment fails to allege an Essential Jurisdictional Element.

   The Second Circuit has made clear that the federally insured status of the bank is a jurisdictional requirement under 18 U.S.C. § 1344. *United States v. Bouchard*, 828 F.3d at 1233-28. Without alleging that the financial institution was federally insured, the indictment fails to state an offense within federal jurisdiction.

2. Federal Case Laws Requires Dismissal Where This Element is Omitted

   Courts in multiple circuits have dismissed indictments for failing to include this essential element. *See United States v. Dennis*, 237 F.3d at 1303-05; *United States v. White*, 597 F. Supp. 2d at 1270-71. The Second Circuit has recognized that jurisdiction must be apparent from the face of the indictment, and failing to allege federally insured

status deprives the court of subject matter jurisdiction. *United States v. Bouchard*, 828 F.3d at 123-28.

3. The indictment Deficiency Cannot Be Cured at Trial

The government cannot retroactively cure a deficient indictment by proving federal insured status at trial. *See United States v. Davis*, 753 F.3d at 195-202. Because an indictment must state all essential elements of an offense, a missing jurisdictional element requires dismissal. *United States v. Akers*, 215 F.3d at 1100-01

iv. Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court dismiss the indictment for conspiracy to commit bank fraud 18 U.S.C. § 1349 due to the government's failure to allege the federally insured status of the financial institution an essential jurisdictional element.

XXIV.    Defendant Motion to Compel Discovery and dismiss Indictment for Failure to Comply with Rule 16(a)(1) Disclosures Obligations

Defendant respectfully moves this court for an order dismissing the indictment or, in the alternative, compelling the government to properly comply with its Rule 16(a)(1) discovery obligations under the Federal Rules of Criminal Procedure. The government has engaged in a document dump of over 42,468 Bates-Numbered documents without any guidance, index, or organization, making meaningful review and preparation impossible. This conduct violates Defendant's constitutional right to due process and the government discovery obligation under Rule 16(a)(1).

i. Introduction

The government has provided the defense with an overwhelming volume of discovery 42,688 documents without any meaningful organization, index, or clear designation of what material is exculpatory, inculpatory, or relevant to the specific charges. This date dump is a deliberate attempt to obscure information rather than comply with the disclosure requirements of Rule 16(a)(1). The Second Circuit had rejected such tactics, recognizing that unorganized and voluminous disclosures can amount to a constructive failure to provide discovery. Courts have repeatedly sanctioned the government for failing to provide meaningful and accessible

discovery. *See United States v. Vinas*, 910 F.3d 52, 54 (2d Cir. 2018); *United States v. Stein*, 488 F. Supp. 2d 350, 366 (S.D.N.Y. 2007). Given the government's failure to comply with Rule 16 and the resulting prejudice to the defense, dismissal is warranted. Alternatively, the court should compel the government to properly organize and identify the relevant discovery materials.

    ii. Legal Standard: Rule 16 Discovery Obligations

Under Rule 16(a)(1) of the Federal Rules of Criminal procedure, the government must provide defendant's with access to:

1. Any relevant written or recorded statements of the defendant;
2. The substance of oral statements made by the defendant;
3. Documents, date, and tangible objects material to the defense; and
4. Any exculpatory or impeaching evidence under *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963).

The Second Circuit has strongly disapproved of document dumps that hinder the defenses ability to review evidence, recognizing that:

The government must identity the relevant evidence within large productions rather than shift the burden to the defense. *United States v. Briggs*, 2011 U.S. Dist. LEXIS 101415, *15 (W.D.N.Y. 2011). Massive unorganized disclosures can violate due process if they effectively prevent meaningful review. *United States v. Warshak*, 631 F.3d 266, 295 (6th Cir. 2010). Courts may dismiss an indictment or impose sanctions when the government burdens the defenses with excessive and disorganized discovery.

    iii. Argument
1. The Governments Discovery Dump Amounts to a constructive Denial of Discovery
The government's production of 42,688 Bates-numbered documents without organization or guidance violates Rule 16. The Second Circuit has held that discovery disclosures must be meaningful and accessible, not an intentional burden on the defense. *See United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 455 (S.D.N.Y. 2011). Courts found similar documents dumps to be a due process

violation, as they function as a de facto withholding of evidence. *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009).

2. The Lack of Organization Prevents Defendant from Preparing an Adequate Defense
   The defense cannot reasonably review or analyze such an enormous amount of unstructured discovery within the time available before trial. This places the defendant at an unfair disadvantage, effectively depriving them of the right to due process and a fair trial. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). Courts have sanctioned the government for similar discovery violations, recognizing that burying key evidence in an avalanche of irrelevant documents violates fundamental fairness. *United States v. Bin Laden*, 397 F. Supp. 2d 465, 481 (S.D.N.Y. 2005).

3. The court Has the Authority to Dismiss the Indictment or Compel Compliance
   When the government's discovery violation significantly prejudices the defense, dismissal is an appropriate remedy, *United States v. Morrison*, 449 U.S. 361, 365 (1981). Alternatively, the court can order the government to reproduce discovery in a usable format, including:

   > An index of key documents;
   >
   > A summary of categories of evidence;
   >
   > Clear identification of exculpatory or inculpatory materials.

   iv. Conclusion

   For the foregoing reasons, Defendant respectfully requests that this court:

1. Dismiss the indictment for failure to comply with Rule 16(a)(1); or
2. Compel the government to provide properly organized discovery, including an index and categorization of key materials.

Failure to grant relief will severely prejudice the defenses and violate Defendant's constitutional rights to a fair trial under the Fifth and Sixth Amendments.

XXV. <u>Motion for Discovery Pursuant to Fed. R. Crim. P. 16 and 12(b)(3)(E)</u>

Defendant respectfully moves this court to compel the government to provide discovery pursuant to Federal Rule of Criminal Procedure 16 and 12(b)(3)(E). Defendant specifically seeks materials and information clarifying the basis for the government's assertion of venue in

the Northern District of New York, as the voluminous discovery provided fails to establish that
the Defendant committed any alleged crime within this district. The government keeps
producing irrelevant materials. The government produced additional discovery to the defense
on March 14, 2025. The discovery pertains to bank fraud transactions that occurred in other
judicial district.

 i. Legal Standard

 Under Fed. R. Crim. P. 16(a)(1)(E), the government must disclose materials that are
material to preparing the defense. Furthermore, Rule 12(b)(3)(E) permits a defendant to seek
the production of discovery materials relevant to resolving issues in the case, including the
adequacy of venue.

 Venue in a criminal case is a constitutional requirement under Article III, Section § 2 cl.
3, and the Sixth Amendment. The government must establish by a preponderance of evidence
that the crime occurred in the district where the indictment was filed. *United States v. Tzolov*,
642 F.3d 314, 318 (2d Cir. 2011)

 ii. Argument

 A. The Governments Voluminous Discovery Fails to Establish Venue

 The discovery provided by the government is excessively voluminous and vague,
containing no clear indication of specific acts allegedly committed by Defendant in the
Northern District of New York. Without further specificity, Defendant cannot ascertain the
alleged basis for venue or adequately prepare a defense.

 As the Second Circuit has held, vague or ambiguous discovery does not satisfy the
government's obligation to provide sufficient information for a defendant to understand the
nature of the charges. *United States v. Nachamie*, 91 F. Supp. 2d 552, 562 (S.D.N.Y. 2000)
(ordering the government to produce discovery clarifying its theory of the case to avoid
prejudice to the defendant).

 B. Material Discovery is Necessary to Address Venue Challenges

 The indictment and discovery materials fails to specify any conduct by Defendant
within this district, as required to establish venue. In *United States v. Saavedra*, 223 F.3d 85,

93 (2d Cir. 2000), the Second Circuit emphasized that venue must be proven for each count. Without additional information, Defendant is deprived of the opportunity to meaningful challenge the governments venue allegations.

C. Specific Discovery Requests

Defendant requests that the government be ordered to produce the following:

1. All documents, communication, or evidence specifically tying the alleged conduct to the Northern District of New York.
2. Any Investigative report of summaries that establish where the alleged offenses occurred.
3. A written statement of the government's theory regarding venue for each count in the indictment.

iii. Conclusion

For the foregoing reasons, Defendant respectfully requests that this court order the government to produce discovery under Fed. R. Crim. P. 16 and 12(b)(3)(E) to clarify the alleged basis for venue in the Northern District of New York.

XXVI. Motion to Compel Production of Evidence and Opportunity to Object Pursuant to Fed. R. Crim. P. 16(a) and 12(b)(3)(C)

Defendant respectfully moves this court for an order compelling the government to produce all evidence it intends to offer at trial, pursuant to Federal Rule of Criminal Procedure 16(a), and for the opportunity to object to such evidence before trial under Rule 12(b)(3)(C). Defendant further requests that the court require the government to disclose this evidence sufficiently in advance of trial to allow for meaningful objections and preparations.

i. Legal Standard

Fed. R. Crim. P. 16(a)(1)(E) requires the government to produce a defendant with access to evidence it intends to use at trial, including any documents, data, or physical objects that are in the governments possession and material to the defense or to the government case-in-chief. The rule also provides that the government must provide the defendant with the

opportunity to review evidence that the government plans to introduce, allowing the defendant to challenge the admissibility or relevance of such evidence.

Under Fed. R. Crim. P. 12(b)(3)(C), a defendant is entitled to challenge the admissibility of evidence before trial, ensuring that the government does not present evidence that is inadmissible or prejudicial to the defendant's case. The Second Circuit has held that timely disclosures of evidence are critical to allowing a defendant to adequately prepare a defense. *United States v. Bin Laden*, 92 F. Supp. 2d 225, 236 (S.D.N.Y. 2000)

ii. Argument

A. The Government Must Disclose Evidence it intends to use at Trial.

Fed. R. Crim. P. 16 (a)(1)(E) mandates that the government provide the defendant with access to evidence it intends to use at trial. Timely production of this evidence is necessary to allow the defendant to evaluate its potential impact on the case. In *United States v. Giffen*, 379 F. Supp. 2d 337, 345 (S.D.N.Y. 2004), the Second Circuit emphasized that the government must provide the defendant with sufficient time to review and object to evidence in advance of trial. Failure to do so undermines the defendant's rights to prepare an adequate defense.

B. The Defendant Must Be Given the Opportunity to Object to Evidence Before Trial

Rule 12(b)(3)(C) provides that the defendant is entitled to challenge the admissibility of evidence prior to trial. The purpose of this rule is to prevent trial delays and ensure the evidence presented is relevant, admissible, and not prejudicial. As the District Circuit stated in *United States v. Mills*, 2019 U.S. Dist. LEXIS 24, *5-6 (Eastern Dist. Mich. 2019), pretrial motions challenging the admissibility of evidence provides both the government and the defendant with clarity on what evidence will be presented, which promotes a fair trial.

Defendant request that the court compel the government to produce all evidence it intends to offer at trial, including and physical or documentary evidence, witness statements, and expert testimony. Further Defendant respectfully requests that the Court establish a reasonable deadline for the government's production of such evidence, allowing Defendant an opportunity to object to any evidence prior to trial.

iii. Conclusion

For the reasons stated above, Defendant respectfully requests that this court order the government to produce all evidence it intend to offer at trial under Fed. R. Crim. P. 16(a), and to provide Defendant an opportunity to object to such evidence before trial pursuant to Rule 12(b)(3)(C).

XXVII.    Motion Requesting Brady, Giglio and Jencks Act Materials

Defendant respectfully moves this court for an order compelling the Government to produce all materials required under Brady v. Maryland, Giglio v. United States, and the Jencks Act (18 U.S.C. § 3500). Specifically, Defendant requests that the Government provide any and all exculpatory evidence, impeachment materials, and Statements or reports of witnesses related to the case in accordance with these precedents and statues.

i. Legal Basis

A. Brady v. Maryland, 373 U.S. 83 (1963)

In Brady v. Maryland, the Supreme Court held that the prosecution must disclose to the defense any evidence that is favorable to the accused and material to guilt or punishment. This includes exculpatory evidence as well as evidence that could impeach the credibility of the prosecutions witness. The Second Circuit had consistently reinforced that the prosecution is required to provide all exculpatory evidence to the defense, regardless of whether the defense request it, and that the suppression of such evidence violates the defendant's due process rights. *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001).

B. Giglio v. United States, 405 U.S. 150, 153 (1972)

In Giglio v. United States, the Supreme Court expanded on the principles of Brady by holding that the prosecution is also required to disclose any evidence that could be used to impeach the testimony of government witnesses, including prior false statements. Specifically, Giglio established that impeachment evidence, like exculpatory evidence, must be disclosed because it is material to the defense. The Supreme Court has held that failure to disclose such impeachment material constitutes a Brady violation. *United States v. Bagley*, 473 U.S. 667, 678 (1985)

C. Jencks Act (18 U.S.C. § 3500)

The Jencks Act mandates that the Government must provide the defense with prior statements made by government witnesses upon request after the witness has testified on direct examination. These materials are critical to the defense ability to cross-examine government witnesses and to prepare for trial. The act provides that the defense is entitled to witness statements that relate to the subject matter of the testimony given by the witness. The Second Circuit has reaffirmed that the prosecution is obligated to provide all Jencks Act materials in a timely manner. *See United States v. Persico*, 163 F.3d 126, 133 (2d Cir. 1998).

ii. Request for Disclosure

In light of the above, the Defendant respectfully requests that the Court order the Government to produce all:

1. Brady materials: Any exculpatory evidence, including but not limited to information that could show the Defendant innocence, reduce the Defendant potential sentence, or impeach the credibility of government witnesses.
2. Giglio materials: Any evidence related to the credibility or potential bias of any government witnesses, including but not limited to prior inconsistent statements, prior convictions, or any other impeachment evidence that may be material to the defense.
3. Jencks Act materials: All statements, notes or report made by any government witness (including law enforcement officers) that relate to the subject matter of the witness testimony, as soon as they are available, but in any event no later than the time of the witness direct examination.

The Defendant asserts that access to these materials is necessary to ensure a fair trial and allow the defense to fully prepare for trial, including the ability to challenge the Government evidence and witnesses.

iii. Conclusion

For the reasons set forth above, Defendant respectfully requests that the court order the Government to immediately disclose all Brady, Giglio, and Jencks Act materials.

XXVIII.    Motion Requesting Disclosure of Rule 404(b) Evidence

Defendant respectfully moves this court for an order compelling the Government to disclose, in advance of trial, any evidence it intends to introduce pursuant to Federal Rule of Evidence 404(b), specifically, the Defendant requests that the Government disclose all such evidence of other crimes, wrong, or acts that it intends to use to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

i. Legal Standard

Federal Rule of Evidence 404(b) governs the admissibility of evidence of other crimes, wrongs, or acts and requires that such evidence be disclosed to the Defendant in advance of trial to allow the proper preparation and to avoid undue prejudice. Rule 404(b) prohibits the use of such evidence to prove the Defendant's character, but permits its use for other purposes, such as proving intent, motive, knowledge, or scheme. The Second Circuit has consistently held that Rule 404(b) evidence must be disclosed prior to trial to allow the defense and opportunity to challenge its admissibility and to prepare for its presentation at trial.

ii. Argument

The Governments duty to disclose 404(b) evidence in advance of trial is essential to the Defendant's ability to prepare for trial and ensure a fair trial. The Defendant is entitled to timely disclosures of any 404(b) evidence the Government intends to use to prove the Defendant intent, knowledge, or participation in the charged offenses. Early disclosures is necessary to avoid surprise and allow the Defendant an opportunity to contest the relevance and admissibility of such evidence.

1. Second Circuit Precedent: In *United States v. Edwards*, 2025 U.S. App. LEXIS 78, *8 (2d Cir. 2025), the Second Circuit emphasized that the Government must provide timely notice of any evidence it plans to use under Rule 404(b) to give the defendant adequate time to assess and respond. The Court held that the purpose of the notice requirement is to ensure that the defendant can prepare an effective defense, and to avoid unfair prejudice that could result from the surprise introduction of such evidence.

2. Notice Requirement: The Second Circuit has held that the Government must provide reasonable pretrial notice of its intention to introduce evidence of other crimes or acts. The court reaffirmed that pretrial disclosure is necessary so that the defense can access

the potential prejudice of the evidence and whether its probative value outweighs its prejudicial effect.

3. Adequate Time to Prepare: Without early disclosure of Rule 404(b) evidence, the Defendant is left without the opportunity to challenge its admissibility or to formulate a defense strategy. As the Second Circuit noted, fair notice of the evidence to be used against the defendant ensures that the defendant is not surprised by the introduction of evidence, which can undermine the fairness of the trial.

iii. Request for Disclosure

In light of the foregoing, the Defendant respectfully requests that this court order the Government to provide the following:

A written notice identifying any evidence or other crimes, wrong, or acts that the Government intends to introduce at trial under Rule 404(b).

A brief description of the purpose for which the Government intends to use such evidence, consistent with the requirements of Rule 404(b).

The specific acts or evidence the Government intends to offer, including the dates and nature of any alleged prior offense or wrongs.

This disclosure should be made as soon as possible, but no later than April 30, to allow the Defendant adequate time to review the evidence, prepare for trial, and file any motions in limine if necessary.

iv. Conclusion

For the reasons stated above, the Defendant respectfully request that this Court Compel the Government to disclose, in writing, any evidence of other crimes, wrong, or acts it intends to introduce at trial under Rule 404(b). Such disclosure is necessary to ensure that the Defendant right to a fair trial is protected, and to allow proper preparation of a defense.

XXIX. Defendant Motion to Compel the Government to Translate Audio Messages on 1B5 and 1B129 Pursuant to Fed. R. Crim. P. 16

Introduction:

Defendant respectfully moves this court to compel the government to translate the audio messages between Daniyan and Santa (device 1B5), Daniyan and BRODA (device 1B129) and provide the translated transcripts to the defense. The government has selectively translated and produced transcripts of other communication specifically between Daniyan and Ace G (device 1B22) but has failed to translate and produce the requested audio messages.

Rule 16(a)(1)(A)(i)

Under Fed. R. Crim. P 16(a), the government is required to turn over to the defendant on request "any relevant written or recorded statement made by the defendant . . . within the possession, custody, or control of the government, the existence which is known, or by exercise of due diligence may become known, to the attorney of the government." Fed. R. Crim. P. 16(a)(1)(A).

Rule 16 requires the government to produce documents and objects "within the government's possession, custody, or control," intended for use by the government "in its case-in-chief a trial," or that was "obtained from and belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Similarly, Brady requires the government to produce material favorable to the defense and held that suppression of such evidence violates due process "where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Brady 373 U.S. 87. Subsequent cases expanded Brady holding to include impeachment evidence. *See Giglio v. United States*, 405 U.S. 50, 54 (1972)

This selective translation violates Fed. R. Crim. P 16(a)(1)(B)(i) and (ii) which requires the government to disclose oral statements made by the defendant and other relevant statements material to the defense. The court should order the government to produce translated transcripts to ensure complaint with the rule and to prevent prejudice against the defendant.

Argument

i. The Government's Failure to Translate All Relevant Audio Messages Violates Rule 16

In this case, the government had provided translated transcripts for some audio messages namely, messages between Daniyan and Ace G (1B22), Daniyan and 1-341-171-

97

5526, Daniyan and 545-605-0335 but has failed to translate other crucial conversations between Daniyan and Santa (1B5) and Daniyan and BRODA (1B129). This selective translation creates an unfair imbalance, as the defense is deprived of the ability to assess, contextualize, and respond to potentially exculpatory or mitigating evidence.

The Second Circuit has consistently held that Rule 16 is intended to prevent trial by ambush and ensure that defendants' have access to evidence material to their defense. *United States v. Djibo*, 730 Fed. Appx. 52, 56 (2d Cir. 2018) (The purpose of Rule 16 is to provide defendant's with sufficient information to meaningfully prepare for trial and to prevent unfair surprise).

Here, the government's failure to translate all relevant materials directly obstructs the defenses ability to prepare adequately for trial, as it prevents defense counsel from evaluating potentially exculpatory statements or contradictions in the government's case.

ii. The Government Cannot Selectively Translate and Disclose Only Some Statements

The Second Circuit has condemned the selective disclosure or evidence, especially where it results in an unfair advantage to the prosecution. In *United States v. Ghailani*, 687 F. Supp. 2d 365, 373 (S.D.N.Y. 2010), the court held that the government may not selectively disclose only those statements favorable to its case while withholding others that may be relevant to the defense.

By translating only device 1B22 (Daniyan and Ace G, Daniyan and 1-341-171-5526, Daniyan and 545-605-0335 but failing to translate device 1B5 (Daniyan and Santa) and device 1B129 (Daniyan and BRODA), the government is unfairly picking and choosing which evidence the defense can meaningfully evaluate. This selective disclosure raises concerns of due process violation under Brady v. Maryland, 373 U.S. 83 (1963), as undisclosed translations could contain exculpatory or impeaching information that the defense has a constitutional right to review.

Additionally, the Second Circuit has recognized that the government must disclose all statements by a defendant that may be material to the case. *See United States v. Stein*, 488 F. Supp. 2d 350, 362 (S.D.N.Y. 2007) (holding that the government must provide all materials

98

that may play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal).

Here, failing to translate and disclose the full set of communications hinders the defense ability to properly prepare, investigate, and confront the government's evidence at trial.

iii. The Court Should Compel Translation to Avoid Prejudice and Ensure a Fair Trial

The government's refusal to translate items 1B5 and 1B129 while selectively translating device 1B22 is highly prejudicial, as it deprives the defense of critical context regarding the defendant's alleged statements and the nature of these communications. Without full translation, the defense:

1. Cannot effectively challenge the governments interpretation of the defendant's statements,
2. May be deprived of exculpatory evidence, and
3. Faces an unfair disadvantage at trial, as the prosecution may later attempt to use untranslated statements selectively.

Courts in the Second Circuit have consistently held that ensure full and fair disclosure of evidence is essential to safeguarding a defendant's rights. *See United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (holding that the prosecution must disclose all information that could be used to challenge the government's case or aid the defense).

Given the materiality of these statements and the clear disparity in the government's selective translations, this Court should order the government to immediately translate and produce transcripts of the audio messages contained in items 1B5 and 1B129.

iv. Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court compel the government to translate and produce transcripts of the audio messages between Daniyan and Santa (device 1B5), Daniyan, and BRODA (device 1B129) to ensure full compliance with Fed. R. Crim. P. 16(a)(1)(B) and (E), to prevent undue prejudice, and to protect the Defendant due process rights under Brady v. Maryland.

XXX.   Defendant's Motion to Compel Forensic Extraction of Device 1B7

  i. Defendant is entitled to review the forensic extraction of device 1B7 under Fed. R.
     Crim. P. 16(a)(1)(E), the government is required to disclose any materials or documents
     that are within its possession, custody, or control and that are material to the
     preparation of the defense or that the government intends to use in its case-in-chief. The
     forensic extraction of phone data is vital for the defendant's ability to prepare a defense,
     as it may contain exculpatory or impeaching material. In *United States v. Djibo*, 2019
     U.S. Dist. LEXIS 62913, *5 (S.D.N.Y. 2019), the court held that when a defendant
     requests forensic date from a device, such data is discoverable if it may assist in
     challenging evidence or providing impeaching materials. Here, the video report the
     government produced of the phone is insufficient to determine whether critical material
     is present, especially when the government has not provided access to the actual
     forensic data.

 ii. The video extraction report does not offer sufficient information for the defendant to
     evaluate if the data from device 1B7 contains exculpatory or impeaching materials.
     Without access to the forensically extracted data, the defense is unable to independently
     assess the contents of the phone, as the video may fail to capture every file or text
     conversation in their original context, which may be crucial for the defense. The court
     in Djibo emphasized the necessity of a full Cellebrite extraction to ensure that the data
     is examine in its entirety for any potentially exculpatory information.

iii. Forensic Extraction with Cellebrite is Necessary to Fully Examine the Device and
     Comply with Discovery Rules

     The Cellebrite extraction tool provides a comprehensive forensic extraction, ensuring
     all data is recovered from the device, including deleted files, text messages, call logs,
     and metadata that may not be accessible through superficial review. In *United States v.
     Landji*, 2022 U.S. Dist. LEXIS 113679, *50 (S.D.N.Y. 2022), the court emphasized
     that forensic extraction methods like Cellebrite provides complete access to a device
     contents, something that cannot be achieved through simple video reports or
     preliminary extractions.

iv. Conclusion

The defendant is entitled to a complete and thorough forensic examination of the 1B7 device. The video extraction report alone is inadequate to determine if the device contains exculpatory or impeaching material required under Fed. R. Crim. P. 16. The government should be compelled to conduct a full Cellebrite extraction and provide the defendant with the results for review.

Wherefore, the defendant respectfully requests that the Court order the government to forensically extract the data from 1B7 using Cellebrite and provide the defendant with full access to the extracted data no later than April 25, 2025.

XXXI.    Defendant's Motion to Order the Government to Preserve and Produce
Investigate Notes Pursuant to Brady, Giglio and the Jencks Act

Defendant respectfully moves this Court for an order directing the government to preserve and produce all investigative notes, reports, and related materials generated in the course of its investigation. This request is made pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. § 3500, and applicable Second Circuit precedent.

i. Legal Standard

1. Brady and Giglio Obligations

Under *Brady v. Maryland*, 373 U.S. 83, (1963), the government is required to disclose all exculpatory evidence that is material to the defense.

Under *Giglio v. United States*, 405 U.S. 150 (1972), the government must disclose any material evidence affecting the credibility of its witnesses, including impeachment material.

2. The Jencks Act (18 U.S.C. § 3500)

The Jencks Act requires the government to produce any prior statements of government witness that relate to their testimony. Investigative notes and reports containing witness statements fall within this requirement. *See United States v Scotti*, 47 F.3d 1237, 1249 (2d Cir. 1995).

ii. Argument

101

a. Investigative Notes May Contain Material Exculpatory or Impeachment Information

Investigative notes taken by government agents and law enforcement officials during witness interviews and other investigative activities may contain exculpatory evidence under Brady or impeachment evidence under Giglio. Courts in the Second Circuit have held that such notes must be preserved and, when material, disclosed to the defense.

In *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2017), the court emphasized that the government must disclose all Brady and Giglio materials in its possession, including law enforcement notes that contain inconsistent witness statements or other favorable evidence. In *United States v. Triump Capital Group inc.*, 544 F.3d 149, 161 (2d Cir. 2008), the court held that the government's failure to preserve and disclose agents notes that contained inconsistent witness statements violated Brady and warranted reversal.

To ensure compliance with these obligations, the Court should order the preservation and production of all notes that may contain statements relevant to the defense, particularly where discrepancies exist between notes and formal reports.

iii. Investigative Notes May Contain Prior Witness Statements Required to be Disclosed Under the Jencks Act

The Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2 mandates the production of any prior statements of government witnesses that related to their testimony. Investigative notes qualify as Jencks material if they record statements made by government witnesses.

In *United States v. Scotti*, 47 F.3d 1237, 1249 (2d Cir. 1995), the Second Circuit held that handwritten agent notes containing summaries of witness interviews were subject to production under the Jencks Act because they contained prior witness statements. In *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001), the court affirmed that the government must preserve and produce prior witness statements, including rough notes, where they reflect statements made by testifying witnesses.

iv. Failure to Preserve Notes May Result in Sanctions and Adverse Inferences

The Second Circuit had recognized that destruction or failure to preserve relevant investigative notes might lead to sanctions or an adverse inference against the government. In

102

*United States v. Stevens*, 985 F.2d 1175, 1181 (2d Cir. 1993), the court warned that the failure to retain and produce original interview notes could violate Brady and the Jencks Act, potentially warranting dismissal or other remedies. In *United States v. Bufalino*, 576 F.2d 446, 449 (2d Cir. 1978), the court found that the government's failure to preserve handwritten notes could prejudice the defendant and warrant remedial action.

Given these precedents, this Court should ensure that all investigative notes are preserved to prevent any Brady, Giglio, or Jencks Act Violations.

v. Conclusion

For the foregoing reasons, Defendant respectfully requests that this court issue and order:

1. Directing the government to preserve all investigative notes, reports, and related materials from the investigation;
2. Directing the government to produce all such notes and materials that contain exculpatory, impeachment, or witness statements relevant to this case under Brady, Giglio and the Jencks Act;
3. Granting any further relief this Court deems necessary to ensure compliance with the government's disclosure obligations.

XXXII.    Defendant Motion to Compel the Government to Produce Unzipped Files of Bank ATM Videos and to Produce all Discovery Not in Defendant Possession Pursuant to Rule 16

Defendant respectfully moves this court for an order compelling the government to produce unzipped copes of the Bank ATM video files previously provided in discovery, as well as all discovery materials not currently in the Defendant possession, pursuant to Rule 16 of the Fed. R. Crim. P. In support of this motion. Defendant states as follows:

i. The Governments production of Zipped ATM Video Files
1. The government has provided ATM video files in a zipped (compressed)) format as part of discovery in this case.

2. Defendant has been unable to access or open the zipped files due to technical limitation, rendering them effectively unusable.

3. The government is in possession of the original, unzipped versions of these videos and can readily produce them in an accessible format without undue burden.

4. Because these videos may be critical evidence in Defendant case, failure to provide them in a viewable format impedes Defendant's ability to review and prepare an adequate defense.

ii. The Governments Obligation Under Rule 16

5. Under Rule 16(a)(1)(E) of the Federal rules of criminal procedure, the government is required to provide a defendant with access to evidence that is material to preparing the defense.

6. In addition to the unzipped ATM videos, Defendant has reason to believe that there are additional discovery materials that have been produced but are not currently in Defendant's possession.

7. The government must ensure that all discoverable materials in its possession, custody, or control are properly disclosed, including any materials that may be exculpatory or otherwise relevant to Defendant's case.

8. The failure to provide complete and accessible discovery violates Defendant's due process rights and hinders the ability to conduct an effective defense, necessitating this motion to compel.

iii. Request for Relief

Wherefore, Defendant respectfully requests that this court:

a. Order the government to produce unzipped, accessible versions of the Bank ATM video files previously provided in discovery;

b. Order the government to produce all discovery materials that have been disclosed but are not currently in Defendant's possession, in compliance with Rule 16; and

c. Grant any further relief that this Court deems just and proper.

XXXIII. Motion to Compel the Government to Produce a Transcript of Defendant's Statement Pursuant to Fed. R. Crim. P. 16

Defendant respectfully moves this Court to compel the Government to produce a transcript of any and all statements allegedly made by the Defendant while being transported to court for a detention hearing in the District of New Jersey, and in support thereof states as follows:

1. The defendant is currently charged in the above-captioned matter and is entitled to discovery under Fed. R. Crim. P. 16(a)(1)(B)(i0, which requires the Government to disclose any relevant oral statement made by the defendant, before or after arrest, in response to the interrogation by a defendant knew was a government agent, if the government intends to use the statement at trial.

2. Upon information and belief, the Government has it its possession a video recording of statements allegedly made by the Defendant during transporting to court for a detention hearing in the District of New Jersey.

3. Despite repeated requests with prior defense counsel, the Defendant has been unable to view or access the contents of said recording due to technical limitations, rending the video unreviewable.

4. As the Defendant is unable to play the video and properly assess the contents of the alleged statements, the production of a written transcript of those statements is necessary to ensure the Defendant's ability to prepare an adequate defense and to meaningful challenge the admissibility and accuracy of such statements.

5. The statements are discoverable under Fed. R. Crim. P. 16 (a)(1)(B)(i) and should be transcribed and produced without further delay.

Wherefore, the Defendant respectfully requests that this Court issue and order compelling the Government to produce a complete and accurate transcript of any statements made by the Defendant during transportation to the court for a detention hearing in the District of New Jersey.

XXXIV.    Conclusion

Defendant respectfully request for the Court to hold an evidentiary hearing on several of the issues highlighted above.

April 9, 2025

/s/ _____

Oluwaseun Adekoya

Pro Se

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

United States of America,

v.

Case 1:23-cr-00491-MAD

Oluwaseun Adekoya

# DEFENDANT AFFIDAVIT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

United States of America,

v.                                              Case 1:23-cr-00491-MAD

Oluwaseun Adekoya

Affidavit of Oluwaseun Adekoya in Support of Motion to Suppress

I, Oluwaseun Adekoya being duly sworn, state as follows:

1. I am the defendant in the above-captioned case residing at 1 Towne Centre Dr. Apt 907 Cliffside Park New Jersey, 07010.

2. On December 12, 2023, law enforcement agents executed a search warrant at my residence; I had no warning and was not provided with any information indicating a connection between my residence and any alleged criminal activity.

3. After reviewing the warrant affidavit, I understand the affidavit failed to establish any specific link between my residence and a criminal conduct. There were no facts indicating that my residence contained evidence of any crime.

4. I have come to the realization that the affidavit omitted critical facts that would have shown no connection between my residence and the alleged offense. Based on this information, I believe SA Warren recklessly or intentionally omitted material facts to mislead the magistrate into finding probable cause.

5. I believe the search violated my Fourth Amendment rights due to the lack of probable cause.

I declare under penalty of perjury that the foregoing is true and correct.

April 9, 2025

/s/ _____

Oluwaseun Adekoya

SWORN TO AND SUBSCRIBED before me this day April 9, 2025

1

Sworn to before me
this 10th day of
April 2025.

Notary Public

BONNI J. DEADY
**Notary** Public, State of New York
Qualified in Albany County
Reg. No. 01DE6291472
Commission Expires October 15, 2025

2




ALBANY COUNTY
CorrectionalFacility
840 Albany Shaker RD
Albany, NY 12211

PRIORITY MAIL

US POSTAGE™ PITNEY BOWES

ZIP 12211
02 7H
0006001411    APR 11 2025

$ 010.50⁰

ATTN Judge D'Aqostino

CLERK, U.S DISTRICT COURT

James T. Foley U.S. Courthouse

445 Broadway - Room 509

Albany, New York 12207-2936



U.S. DISTRICT COURT
JOHN M. DOMURAD, CLERK

APR 21 2025

RECEIVED

OLUWASEUN. ADEWOYA
60090
Albany county Correctional Facility
840 Albany Shaker Rd
Albany, NY 12211