IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    1:23-CR-491 (MAD) |
| | ) | |
| | ) | Speedy Trial Act Exclusion: |
| **v.** | ) | 18 U.S.C. § 3161(h)(1)(D), (H) [filing of |
| | ) | motion through 30 days after motion is fully |
| | ) | submitted] |
| **OLUWASEUN ADEKOYA, a/k/a "Ace** | ) | |
| **G.," a/k/a "BRODA, a/k/a "SANTA,"** | ) | |
| **a/k/a "SANTANA," a/k/a "Sammy** | ) | |
| **LaBanco," a/k/a "Sean Maison," a/k/a** | ) | |
| **"Kiing_maison,"** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### THE GOVERNMENT'S OPPOSITION TO DEFENDANT OLUWASEUN ADEKOYA'S OMNIBUS PRETRIAL MOTIONS AND DISCOVERY MOTIONS

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.    The Motions to Dismiss the Second Superseding Indictment for Legal Deficiencies Should Be Rejected ...........................................................................................2
    A.  Legal Standard...................................................................................................2
    B.  Discussion ........................................................................................................4

II.    The Defendant's Grand Jury Claims Are Without Merit..........................................9
    A.  Legal Standard...................................................................................................9
    B.  Discussion ......................................................................................................10

III.    The Motions for Severance Should Be Denied........................................................12

IV.    The Motion to Strike Aliases and Purported Surplusage Should Be Denied ..................14

V.    Count 1 of the Second Superseding Indictment Is Not Duplicitous ..................................16

VI.    The Motion to Suppress Should Be Denied............................................................18
    A.  Relevant Background ......................................................................................18
    B.  Legal Standard.................................................................................................21
        1.  The Fourth Amendment .....................................................................21
            a.  Particularity .........................................................................21
            b.  Nexus Requirement ..............................................................22
            c.  Staleness .............................................................................22
        2.  *Franks* Hearings ...............................................................................23
        3.  The Good Faith Exception to the Exclusionary Rule .............................24
    C.  Discussion ......................................................................................................25
        1.  The Warren Affidavit Established Nexus for the Locations to Be Searched ...........................................................................................25
        2.  The Probable Cause Was Not Stale.......................................................26
        3.  The Warrants Were Particular and Not Overbroad .................................26
        4.  The Search of Phone 1B80 Was Authorized..........................................27
        5.  There Is No Basis for a Franks Hearing ................................................27
        6.  Even if the Warrants Were Not Valid, the Good Faith Exception to the Exclusionary Rule Bars Suppression .........................................28

VII.    The Motion to Compel a Bill of Particulars Should Be Denied .......................................30
    A.  Legal Standard.................................................................................................30
    B.  Discussion ......................................................................................................31

VIII.    The Defendant's "Kitchen Sink" Discovery Motions Are Meritless................................33

CONCLUSION ...................................................................................................................35

The government respectfully submits this memorandum of law in opposition to defendant Oluwaseun Adekoya's *pro se* omnibus pretrial motions (Dkt. # 329)[1] and subsequently filed discovery motions (Dkt. ## 332-33).

## INTRODUCTION

All of the defendant's motions are meritless.  Indeed, many of the arguments and factual representations advanced by the defendant—whose background is replete with state and federal fraud convictions—are frivolous, including:

- The defendant's attempts to evade trial based on his repeated incantations about what he insists the evidence will show, *see, e.g.*, Br. at Points VII, XII & XIII, even though, as this Court put it so well, "[g]enerally, there is but one means authorized by the Federal Rules of Criminal Procedure for resolving the parties' disagreement over the question whether a Defendant committed the crimes charged in the Indictment: a trial."  Decision & Order at 45, *United States v. Crist et al.*, No. 1:23-cr-160 (MAD), Dkt. # 76 (N.D.N.Y. May 30, 2024).

- The defendant's claim that the second superseding indictment must be dismissed based on his belief that hearsay evidence was improperly presented to the grand jury, *see, e.g.*, Br. at Point VIII, despite the fact that the Supreme Court has long sanctioned the use of hearsay in grand jury proceedings and there is no reason to believe that the grand jury was instructed incorrectly on this issue, *see Costello v. United States*, 350 U.S. 359, 363 (1956).

- The defendant's demand that evidence from his cell phone be suppressed based on his representation that the device was seized from him incident to arrest and searched without a warrant, *see* Br. at Point VI, even though the device was actually seized and subsequently searched pursuant to a warrant specifically authorizing the search of his person.

As explained in more detail below, the defendant's motions should be denied without a hearing or oral argument because they present no factual disputes or close questions.

---

[1] For ease of reference, the government refers to the defendant's omnibus motions brief as the "brief" or "Br." and keys its arguments to each of his point headers, though many of those point headers are repetitive.

ARGUMENT[2]

I.    **The Motions to Dismiss the Second Superseding Indictment for Legal Deficiencies Should Be Rejected**
      **(Br. Points I, II, VII, X-XV & XIX-XXIII)**

Adekoya moves to dismiss all counts of the second superseding indictment for failure to state offenses, for lack of specificity, and for lack of venue. He is wrong about everything.

A.    **Legal Standard**

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to be informed of the nature and cause of the accusation." Fed. R. Crim. P. 7(c)(1) puts this right into practice by requiring that an indictment be a "plain, concise and definite written statement of the essential facts constituting the offense charged[.]" "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Yannotti*, 541 F.3d at 127 (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)).

A defendant moving to dismiss an indictment "must meet a high standard." *United States v. Lazore*, 90 F. Supp. 2d 202, 203 (N.D.N.Y. 2000). That is because "[t]he dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)

---

[2] The government is mindful that "*pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted). Still, "[t]he right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

(internal citation and quotation marks omitted). "In considering a motion to dismiss, the court will 'examine the indictment as a whole, accept as true the facts alleged, and determine only whether the indictment is valid on its face.'" *United States v. Jergensen*, 2017 U.S. Dist. LEXIS 225315, at *7 (N.D.N.Y. June 14, 2017) (quoting *United States v. Elliott*, 363 F. Supp. 2d 439, 450 (N.D.N.Y. 2005)). Because the government need not make "a full proffer of the evidence it intends to present at trial" in an indictment, "sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso*, 143 F.3d at 776-77; *United States v. Bicoastal Corp.*, 819 F. Supp. 156, 158 (N.D.N.Y. 1993) ("It has long been held that the criminal analog to civil summary judgment motions . . . are not allowed by Fed. R. Crim. P. 12(b)") (citations omitted). This is because "authorizing district court judges to resolve dispositive fact-based evidentiary disputes on Rule 12(b) motions risks invading the inviolable function of the jury in our criminal justice system." *United States v. Sampson*, 898 F.3d 270, 281 (2d Cir. 2018) (internal quotation marks omitted). "Additionally, although a district court can 'make factual determinations in matters that do not implicate the general issue of a defendant's guilt' when assessing a Rule 12 motion, it cannot resolve 'a factual dispute that is inextricably intertwined with a defendant's potential culpability,' as that is a role reserved for the jury." *United States v. Aiyer*, 33 F.4th 97, 116 (2d Cir. 2022) (quoting *Sampson*, 898 F.3d at 281).

Furthermore, it is "well settled that in an indictment for conspiring to commit an offense—in which conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which was the object of the conspiracy." *Wong Tai v. United States*, 273 U.S. 77, 81 (1927). "The rationale is that the crime is complete whether or not the substantive offense which was its object was committed. The indictment need only put the defendants on notice that they are being charged with a conspiracy

to commit the underlying offense or . . . apprise the grand jury in essential terms of the object of the conspiracy." *United States v. Wydermyer,* 51 F.3d 319, 325 (2d Cir. 1995).

While the Second Circuit has not addressed the issue, several Circuits have held that venue need not be alleged in an indictment. *See, e.g.*, *United States v. Branan*, 457 F.2d 1062, 1065 (6th Cir. 1972); *United States v. Honneus*, 508 F.2d 566, 570 (1st Cir. 1974); *Hemphill v. United States*, 392 F.2d 45, 47 (8th Cir. 1968); *Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963). Nonetheless, district courts in the Second Circuit have articulated a "liberal standard" in which "the Government need only allege that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information, in order to satisfy its burden with regard to pleading venue." *E.g.*, *United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016) (Nathan, J.) (internal quotation marks omitted).

## B.    Discussion

The second superseding indictment is sufficiently pled as to substance and venue.

***Conspiracy to Commit Bank Fraud (Count 1) Is Sufficiently Pled.*** Under 18 U.S.C. § 1344, it is a crime to "knowingly execute[] . . . a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." A "financial institution" as used in Title 18, includes, among other entities, "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act)" and "a credit union with accounts insured by the National Credit Union Share Insurance Fund." 18 U.S.C. § 20(1), (2). Conspiracies to violate 18 U.S.C. § 1344 are crimes under 18 U.S.C. § 1349.

4

Here, the second superseding indictment tracks the statutory language of 18 U.S.C. §§ 1344 and 1349 and gives the approximate dates and locations of the charged crime. That language is all that is required at the pleading stage and ends the inquiry. *See, e.g.*, *Alfonso*, 143 F.3d at 776 (reversing dismissal for failure to state an offense because indictment "m[e]t the[] basic pleading requirements by accurately stating the elements of the offense charged and the approximate time and place of the [crime]"). The fact that the second superseding indictment goes on to provide a summary of the defendant and his co-conspirators' conduct in the manner and means section to put him on further notice is of no moment, because "[u]nless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," which is not the case here, "sufficiency of the evidence is not appropriately addressed by a Rule 12(b) motion pretrial." *Sampson*, 898 F.3d at 282 (internal quotation marks omitted). The Court can and should reject the defendant's challenges to Count 1 on this basis alone. *See, e.g.*, *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021) (affirming denial of motion to dismiss indictment that tracked statutory language for aggravated identity theft but did "not detail the specific facts of the underlying schemes or precisely *how* [defendant] and his co-defendants" committed this crime because "there is no requirement that an indictment contain such detail"); *United States v. Zarrab*, 2016 WL 6820737, at *12 (S.D.N.Y. Oct. 17, 2016) (denying motion to dismiss because indictment "clearly state[d] the elements of a conspiracy to commit bank fraud").

The defendant's scattershot attempts to undermine Count 1 ring hollow. The defendant's claim that Count 1 fails to allege that federally insured entities were defrauded, Br. at Point XXIII, misses the point as the term financial institution, the same term used in the statute, is used in the second superseding indictment. *See, e.g.*, *Alfonso*, 143 F.3d at 776. Likewise, his claim that Count 1 does not sufficiently allege materiality, Br. at Point XIV, is incorrect. The second superseding

indictment alleges that the conspiracy revolved around obtaining the victims' personal identifying information ("PII"), getting fake drivers licenses in those victims' names, and then masquerading as the victims to financial institutions to conduct and attempt to conduct fraudulent transactions in the victims' names. The fact that the defendant's co-conspirators passed themselves off as other people to effectuate these fraudulent transactions was clearly material to the victim institutions, so materiality is pled. *See United States v. Weigand*, 482 F. Supp. 3d 224, 237-38 (S.D.N.Y. 2020) (suggestion that indictment "d[id] not state a claim because it d[id] not allege that the misrepresentations were material . . . . border[ed] on the frivolous" where indictment explained nature of fraudulent conduct). Thus, had the government charged substantive bank fraud, it would not have been required to plead materiality. But the government charged conspiracy to commit bank fraud, and it is settled law that when charging conspiracy to commit a substantive offense, the government need not plead the elements of the underlying offense. *See Wong Tai*, 273 U.S. at 81; *Wydermyer,* 51 F.3d at 325.

**Money Laundering Conspiracy (Count 2) Is Sufficiently Pled.** Count 2 charges Adekoya and Bassie with a conspiracy to commit promotional money laundering, concealment money laundering, and transactions in criminally derived property, all which are premised on the defendants' use of the proceeds of their bank fraud. 18 U.S.C. § 1956(h) makes it a crime to conspire to violate a provision of 18 U.S.C. §§ 1956, 1957. The relevant substantive offense provisions provide:

> [K]nowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity
>
>> with the intent to promote the carrying on of specified unlawful activity; [or] knowing that the transaction is designed in whole or in part—to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]

18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i).

[K]nowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]

18 U.S.C. § 1957(a).

Here, the second superseding indictment not only tracks the elements of the conspiracy it charges, but it also tracks the statutory provisions of the substantive offenses, rendering it sufficient to withstand the defendant's motions to dismiss. *See, e.g.*, *Wedd*, 993 F.3d at 121. The only argument that the defendant advances that is not keyed to his premature claims about whether the government has sufficient evidence to prove Count 2 is his complaint that the second superseding indictment does not allege an overt act in furtherance of the charged conspiracy. Br. at 79-80. True, but as the defendant's own brief acknowledges, no overt act is required by 18 U.S.C. § 1956(h). Br. at 80 (citing *Whitfield v. United States*, 543 U.S. 209, 214 (2005)). So that argument founders, too.

***Aggravated Identity Theft (Counts 3-11) Are Sufficiently Pled.*** The defendant next tries to sink the aggravated identity theft charges, claiming that they are not specific enough and that there is a "lack of evidence" about how he violated the statute. *See, e.g.*, Br. at 49-50, 52, 57-61, 72-74. Again, to the extent that the defendant is actually attacking the second superseding indictment's allegations and not what he thinks the government will be able to prove at trial, he cannot obtain dismissal because the second superseding indictment tracks 18 U.S.C. § 1028A. *See Wedd*, 993 F.3d at 121. The defendant's arguments here are frivolous. For instance, he complains that the second superseding indictment "fails to[] [i]dentify the specific means of identification used. Br. at 52. Not so: it explicitly charges the use of the *names* of nine separate victims. A name is indeed a means of identification under the statute. *See* 18 U.S.C. § 1028(d)(7)(A)

(defining "means of identification" to include "any[] name."). Likewise, Adekoya demands dismissal because he thinks that the second superseding indictment fails to allege that the stolen means of identification belonged to another person, Br. at 72-73, when the charge quite literally says that each means of identification was from "another person." The aggravated identity theft counts are properly pled.

**Venue Is Properly Alleged.** The defendant devotes pages and pages to his theories of venue and belief that the evidence will show the government brought this case in the wrong district. None of these claims holds water. To the extent that venue even needs to be alleged in an indictment, *see, e.g.*, *Branan*, 457 F.2d at 1065, the allegations in each count of the second superseding indictment concerning venue easily meet the higher but still "liberal" standard for pleading employed by district courts in this Circuit, *see, e.g.*, *Murgio*, 209 F. Supp. 3d at 721 (allegation that defendant "accepted bribes 'in the Southern District of New York and elsewhere'" sufficient); *United States v. Posner*, 2022 WL 446012, at *2 (S.D.N.Y. Feb. 14, 2022) (rejecting motion to dismiss premised on claim that acts were not reasonably foreseeable to defendant because such a question is "properly suited to a post-trial motion . . . rather than a motion to dismiss . . . ."). While the defendant correctly points out that certain of the aggravated theft counts involve transactions that were outside of this district, *see, e.g.*, Br. at 3, it does not matter.[3] "[V]enue is proper in a prosecution under 18 U.S.C. § 1028A in any district where the predicate felony offense was committed even if the means of identification of another person was not

_____

[3] Curiously, Adekoya also moves to strike the names and locations of the credit unions subject of the aggravated identity theft counts as surplusage. Br. at 24-25. It is unclear how in one breath he can say that this information is irrelevant to this prosecution and in the next breath say it supports his claims that venue is not proper. In reality, neither of his arguments is supported.

transferred, possessed, or used in that district." *United States v. Magassouba*, 619 F.3d 202, 204 (2d Cir. 2010). In sum, Adekoya's venue claims are meritless.[4]

## II.    The Defendant's Grand Jury Claims Are Without Merit
       (Br. Points III & VIII)

The defendant moves to inspect grand jury transcripts based on unsupported claims of misconduct and goes on to advance a meritless dismissal demand based on his outlandish claims.

### A.    Legal Standard

A court may authorize disclosure of grand jury testimony "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Fed. R. Crim. P. 6(e)(3)(E)(ii). To justify such disclosure, a defendant must satisfy a heavy burden of showing a "compelling necessity" that outweighs the strong public policy in support of the "indispensable secrecy of grand jury proceedings." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681-82 (1958). And because "a presumption of regularity

---

[4] Adekoya makes numerous claims that the acts in furtherance of the charged conspiracies were not reasonably foreseeable to him. *See, e.g.*, Br. at 37. While those quarrels are not an appropriate subject at the pleading stage, *see Posner*, 2022 WL 446012, at *2, he is of course free to argue them to a jury. That said, the government's proof will include evidence that, among other things, Adekoya himself placed dozens of calls to credit unions in this district (including ones with 518 area codes, 315 area codes, and 607 area codes, and including a call in which he specifically references a branch "in Schenectady") and directed the fraudulent activities of certain co-conspirators in this district. The fact that the defendant personally committed acts in this district means that foreseeability has no place in the analysis. *See United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) ("[V]enue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue *or* (2) it is foreseeable that such an act would occur in the district of venue") (emphasis added). But even if that were not the law, the defendant's claims about the foreseeability of his nationwide bank fraud conspiracy touching this district would not hold water because the Second Circuit has recognized that where an offense has a broad geographic reach, like crimes charged here, the foreseeability of any given venue expands. *See United States v. Rowe*, 414 F.3d 271, 279 (2d Cir. 2005) (venue proper in case where defendant "must have known or contemplated that the advertisement would be transmitted by computer to anyone to whole world over who logged into the site").

9

attaches to grand jury proceedings," disclosure is not permitted "without concrete allegations of Government misconduct." *United States v. Leung*, 40 F.3d 577, 581-82 (2d Cir. 1994).

"To obtain the dismissal of an indictment for prosecutorial misconduct before the grand jury, the defendant must show that he was prejudiced by such misconduct." *United States v. Sullivan*, 118 F.4th 170, 210 (2d Cir. 2024). "[T]he mere fact that evidence presented to the grand jury was unreliable, misleading, or inaccurate, is not sufficient to require dismissal of an indictment." *United States v. Lombardozzi*, 491 F.3d 61, 79 (2d Cir. 2007). Dismissal of the indictment is especially unwarranted when "[t]he particular claims of impropriety before the grand jury . . . concern the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence[, or] error in explaining the law"— improprieties that could be "cured in the trial before the petit jury." *Lopez v. Riley*, 865 F.2d 30, 33 (2d Cir. 1989). In sum, dismissal due to defects in grand jury proceedings is "the most drastic remedy, and thus is rarely used." *United States v. Dyman*, 739 F.2d 762, 768 (2d Cir. 1984)

## B.    Discussion

The defendant offers no reason to invade the secrecy of an ongoing grand jury investigation into his and his co-conspirators' fraud. The defendant seeks to review the grand jury minutes based on his baseless allegations that the government (1) inappropriately presented hearsay evidence to the grand jury; (2) improperly instructed the grand jury by giving purportedly "misleading" instructions about venue and the charged conspiracies' scope; and (3) committed prosecutorial misconduct with regard to the foregoing items. He is wrong. Hearsay evidence, as the defendant admits, is allowed in grand jury proceedings subject to a limiting instruction that the government represents was given. *See Costello*, 350 U.S. at 363. As explained above, the defendant's positions on venue are incorrect, so any claims he makes about a lack of venue based

on the transactions subject of certain aggravated identity theft counts taking place outside of this district are equally flawed. Simply put, the defendant's "speculations about possible irregularities in the grand jury investigation" are "insufficient" to obtain production of grand jury materials. *Leung* 40 F.3d at 582 (affirming denial of motion for production of grand jury minutes); *see United States v. Bruno*, 159 F. Supp. 3d 311, 322-23 (E.D.N.Y. 2016) (denying motion to review grand jury transcript because defendant's claims of prosecutorial misconduct were "speculative" and did not "suggest any inference of prosecutorial misconduct sufficient to provide support for opening up a sealed grand jury transcript"); *United States v. Ayeki*, 289 F. Supp. 2d 183, 187 (D. Conn. 2003) (denying motion to inspect transcripts due to defendant's failure to provide factual support for claims that hearsay was improperly presented to grand jury); *United States v. Forde*, 740 F. Supp. 2d 406, 413-14 (S.D.N.Y. 2010) (denying motion because "[m]ere speculation" that the government "may have improperly instructed the grand jury . . . falls far short of the showing to overcome the presumption of secrecy.").

The defendant's bid to dismiss the second superseding indictment based on his claims of misconduct is likewise specious. After claiming that he needs the grand jury transcripts to see if any misconduct occurred, *see* Br. at 5, the defendant goes on to demand dismissal based on unsupported claims that the government committed misconduct in the grand jury by: (1) eliciting hearsay evidence without disclosure; (2) presenting "fabricated evidence": (3) failing to properly instruct the grand jury; and (4) using "illegally seized evidence." Br. at 39-40. No misconduct occurred here. But even if the Court were to indulge the defendant's cynical claims, he would not be entitled to dismissal. First, as to hearsay and supposedly illegally seized evidence, "[i]t is well settled that a properly-returned indictment cannot be challenged on the basis that inadequate or incompetent evidence was presented to the grand jury." *United States v. Taher*, 2020 WL 830426,

at *3 (W.D.N.Y. Feb. 20, 2020).  Second, the defendant's conjecture about deficiencies in the grand jury instructions do not even entitle him to review of the grand jury transcripts, let alone the windfall remedy of dismissal.  *See, e.g.*, *Forde*, 740 F. Supp. 2d at 413-14; *United States v. Smith*, 105 F. Supp. 3d 255, 261-62 (W.D.N.Y. 2015).  Lastly, the defendant's bald (and false) allegation about fabricated evidence (which he tellingly does not swear to in the affidavit submitted with his motions) is insufficient for dismissal.  *See, e.g.*, *United States v. Piedrahita*, 791 F. Supp. 418, 420 (S.D.N.Y. 1992) (defendant's failure to provide "specific, definite and detailed factual assertions" about misconduct "preclude[d] dismissal of a[] indictment . . . .").

### III.    The Motions for Severance Should Be Denied
(Br. Points XVI, XVII & XVIII)

The defendant moves for severance from his remaining co-defendants, Kanni Bassie and Jermon Brooks.  Fed. R. Crim. P. 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  "The mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense."  *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) (citation omitted).  The "established rule" is that "a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b)."  *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988).  It is similarly proper to join separate conspiracies if there is a common purpose and "an overlap of participants and acts."  *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989).

Even if joinder is proper under Rule 8, a court may grant severance pursuant to Rule 14(a). Rule 14(a) provides that where joinder of defendants for trial "appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials[] or provide any other relief that

justice requires." Still, "[s]ince there is a preference, in the federal system, for the joint trial of defendants indicted together, the district court should grant a severance motion only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). A defendant seeking severance has a "heavy burden" in which he "must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). And where "the crime charged involves a common scheme or plan, a joint trial of the participants is proper, absent a clear showing of prejudice." *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979).

The mere fact that two defendants advance defenses that are adversarial to one another "does not, alone, require trials to be severed . . . Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since conspirators raise many different and conflicting defenses." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1992). For defenses to be considered "mutually antagonistic," they "must conflict to the point of being so irreconcilable as to be mutually exclusive," meaning that "in order to accept the defense of one defendant, the jury must of necessity convict a second defendant." *Id.* at 484. But even "mutually antagonistic defenses are not prejudicial per se," and severance is not required when defendants adopt antagonistic defenses "even if prejudice is shown." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993).

Here, the defendant's arguments boil down to a claim that he, the alleged leader of the conspiracies at issue, actually did not have much or any contact with his remaining co-defendants. But that does not entitle him to severance, because "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate

13

trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (affirming denial of motion to sever) (internal quotation marks omitted).  Indeed, it is well-settled that "even joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."  *Id.*  As the Second Circuit has explained, "not only are joint trials constitutionally permissible when they place defendants who are . . . marginally involved alongside those heavily involved; they are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy."  *United States v. Delgado*, 972 F.3d 63, 81 (2d Cir. 2020) (defendant's "less prominent role" in conspiracy did not merit severance) (internal quotation marks omitted).  Nor does Adekoya's suggestion that he and Bassie will try to point the finger at each other require severance.  *See United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) (affirming denial of motion to sever because "[t]he mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance.").  In sum, there is no basis for severance.[5]

## IV.    The Motion to Strike Aliases and Purported Surplusage Should Be Denied (Br. Point V)

Under Fed. R. Crim. P. 7(d), a defendant may move to strike surplusage from their indictment.  "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial."  *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (internal quotation marks and citation omitted).  Accordingly, so long as the "evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken."  *Id.* (internal

---

[5] Adekoya also says that the Court should dismiss unspecified counts of the second superseding indictment for "improper joinder."  Br. at Point XVI.  That is not right, as "[s]everance, rather than dismissal of the improperly drafted indictment, is the proper remedy for . . . misjoinder."  *United States v. Bradford*, 487 F. Supp. 1093, 1097 n.5 (D. Conn. 1980).

quotation marks and citation omitted). This standard "is an 'exacting' one," and "only rarely is alleged surplusage stricken from an indictment." *United States v. Smith*, 985 F.Supp.2d 547, 610 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

The defendant advances erroneous demands to strike: (1) the allegation that the bank fraud conspiracy involved conduct throughout the United States; (2) the allegation that the bank fraud conspiracy caused a loss of more than $1.5 million; and (3) references to the locations and names of the financial institutions subject of the aggravated identity theft counts. The Court should reject the defendant's attempt to rewrite the grand jury's allegations. First, the second superseding indictment properly includes refences to a nationwide conspiracy and corresponding loss amount because the government intends to prove that the defendant led a nationwide conspiracy. *See United States v. Bin Laden*, 91 F. Supp. 2d 600, 621-22 (S.D.N.Y. 2000) (denying motion to strike because the government "is permitted to prove [the defendant's] participation [in several conspiracies], and the existence of the alleged conspiracies, by demonstrating that [he] committed certain acts which support the inference that he agreed with others to attempt to achieve the criminal objectives set forth in the Indictment"). Second, the defendant's demand to strike the names and locations of the financial institutions where the identity thefts subject of Counts 3 through 11 took place is nonsensical. The locations and names these establishments are not prejudicial and would obviously be part of the government's proof, so the defendant's claim fails. *See United States v. Brown*, 2009 WL 425919, at *3 (E.D.N.Y. Feb. 19, 2009) (denying motion to strike name of place where alleged crime took place because it was relevant and not prejudicial).

Lastly, the defendant's demand to strike the "Ace G," "Sammy LaBanco," "Sean Maison," and "Kiing_maison" aliases is similarly flawed. As the defendant appears to acknowledge, *see, e.g.*, Br. at 7-8, these aliases were used by the sender of text messages that the government and its

witnesses, including parties to the communications, will attribute to the defendant at trial, rendering them properly included in the second superseding indictment, *see Porrazzo v. United States*, 757 F. Supp. 3d 241, 259 (N.D.N.Y. 2024) (denying motion to strike alias because it "was fully relevant to proving his ownership of the laptops containing child pornography" at issue).[6]

## V.    Count 1 of the Second Superseding Indictment Is Not Duplicitous (Br. Point IX)

The defendant argues that Count 1 must be dismissed because it is impermissibly duplicitious. He is mistaken. "An indictment is impermissibly duplicitous where: (1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be a separate count for each offense, and (2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (internal quotation marks omitted). Acts that "could be characterized as part of a single continuing scheme" may be charged in a single count without being duplicitous. *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013). In fact "it has been established for at least seventy years that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects." *Id.* (internal quotation marks and alterations omitted).

At bottom, the defendant's complaints are a misunderstanding of these principles and the law as it relates to conspiracy. The defendant is indicted as the ringleader of a hub and spoke conspiracy. In such conspiracies, one or more individuals act as a central point while other

---

[6] For example, referring to coconspirator Heather Gaedt, who passed away, Adekoya said in a recorded call: "The Sammy s**t came from this f**king, the b***ch that died. I wish I could wake her up so I could kill her again."

Adekoya does not move to strike the aliases "SANTA," "BRODA," and "SANTANA" from the second superseding indictment. Regardless, they are proper for the same reasons as the ones subject of the motion to strike are proper.

coconspirators act as "spokes" by virtue of their agreements with the central actor. *See United States v. Ulbricht*, 31 F. Supp. 3d 540, 554 (S.D.N.Y. 2014) (citing *Kotteakos v. United States*, 328 U.S. 750, 754-55 (1946)). To establish that there was a single conspiracy, and not a group of smaller conspiracies, the government must establish that the members of the spokes "knew or *had reason to know* of the existence, but not necessarily the identity, of one or more of the other spoke participants in the wheel conspiracy." *United States v. Manarite,* 448 F.2d 583, 589 (2d Cir. 1971) (emphasis supplied). The government will do this at trial through witnesses and exhibits, including recorded calls obtained this week between the defendant and coconspirator Kani Bassie in which the defendant admits that: (1) he worked with Daniyan and got caught because Daniyan did not delete his Telegram messages with the defendant; (2) he worked with Bassie; (3) he worked with Heather Gaedt[7]; and (4) Bassie was aware of Daniyan and Gaedt.

Similarly misplaced is the defendant's suggestion that the geographic scope of the conspiracy's activities and its changing participants means that the government has actually charged multiple conspiracies as one. Not so. That there were "[c]hanges in membership, differences in time periods, and/or shifting emphases in the location of operations do not necessarily require a finding of more than one conspiracy." *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006); *see United States v. Chang*, 2024 WL 2817494, at *18 (E.D.N.Y. May 31, 2024) (rejecting claim that indictment was duplicitous).

In any event, "[w]hether the government has proven the existence of the conspiracy charged in the indictment and each defendant's membership in it, or instead, has proven several independent conspiracies *is a question of fact for a properly instructed jury*." *United States v.*

---

[7] The defendant also tells Bassie that Gaedt overdosed and it is "a good thing she died." He goes on, "F**k that b**ch man[,] I hope you burn in hell man."

*Johnson,* 56 F.3d 347, 350 (2d Cir. 1995) (emphasis supplied).  The defendant's motion should therefore be denied.

## VI.    The Motion to Suppress Should Denied
(Br. Points IV)

### A.    Relevant Background

On December 5, 2023, U.S. Magistrate Judge Jose R. Almonte of the U.S. District Court for the District of New Jersey issued search and seizure warrants for: (1) the defendant's Cliffside Park, New Jersey residence (the "Premises"); (2) a 2016 black Mercedes-Benz C300 bearing NJ Registration Plate ******/VIN ***************** (the "C300"); (3) a 2021 white Mercedes-Benz GLE bearing NJ registration plate ******/VIN ***************** (the "GLE"); and (4) the person of Oluwaseun Adekoya.  *See* Ex. 1.   Each of these search and seizure warrants was based on a December 5, 2023 application and affidavit submitted by FBI Special Agent Spenser Warrant (the "Warren Affidavit").   *See* Ex. 2.  The target offenses in the Warren Affidavit were violations of 18 U.S.C. §§ 1349 and 1344 (conspiracy to commit bank fraud) and 18 U.S.C. § 1028A (aggravated identity theft).  *Id.*

The Warren Affidavit, which totals 115 paragraphs, details the scheme at issue in the original indictment charging the defendant and numerous coconspirators, which was handed up the same day the New Jersey search and seizure warrants were obtained, December 5, 2023.  *See* Dkt. # 84.  That scheme, which charged crimes known to the FBI at the time, primarily targeted a shared branching network of credit unions.  *Id.*

The Warren Affidavit first explains how the FBI investigation into the target offenses began in May 2022 following the arrest of coconspirators David Daniyan, Victor Barriera, and Gaysha Kennedy by the Cohoes Police Department after they traveled to the Northern District of New York to commit shared branching fraud in furtherance of the conspiracy.  Warren Aff., ¶¶ 13-

23.  Shortly after that arrest, the FBI obtained a federal search warrant authorizing the search of six cell phones seized by the Cohoes Police Department from Barriera and the vehicle in which Daniyan, Barriera, and Kennedy had traveled to commit the crimes.  *Id.* ¶ 24.  Each of those phones had been used to communicate about the target offenses and many had been used to circulate personal identifying information (PII) of victims.  *Id.* ¶¶ 29-44.  The affidavit also noted that one phone, logged as 1B7, was severely damaged and a full extraction was therefore not feasible.  *Id.* ¶ 28(f).

The Warren affidavit went on to discuss the October 2022 arrest of coconspirators Daniyan, Akeem Balogun, and Lesley Lucchese in Pensacola, Florida after they traveled had there to commit additional shared branching fraud in furtherance of the conspiracy and the subsequent search pursuant to a federal search warrant of five cell phones seized from the conspirators' vehicle.  *Id.* ¶¶ 45-71.  Of particular relevance, the affidavit discussed how phone 1B22, seized from the conspirators' vehicle in Pensacola, was used by Daniyan to exchange over 10,000 messages over the encrypted messaging platform Telegram with Adekoya "discussing in intimate detail the conspiracy at hand."  *Id.* ¶ 69.  In these messages, Adekoya and Daniyan "collaborated to identify victim credit unions, identify victim customers who banked at those credit unions, recruit bank runners and drivers, order fictitious government identification cards matching victim PII with bank runner[s'] photographs, telephone call credit unions to ascertain Shared Branching restrictions, telephone call credit unions to impersonate victim account holders for the purposes of monitoring account balances and transferring money between accounts, plan travel to credit unions, fraudulently  withdraw cash, and divide up the proceeds amongst the conspirators."  *Id.*   SA Warren then gave examples of these types of communications, establishing that the defendant was a co-leader of the conspiracy with Daniyan.  *Id.* ¶¶ 70, 73-77.

The Warren Affidavit explained that while most of the electronic evidence seized by the FBI spanned from December 2021 to October 2022 (the date of the last seizure of electronic devices), the FBI had developed evidence that the conspiracy was ongoing through at least September 2023. For example, coconspirator Danielle Cappetti committed shared branching fraud in the Northern District of New York in February 2023, and Adekoya drove coconspirator Heather Gaedt to credit unions in Alabama and Georgia to commit bank fraud in September 2023. *Id.* ¶¶ 78-85. The Warren Affidavit detailed numerous Zelle transfers between the defendant's spouse and Daniyan's spouse in 2023 that were similar in nature to the peer-to-peer transfers that had corresponded with communications obtained by the FBI from phone 1B22 about moving fraud proceeds in that manner in 2022. *Id.* One of these was a transfer of $1,000 from the defendant's spouse to Daniyan's spouse in March 2023, which was used to pay coconspirator Jerjuan Joyner $1,000 approximately one week before he drove Cappetti to this district to commit bank fraud. *Id.*

In short, the Warren Affidavit detailed how the conspirators used multiple cellular devices to communicate about the conspiracy and that Adekoya was a ringleader of the conspiracy who utilized encrypted messaging applications to orchestrate the fraud conspiracy. The Warren Affidavit also explained how Adekoya lived at the Premises and operated both the C300 and the GLE. *Id.* ¶¶ 86-100. This included evidence, as Adekoya now notes, that he received a package from the conspiracy's primary supplier of fake driver's licenses at the Premises in early November 2023. *Id.* ¶ 89.

Attachment A of each of the Premises Warrant, the C300 Warrant, the GLE Warrant, and the Adekoya Warrant described the property or person to be searched and Attachment B described the specific items to be seized. Each of the warrants authorized the government to seize items and records falling within 11 categories, itemized into paragraphs, including records related to the

ownership or use of the Premises, C300, and GLE, evidence concerning aliases or identities used by Adekoya, communications with coconspirators, PII of individuals other than Adekoya and his spouse, credit union and bank records and account numbers, records related to fraudulent banking transactions in customers' names, financial and wealth information for Adekoya, records related to the acquisition or purchase of PII and fake identifications, evidence of the disposition of fraud proceeds, records and communications related to storage of items, and photographs and communications related to the crimes under investigation. *See* Premises Warrant, C300 Warrant, GLE Warrant, Adekoya Warrant, Attachment B, ¶ 1(a)-(k). The warrants authorized the seizure and subsequent forensic search of electronic devices reasonably believed to be used by Adekoya, and specifically excluded the seizure of devices utilized solely by Adekoya's spouse. *Id.* ¶¶ 2-8.

**B.    Legal Standard**

**1.    The Fourth Amendment**

**a.    Particularity**

Under the Fourth Amendment, "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement "guards against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990). "To be sufficiently particular under the Fourth Amendment," a warrant must: (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (internal quotation marks omitted), *abrogated on other grounds*, *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

"[A] search warrant does not necessarily lack particularity simply because it is broad." *Ulbricht*, 858 F.3d at 100. When, for example, "the criminal activity pervades [an] entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements." *U.S. Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir. 1989). Therefore, "in many cases, the volume of records properly subject to seizure because of their evidentiary value may be vast." *Ulbricht*, 858 F.3d at 100.

### b. Nexus Requirement

"To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). Thus, there must be "a fair probability that the premises [to be searched] will yield the objects specified in the search warrant." *Id.* at 346. Even in situations where there is a lack of evidence directly connecting a residence to illegal activity, information that the illegal activity perpetrated by the defendant is large-scale in nature can support a probable cause finding to search the defendant's residence. *See United States v. Fama*, 758 F.2d 834, 837-38 (2d Cir. 1985); *see also United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (nexus "may be based on reasonable inference from the facts presented based on common sense and experience"); *United States v. Thomas*, 989 F.2d 1252 (D.C. Cir. 1993) (probable cause to search defendant's residence based upon premise that defendant was involved in narcotic transaction and government agent stated that in his experience drug traffickers maintain evidence of their illegal activities in their homes).

### c. Staleness

When evaluating the staleness of information presented in support of a search warrant, the age of the facts and the nature of the unlawful conduct alleged are two critical factors to consider.

*United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir.1998). "[W]hen the supporting facts present a picture of continuing conduct or an ongoing activity, . . . the passage of time between the last described act and the presentation of evidence becomes less significant." *Singh*, 390 F.3d at 181 (internal quotation marks omitted). The passage of time is not controlling, but is one factor to consider, along with the length of criminal activity. *Id.* at 181-82 (probable cause supported search warrant for records related to health care fraud scheme where more than twenty months passed between last described act and the search warrant).

### 2.    *Franks* Hearings

Although "a search or seizure pursuant to a warrant is presumed valid," a defendant may "[i]n certain circumstances," request an evidentiary hearing to "challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *see Franks v. Delaware*, 438 U.S. 154` (1978). "To obtain a *Franks* hearing on a motion to suppress on the basis of alleged misstatements or omissions in a warrant affidavit, a defendant must make a *substantial preliminary showing* that (1) there were intentional misrepresentations or omissions in the warrant affidavit, or, in other words 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth'; and (2) those misrepresentations or omissions were material, or 'necessary to the issuing judge's probable cause finding.'" *United States v. Nejad*, 436 F. Supp. 3d 707, 718-719 (S.D.N.Y. 2020) (quoting *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (emphasis supplied)).

In light of the "presumption of validity with respect to the affidavit supporting a search warrant," *Franks*, 438 U.S. at 171, "[h]earings under *Franks* are not freely granted." *United States v. Mandell*, 710 F. Supp. 2d 368, 372 (S.D.N.Y. 2010). "[T]he reviewing court must be presented

with credible and probative evidence" that a misstatement or omission "in a [warrant] application was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.' " *Rajaratnam*, 719 F.3d at 154 (*quoting Awadallah*, 349 F.3d at 68). The defendant's burden is a "heavy one." *United States v. Sandalo*, 70 F.4th 77, 85-86 (2d Cir. 2023) (collecting cases). In the case of an omission, recklessness may be inferred "where the omitted information was 'clearly critical' to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991). It is not sufficient, however, for the movant to show that "a reasonable person would have included the omitted information." *Rajaratnam*, 719 F.3d at 154. "[T]he inference is particularly inappropriate where the government comes forward with evidence indicating that the omission resulted from nothing more than negligence, or that the omission was the result of a considered and reasonable judgment that the information was not necessary to the [warrant] application." *Id.* at 155. "If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a Franks hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

### 3.    The Good Faith Exception to the Exclusionary Rule

"[S]uppression is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 137 (2009). Indeed, even when a search warrant is constitutionally defective, "[s]uppression of evidence . . . has always been [the] last resort, not [the] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Under the good faith exception to the exclusionary rule, evidence seized pursuant to a search warrant will be admissible even if the warrant lacks probable cause or is subsequently found defective if the executing officers relied upon it in "objective good faith." *United States v. Leon*, 468 U.S. 897, 920-24 (1984). In

determining whether to apply the good faith exception, courts examine "whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *United States v. Rosa*, 626 F.3d 56, 64 (2d. Cir. 2010) (internal quotations and citations omitted). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Further, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. Thus, suppression is not warranted where agents rely in good faith on a warrant that lacks particularity and "their actions bear none of the hallmarks of a general search." *Rosa*, 626 F.3d at 66.

### C. Discussion

As set forth below, Adekoya's effort to suppress evidence seized from the New Jersey search warrants fails on all levels.

### 1. The Warren Affidavit Established Nexus for the Locations to Be Searched

The Warren Affidavit amply established a nexus between the crimes under investigation and Adekoya's person, residence, and the vehicles and cellular devices that were searched. It described a sweeping nationwide conspiracy, led by Adekoya and Daniyan, to steal identities and use them to impersonate identity-theft victims and defraud financial institutions, which had netted over $900,000 in a period of nearly two years, with acts committed by Adekoya as recently as September 2023. It further noted that a TD Bank account in the name of Adekoya's spouse, which was used by Adekoya to deposit what appeared to be bank fraud proceeds while driving the C300 and the GLE, was registered to the residence. Warren Affidavit ¶¶ 91, 95, 100, 101. SA Warren also explained how Adekoya received a Fed Ex package at the Premises from a supplier of fake

driver's licenses on November 3, 2023. *Id.* ¶ 89. SA Warren said that in his training and experience, the items sought by the search warrants were likely to be found in Adekoya's residence and in his vehicles. *Id.* ¶¶ 101-03. The affidavit described the search of 11 cell phones previously seized from vehicles associated with other members of the conspiracy, one of which contained over 10,000 encrypted communications with Adekoya. The affidavit set forth evidence that Adekoya had called credit unions and impersonated victims to obtain account balances and move money in victims' accounts in furtherance of the conspiracy. *Id.* ¶¶ 74-76.

Moreover, the warrants did not seek items like drugs or contraband, but rather financial records and electronic devices that common sense dictates will be found in one's residence and in their vehicles and in electronic devices likely to be found on their person, in their residence, and in their vehicles. *See Singh*, 390 F.3d at 182; *see also United States v. Doyle*, 650 F.3d 460, 471 (4th Cir. 2011) ("the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence"). Accordingly, there was sufficient nexus articulated in the Warren Affidavit.

### 2. The Probable Cause Was Not Stale

Adekoya's conclusory assertion that the warrants were based on stale evidence, Br. at 16, is dead on arrival. As discussed above, the Warren Affidavit set forth probable cause that Adekoya controlled a nearly two-year nationwide fraud conspiracy and committed acts in furtherance of the conspiracy as recently as three months before the warrants were obtained. The information set forth in the Warren Affidavit was nowhere near stale. *See Singh*, 390 F.3d at 181.

### 3. The Warrants Were Particular and Not Overbroad

The warrants were also sufficiently particularized. Although they sought a broad array of items and information, they were based on an affidavit that articulated probable cause to believe

that such information would be likely to contain evidence, fruits, or instrumentalities of the crimes under investigation—and that it was likely to be found in the locations to be searched. As such, they are constitutionally valid. *See United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990) (search warrants authorizing the examination of a large amount of documents in a suspect's possession do not offend the Fourth Amendment—rather, they simply "reflect the reality that few people keep documents of their criminal transactions in a folder marked 'drug records'").

### 4.    The Search of Phone 1B80 Was Authorized

The most frivolous of Adekoya's motion to suppress claims is his assertion that the search of Phone 1B80 was conducted without a search warrant. Br. at 20-22. In Adekoya's claim that this phone was seized from his person incident to arrest, he tellingly fails to disclose the warrant issued by Magistrate Judge Almonte that authorized a search of Adekoya's person and the seizure and subsequent forensic review of any cell phones found on him. *See* Ex. 1 at Attachment A-4. Plainly, the search of the phone was authorized and lawful pursuant to that warrant.

### 5.    There Is No Basis for a *Franks* Hearing

Adekoya's passing demand for a *Frank*s hearing, Br. at 16, should not even leave the gate for one simple, dispositive reason: it fails to meet the "substantial preliminary showing" necessary for such a hearing. *Franks*, 438 U.S. at 156, 170. Adekoya's demand is conclusory and includes no offer of proof, such as "[a]ffidavits or sworn or otherwise reliable statements of witnesses," required to meet this heavy burden. *Id.* at 171.

Rather, Adekoya asserts, without a sworn affidavit, that the Warren Affidavit omitted material information, such as the facts that (1) Adekoya utilized multiple encrypted accounts to communicate with Daniyan, Br. at 12; (2) two phone numbers Adekoya used to call credit unions were registered under a different name, Br. at 13; and (3) the Zelle transactions SA Warren chose

to use as examples of transfers between Adekoya's partner and Daniyan's partner were only discussed on one of the numerous Telegram threads they used, *id.* These claims miss the mark.

First, as stated in the Warren Affidavit, "[the] affidavit [was] intended to show merely that there is sufficient probable cause for the requested warrant[s] and [did] not set forth all of [SA Warren's] knowledge about this matter." *Id.* ¶ 2. Second, the facts that Adekoya faults SA Warren for omitting would have only *strengthened* the probable cause to search for and seize all electronic devices used by Adekoya. That Adekoya used multiple accounts to communicate with Daniyan, and that he registered phones he used to call credit unions under aliases, only make the applied-for warrants more compelling, not less so. Similarly, Adekoya fails to inform the Court that he and Daniyan did in fact discuss sending Zelle payments to each other through their partners on the other Telegram threads contained in Phone 1B22 *and* that these communications were followed up by Zelle transfers as they had discussed. In the interest of brevity, the Warren Affidavit just did not provide specific examples.

### 6.   Even if the Warrants Were Not Valid, the Good Faith Exception to the Exclusionary Rule Bars Suppression

Even if the Court finds that any of the warrants is insufficient under the Fourth Amendment (and it should not), none of the evidence seized should be suppressed under the good faith exception to the exclusionary rule because the searching officers relied on each warrant in objective good faith. This is not a case in which any problem with particularization or probable cause to search and seize would have been apparent to a reasonable agent. Thus, the drastic remedy of suppression would not fulfill the deterrent goals that suppression is meant to advance. *See Herring*, 555 U.S. at 144; *Rosa*, 626 F.3d at 64, 66.

Moreover, even if the warrants had been defective (and they were not), none of the factors indicating bad faith exists here. Adekoya does not suggest that Judge Almonte abandoned his

judicial role or was misled by the case agent.  *See United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011).  Nor can it be said that the 115-paragraph Warren Affidavit was "so lacking in indicia of probable cause as to render reliance upon it unreasonable." *Id.*[8]  Additionally, none of the warrants comes close to being "so facially deficient that reliance upon it [was] unreasonable." *Id.*; *cf.*, *United States v. Levy*, 2013 WL 664712, at *10 (S.D.N.Y. Feb. 25, 2013) (finding that good faith exception applied and noting that "[g]iven the nature of the complex financial crimes and conspiracy alleged, executing officers would reasonably expect to find fairly broad categories of financial documents to be seized.").

Finally, even if the Court finds that suppression is warranted (and it should not), suppression should be tailored to only those items deemed outside the scope of the subject warrants.  Wholesale suppression is required only when government agents "flagrantly disregard the terms of a warrant." *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (internal quotation omitted).  This flagrant disregard can only be found where, unlike here, agents (1) "effect a widespread seizure of items that were not within the scope of the warrant," and (2) "do not act in good faith." *Id.*  Indeed, as discussed above, the searches were not a "widespread seizure of items not within the scope of the warrant[s]."  Nor did the agents act in bad faith.  But if any evidence were to be suppressed, only that evidence not supported by probable cause or the warrant should be subject to that order.  *See United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988).

In sum, Adekoya's motion to suppress should be denied without a hearing.[9]

---

[8] Although the facial validity of a warrant must be assessed independent of an unattached affidavit, unincorporated affidavits are "still relevant to [a court's] determination of whether the officers acted in good faith[.]" *Rosa*, 626 F.3d at 64.

[9] An evidentiary hearing is not required where, as here, "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Watson*, 404 F.3d 163,

## VII.    The Motion to Compel a Bill of Particulars Should Be Denied (Br. Point VI)

The defendant's motion for a bill of particulars is unwarranted and belied by the facts and circumstances of this case and the defendant's repeated assertions that he has been ready for trial since at least August 2024.

### A.    Legal Standard

A district court may, under Fed. R. Crim. P. 7(f), direct the government to file a bill of particulars to supplement the content of the indictment such that the defendant may plead the bar of double jeopardy, avoid unfair surprise at trial, or otherwise prepare adequately for his defense. *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991). But it is settled law that the government "need not, when charging a conspiracy, set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy." *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975). Courts are clear that a bill of particulars "should not be used as a general discovery tool nor should it be used to circumvent a result not intended by Fed R. Crim. P. 16." *United States v. Murgas*, 967 F. Supp. 695, 701 (N.D.N.Y. 1997). Thus, "[a] bill of particulars is merited only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Schlesinger*, 361 F. App'x 355, 359 (2d Cir. 2008) (internal quotation marks omitted). Put simply: the "law does not impose an obligation [on the government] to preview its case." *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977).

---

167 (2d Cir. 2005) (internal quotation marks omitted); *see also Sosa*, 379 F. Supp. 3d at 222 (where seizure and search of electronics was prima facie reasonable, court refused to "grant defendant an evidentiary hearing so that he may go on a fishing expedition for indicia of unreasonableness.").

B.      Discussion

The defendant's demand for a bill of particulars stumbles out of the gate—It is belied by his repeated prior assertions that he has been ready for trial since at least August 2024. *See, e.g.*, Dkt. # 165 ("Mr. Adekoya asserts his right to a speedy trial in this matter."); Dkt. # 238 (motion for severance based on the defendant's assertion that he wanted to proceed to trial without delay). The Court should deny his demand for that reason alone.

But the Court can and should also deny the defendant's demand on the merits. Here, although the discovery is voluminous, the government has turned over indices distilling every single item it has disclosed. *See, e.g.*, Dkt. # 238-2 ¶ 5 (defendant's former attorney asserting that the government's "indeces help navigate the sprawling discovery productions."). Courts routinely reject demands for a bill of particulars in similar circumstances. *See, e.g.*, *United States v. Lemay*, 2022 WL 1498961, at *5 (S.D.N.Y. May 12, 2022) (rejecting bill of particulars seeking names of all uncharged coconspirators on basis that charging documents were sufficiently detailed and government had provided indexes to discovery totaling over one million pages); *United States v. Sistrunk*, 2022 WL 2527971, at *4 (D. Conn. Jul. 7, 2022) (rejecting bill of particulars demand in part because government's indexes of voluminous discovery were sufficient).

Moreover, the government has disclosed to the defendant over 40,000 encrypted telecommunications between himself and coconspirators, as well as numerous additional communications by his coconspirators with each other and others. These communications contain the level of detail the government would typically obtain in a Title III wiretap, and give explicit detail into the "whos, whats, whens, and wheres" that the defendant claims he needs from a bill of particulars. *United States v. Samsonov*, 2009 WL 176721, at *3-4 (S.D.N.Y. Jan. 23, 2009) (given production of, *inter alia*, "recorded conversations," the defendant could not "credibly claim that

he must know the identities of any other co-conspirators in order to understand the charges against him"). The discovery productions also include all of the bank records related to the over $1.5 million in fraudulent banking transactions alleged in the second superseding indictment. These records are indexed by financial institution, include the identities of victims, often photographs or videos of the coconspirator conducting the fraudulent transaction or a copy of the fake driver's license bearing his or her photograph used to conduct the transaction, and records as to the location and date of each fraudulent transaction. The government has also turned over numerous search warrant returns and supporting affidavits, which spell out in detail the nature of the investigation and the crimes charged in the indictment. *See United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (affirming denial of bill of particulars where the information sought was available in discovery); *Samsonov*, 2009 WL 176721, at *4.

The Second Circuit cases cited by the defendant do not support his demand. In *United States v. Bortnovsky,* the government, unlike here, turned over mountains of discovery with no explanation for which documents were which. 820 F.2d 572, 575 (2d Cir. 1987). In *United States v. Davidoff*, the government charged a RICO prosecution for extortionate schemes directed at one company, but then proceeded at trial to adduce evidence of extortions aimed at entirely different companies. 845 F.2d 1151, 1154-55 (2d Cir. 1988). *United States v. Walsh* affirmed the denial of a bill of particulars, holding "a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." 194 F.3d 37, 47 (2d

Cir. 1999).  And *United States v. Ramirez* simply held that the government's response to a court-ordered demand for bill of particulars was sufficient.  609 F.3d 495, 503 (2d Cir. 2010).[10]

Nor do the district court decisions cited by the defendant, which relate to cases fundamentally different from this one, compel a different result.  Indeed, pursuant to the Court's scheduling order, no later than May 19, 2025 the government will disclose exhibit and witness lists and will also file a trial memorandum that will lay out the government's anticipated proof at trial.  Accordingly, the Court should deny the defendant's demand for a bill of particulars.

## VIII.  The Defendant's "Kitchen Sink" Discovery Motions Are Meritless (Br. Points XXIV-XXXIII & Dkt. # 332)

Finally, the defendant makes a litany of "kitchen sink" discovery demands in his omnibus motion and a later filed submission.  In the defendant's omnibus motion, he makes the following discovery motions:

- Compel discovery and dismiss indictment for failure to comply with Rule 16(a)(1) (Point XXIV)
- Motion for discovery pursuant to Rules 16 and 12(b)(3)(E) (Point XXV)
- Motion for discovery pursuant to Rules 16 and 12(b)(3)(C) (Point XXVI)
- Motion for *Brady*, *Giglio,* and *Jencks* Materials (Point XXVII)
- Motion for disclosure of Fed. R. Evid. 404(b) evidence (Point XXVIII)
- Motion to compel translation of audio messages on Phones 1B5 and 1B129 (Point XXIX)
- Motion to compel forensic extraction of Phone 1B7 (Point XXX)
- Motion for order requiring government to preserve and produce investigative notes (Point XXXI)
- Motion to compel government to produce unzipped files of bank ATM videos and produce all discovery not in the defendant's possession (Point XXXII)
- Motion to compel the government to produce a transcript of the defendant's FBI interview (Point XXXIII).

In a series of separately filed motions to compel, the defendant advances the motions:

---

[10] *United States v. Rosi*, which the defendant asserts is a Second Circuit decision, was a decision by the Ninth Circuit that affirmed the indictment's validity and did not address bills of particulars in any manner.  27 F.3d 409 (9th Cir. 1994).

- Motion to compel expert disclosures (Dkt. # 332, Motion A)
- Motion to compel disclosure of lay testimony of forensic analyst (Dkt. # 332, Motion B)
- Motion to compel witness list six weeks before trial (Dkt. # 332, Motion C)
- Motion to compel filing of exhibits six weeks before trial (Dkt. # 332, Motion D)

All of these demands should be denied for the reasons set forth below.

As the government has previously informed the defendant and the Court, the government has complied with its discovery obligations as required by the Local Rules of Criminal Procedure and the pretrial order in this proceeding. *See* Dkt. # 323. The government is unaware of any *Brady* material but will turn over any such material as soon as it comes into the government's possession. The government is also aware of its *Giglio* and *Jencks* disclosure obligations and will produce those materials, including investigative notes which of course are preserved, at the appropriate time. Indeed, the government is in the process of preparing proposed stipulations so that trial may proceed as efficiently as possible, in exchange for early disclosure of *Giglio* and *Jencks* materials. On November 21, 2024, the government informed the defendant in a discovery disclosure letter about its intent to use Rule 404(b) evidence. The government will file a motion in limine in support of the admissibility of this evidence on or before the Court-ordered deadline of May 19, 2025.

The government has requested translations and transcripts of the audio messages between the defendant and coconspirator David Daniyan in devices 1B5 and 1B129 and will turn those over to the defendant as soon as it has them. Phone 1B7, which belonged to coconspirator David Daniyan and not the defendant, is severely damaged and a forensic extraction is not possible. *See supra* at 19. On January 31, 2024, the government disclosed to the defendant a video recording of a manual review of that device that constitutes the search of the device pursuant to a federal search warrant. The government has no further evidence from that device.

With respect to evidence the defendant is unable to view, the government can make that evidence available for the defendant's review at a secure location, such as the courthouse. But the

defendant is not entitled to an order compelling the government to produce documents that do not exist, such as a transcript of his FBI interview.

The government does not intend to offer any expert testimony at trial. As the defendant correctly notes, testimony regarding the use of Cellebrite and other forensic extraction software is lay testimony. Accordingly, no expert disclosure is required. Finally, the Court has ordered pretrial submissions to be filed by May 19, 2023, which renders the defendant's demand for a witness list and exhibit list moot.[11]

### CONCLUSION

For the foregoing reasons, defendant Oluwaseun Adekoya's pretrial omnibus motions and motions for discovery should be denied in their entirety without a hearing.

Dated: May 1, 2025

Respectfully submitted,

JOHN A. SARCONE III
United States Attorney

By:  */s/ Benjamin S. Clark / Joshua R. Rosenthal*
Benjamin S. Clark
Joshua R. Rosenthal
Assistant United States Attorneys
Bar Roll Nos. 703519 & 700730

---

[11] The defendant also recently alleged that "the government produced several phone subpoenas SA Warren fraudulent[ly] created." Dkt. # 333. This claim is specious and unfounded: The government has not created any fraudulent documents in this matter.

In the same letter, the defendant appears to move for the issuance of trial subpoenas under Rule 17(c). The Court should reject this demand for fishing expedition. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."); *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952) (explaining that Rule 17(c) does not permit a "general fishing expedition"). To about trial subpoenas, the defendant needs to clear the three hurdles of the *Nixon* test: "(1) relevancy; (2) admissibility; and (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). His letter makes it abundantly clear that he cannot do so with respect to these subpoenas. *See United States v. Tagliaferro*, 2021 WL 980004, at *2 (S.D.N.Y. Mar. 16, 2021).

<u>**CERTIFICATE OF SERVICE**</u>

I, Joshua R. Rosenthal, hereby certify that on May 1, 2025, I electronically filed the foregoing opposition with the Clerk of the District Court using the CM/ECF system and caused the same along with copies of all unreported cases cited therein to be mailed to defendant Oluwaseun Adekoya at the Albany County Correctional Facility.

By:    */s/ Joshua R. Rosenthal*
_____

Joshua R. Rosenthal
Assistant United States Attorney